## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

RELX, INC. d/b/a LexisNexis USA,
230 Park Avenue, 7th Floor
New York, NY 10169

and

SUBHASREE CHATTERJEE
4700 Riverwood Circle
Raleigh, NC 27612

      Plaintiffs,

v.

KATHY A. BARAN,
in her Official Capacity,
Director of the California Service Center,
U.S. Citizenship and Immigration
Services, U.S. Department of
Homeland Security
24000 Avila Rd
Laguna Niguel, CA 92677;

KENNETH T. CUCCINELLI,
in his Official Capacity, Acting Director,
U.S. Citizenship and Immigration
Services, U.S. Department of
Homeland Security
20 Massachusetts Avenue, NW,
Washington, DC 20529;

KEVIN MCALEENAN,
in his Official Capacity,
Acting Secretary,
U.S. Department of Homeland Security
245 Murray Lane, SW,
Washington, DC 20528-0075;

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,
20 Massachusetts Avenue, NW,
Washington, DC 20529; and

Case No.: _____

5 U.S.C. § 705 STAY REQUESTED

|                                                    |     |
|----------------------------------------------------|-----|
| **UNITED STATES DEPARTMENT OF**                    | )   |
| **HOMELAND SECURITY,**                             | )   |
| **245 Murray Lane, SW,**                           | )   |
| **Washington, DC 20528-0075**                      | )   |
|                                                    | )   |
|     **Defendants.**            | )   |
|                                                    | )   |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

### INTRODUCTION

1.   This action seeks declaratory and injunctive relief against Kathy A. BARAN, Director of the California Service Center, U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"); Kenneth T. CUCCINELLI, Acting Director, USCIS; Kevin MCALEENAN, Acting Secretary, U.S. Department of Homeland Security; USCIS; and DHS (collectively "the Government" or "Defendants") under the Administrative Procedure Act ("APA"), 5 U.S.C. §702, based on the Government's improper January 23, 2019 denial of Form I-129, Petition for Nonimmigrant Worker, otherwise known as an H-lB visa petition, filed by RELX, Inc. d/b/a LexisNexis USA ("LexisNexis") on behalf of Subhasree Chatterjee, as a Data Analyst.

2.   The Government denied the H-1B petition on the sole ground that the job offered to Ms. Chatterjee allegedly did not qualify as an H-1B specialty occupation.  In light of the extensive evidence submitted by LexisNexis in support of the H-1B petition and the flawed explanations in the Government's January 23, 2019 denial, the denial was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Hence, Plaintiffs LexisNexis and Ms. Chatterjee request that the Court hold unlawful and set aside the January 23, 2019 denial of Ms.

Chatterjee's H-1B petition, order the Government to approve the H-1B petition, and grant other appropriate declaratory and injunctive relief.

3.   LexisNexis and Ms. Chatterjee expressly request a 5 U.S.C. § 705 stay of the January 23, 2019 denial and an extension of her current visa status pending resolution of this case. LexisNexis and/or Ms. Chatterjee will suffer irreparable harm should the Court not grant an immediate stay of the Defendants' final agency action pending resolution of this case.

## JURISDICTION

4.   This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101 *et seq.* and the Administrative Procedure Act ("APA"), 5 U.S.C. §701 *et seq.* This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States. This Court also has authority to grant declaratory relief under 28 U.S.C. §§2201-02, and injunctive relief under 5 U.S.C. §§ 702 and 705, and 28 U.S.C. §§ 1361. The United States has waived sovereign immunity under 5 U.S.C. §§702 and 705.

5.   LexisNexis and Ms. Chatterjee may seek judicial review upon denial of the visa petition without any further administrative appeal. *See, e.g., EG Enters. v. DHS,* 467 F. Supp. 2d 728, 732-33 (E.D. Mich. 2006) (H-lB petition denial; USCIS agreed in its crossmotion that exhaustion not required); *RCM Technologies, Inc. v. US. Dept. of Homeland Sec.,* 614 F. Supp. 2d 39, 45 (D.D.C. 2009) ("[P]laintiffs need not pursue an AAO appeal before seeking judicial review of denied visa applications in federal court.").

## VENUE

6.   Venue is properly with this Court pursuant to 28 U.S.C. §1391(e)(1)(A), because this is a civil action in which the Defendants are employees or officers of the United States, acting in their official capacity, and agencies of the United States, all of which (other than Defendant

DM2\10094691.1

Baran, in her official capacity) reside in the District of Columbia and there is no real property involved.

## PARTIES

### Plaintiffs

7.   Plaintiff RELX, Inc. d/b/a LexisNexis USA, is a Delaware corporation with its principal place of business in New York, NY.  RELX is an umbrella corporation with several key markets: Legal, Scientific, Medical, Risk, and Exhibitions. LexisNexis USA is an unincorporated division of RELX, Inc..  LexisNexis is a leading provider of comprehensive information and business solutions to professionals in a variety of areas – legal, risk management, corporate, government, law enforcement, accounting, and academic.  LexisNexis helps customers achieve their goals in 100 countries.  It provides customers access to 5 billion searchable documents from more than 32,000 legal, news, and business sources.  Corporations and legal professionals manage, organize, and integrate their work processes using their unique set of solutions.  LexisNexis services its customers by building the best legal research tools available, including its flagship LexisAdvance. LexisAdvance is the engine that powers legal research at all levels of the judicial system.

8.   LexisNexis does its work through three engineering "Centers of Excellence" ("COE") throughout the globe:  London, UK; Shanghai, China; and Raleigh, NC, USA. The Raleigh, NC office is home to the engineering team for LexisAdvance. LexisNexis has placed a great deal of emphasis in colocation of its employees, moving people from other US locations to Raleigh, NC. Within the Raleigh, NC COE, there is located LexisNexis's User Experience Research ("UXR") team which harnesses qualitative and quantitative data to ensure that the company is investing in the right areas of product development and designing products – including Lexis Advance – that users will find most useful.

9.   Plaintiff Ms. Subhasree Chatterjee is a citizen of India, currently residing at 4700 Riverwood Circle, Raleigh, NC.  Ms. Chatterjee is a current employee of LexisNexis working as a Data Analyst in LexisNexis's Raleigh, NC engineering COE on the flagship product LexisAdvance as part of the UXR team.  Ms. Chatterjee is currently in the United States on a F-1 student visa with STEM OPT (Optional Practical Training) that expires on August 3, 2019, after which she will not be permitted to work in the United States and may need to leave the United States unless the Government's final agency action is stayed or reversed by then.  Ms. Chatterjee is the subject of the H-1B petition LexisNexis filed and she is directly impacted by the Government's January 23, 2019 final agency decision denying her a H-1B visa.

### Defendants

10. Defendant Kathy A. BARAN is the Director of the California Service Center. Among other things, the California Service Center is responsible for adjudicating visa petitions, such as the H-1B visa petition filed by LexisNexis. Defendant Baran is sued in her official capacity.

11. Kenneth T. CUCCINELLI is the Acting Director of U.S. Citizenship and Immigration Services ("USCIS"). As Director, Defendant Cuccinelli has been delegated the authority to direct the administration of USCIS, and to enforce the Immigration and Nationality Act ("INA") and all other laws relating to the immigration of non-citizens. Defendant Cuccinelli is responsible for USCIS's policies, practices, and procedures, and oversees the USCIS officers responsible for adjudicating Plaintiff's H-lB visa petition. Defendant Cuccinelli is sued in his official capacity.

12. Defendant Kevin MCALEENAN is the Acting Secretary of the U.S. Department of Homeland Security ("DHS"). DHS is the federal agency encompassing USCIS, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of non-citizens. In his official capacity as Director, Defendant McAleenan has responsibility for the administration and enforcement of the immigration and naturalization laws

pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat.

2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a). Defendant McAleenan is sued in his official

capacity.

13. Defendant U.S. Citizenship and Immigration Services is an agency of the DHS, and is

responsible for overseeing the adjudication of immigration benefits. USCIS implements federal

law and policy with respect to immigration benefits applications.  USCIS's headquarters resides

within the District of Columbia

14. Defendant the U.S. Department of Homeland Security is a cabinet department of the

United States federal government responsible for immigration related services (U.S. Citizenship

and Immigration Services or "USCIS"), enforcement (Immigration and Customs Enforcement or

"ICE"), and investigations (Homeland Security Investigations or "HIS"), among other duties.

DHS oversees USCIS and its implementation of federal law and policy with respect to

immigration benefits applications.  DHS's headquarters resides within the District of Columbia.

## LEGAL BACKGROUND

15. An H-1B visa allows a foreign national to be admitted temporarily to the United States to

work in a "specialty occupation," which is defined as an occupation that requires "theoretical and

practical application of a body of highly specialized knowledge" and "attainment of a bachelor's

or higher degree in a specific specialty (or its equivalent) as a minimum for entry into the

occupation in the United States." 8 U.S.C. §1184(i)(1).

16. Pursuant to regulations implementing the INA, a position must be found to meet one of

the following four criteria to quality as an H-1B specialty occupation:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum
> requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among
> similar organizations or, in the alternative, an employer may show that its

particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. §214.2(h)(4)(iii)(A).

## FACTUAL ALLEGATIONS

17. On April 12, 2018, LexisNexis filed a Petition for Nonimmigrant Worker (Form I-129) on behalf of Ms. Chatterjee, a citizen of India, petitioning to classify her in H-1B status so that she could continue to work for LexisNexis in the specialty occupation of Data Analyst, at LexisNexis's only specialized Center for Excellence located in the United States, and the only Center of Excellence supporting LexisNexis' flagship product, LexisAdvance.

18. Because Ms. Chatterjee, as the Beneficiary, did not meet any of the exemptions in 8 U.S.C. 1184(g)(5), the petition filed on her behalf was subject to the H-lB cap. As such, LexisNexis filed the petition with a requested validity period of October 1, 2018 to September 1, 2021.

19. Ms. Chatterjee holds a Master of Science in Business Administration, with a focus on Business Analytics, from the University of Cincinnati, located in Ohio, USA.

20. Prior to earning her Masters degree or beginning to work for LexisNexis in 2017, Ms. Chatterjee earned a Bachelor of Technology degree in Computer Science and Engineering from West Bengal University of Technology in Kolkata, India.  Ms. Chatterjee also had extensive practical experience in data analytics from four years of working for Infosys in Pune, India in the specialized field of Analytics Delivery after earning her undergraduate degree.

7

21. As a Data Analyst for LexisNexis, after earning her Masters degree with a focus on Business Analytics and upon Defendants' granting the H-1B petition, Ms. Chatterjee would have continued to be employed and paid by LexisNexis.  She would continue to work for LexisNexis at its only United States based Center for Excellence, located in Raleigh, NC and support LexisNexis' flagship product, LexisAdvance.

22. In support of its petition, Plaintiff supplied a Labor Condition Application ("LCA") (Case Number I-200-18060-605447), certified by the U.S. Department of Labor for the requested validity period of September 2, 2018 through September 1, 2021; a letter from Leticia Andrade, Plaintiffs Immigration Compliance Specialist; background information about Plaintiff; copies of Ms. Chatterjee's Master's degree from the University of Cincinnati and official transcript; a copy of her F-1 student visa and work authorization and a copy of the biographic page of Ms. Chatterjee's unexpired passport.

23. The position of Data Analyst offered to Ms. Chatterjee has a great number of technical responsibilities that could not be performed by an individual lacking the equivalent of a U.S. bachelor's degree. These responsibilities, include "analyzing, investigating, and hypothesizing data to effectively communicate with internal and external customers, management and functional areas by presenting problem resolution, product information…work with Designers and Researchers, embedded in product development teams, to help them understand customer behavior…analyze, investigate, negotiate and resolve problems to help inform product design decisions."

24. On or about May 7, 2018, the USCIS California Service Center issued a Request for Evidence to LexisNexis requesting illustrative categories of information regarding whether Ms. Chatterjee's Data Analyst position is a "specialty occupation."

DM2\10094691.1

25. On June 18, 2018, LexisNexis responded to Defendants' Request for Evidence with (a) a detailed supplemental letter from Leticia Andrade, Plaintiff's Immigration Compliance Specialist; (b) an organizational chart; (c) six job announcements for Data Analyst positions, from six different employers, each showing that the Data Analyst position for the other employers requires at least a Bachelor's degree in STEM fields such as business analytics, statistics, mathematics, economics or operations research; and (d) an expert opinion from Dr. Gerhard Steinke, Professor of Management and Information Systems at Seattle Pacific University.  LexisNexis provided extensive evidence on three out of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for "specialty occupation."

26. Leticia Andrade explained the sophisticated and specialty nature of the Data Analyst position to Defendants in her supplemental letter, as follows:

> As indicated in the H-lB petition filed on her behalf, Ms. Chatterjee will be employed by LexisNexis USA as a Data Analyst. In this position, she will utilize her business analytics education and relevant professional experience to:
>
> - Use SQL to extract data to describe user behavior on LexisAdvance, accessing the correct data sources, checking data integrity, and ensuring overall data quality (30%);
> - Use R, Python, or other statistical programming software to program analyses and generate reports leveraging proper statistical techniques such as ANOVA, t-tests, linear models, or logistic regression so that decisions on A/B test results are made with full statistical confidence (20%);
> - Perform exploratory data analyses using tools like Rand Python; techniques such as descriptive statistics, kmeans clustering, hierarchical modeling, and dimensionality reduction (20%);
> - Use Looker or other Business Intelligence tools to visualize data to provide ongoing insight into key metrics for stakeholders in the UX and PM teams (10%);
> - Assist stakeholders in the formulation of hypotheses for web analytics A/B testing (10%);
> - Present findings of reports to stakeholders, ensuring they understand implications of how decisions can affect the customer experience (5%); and
> - Train stakeholders in the use of data tools such as Looker, ElasticSearch, and Kibana; document use of those tools for stakeholder reference (5%).

27. Dr. Gerharde Steinke stated in his expert opinion letter, after identifying and analyzing the information upon which his opinion was based:

> The title of Data Analyst is given to a person who specialized in designing and performing complex data modeling, quantitative analysis and statistical analysis with a focus on enabling the business to better analyze and evaluate their processes, operations, and customers . . .
>
> After examining the Data Analyst position in detail, it becomes apparent that a minimum of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field provides an individual with the core competencies and skills needed for the role.  This is because the nature of these specific responsibilities and knowledge is so specialized and complex, that knowledge required to perform these duties is usually associated with the attainment with the bachelor's degree in this field.
>
> The duties listed above require the employee to understand data and information technologies, databases, design options, along with business intelligence processes and methodologies. The position requires a broad understanding of the business environment, as well as knowledge and understanding of quantitative, statistical and business analytics tools, processes, requirements, and strategies.  Such deeper knowledge and understanding is seldom achieved without a solid university education. A position with these duties would normally be entrusted only to a person with a minimum of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related qualitative field at a minimum in order to competently handle the duties required by the Data Analyst position. . . .
>
> Based on my qualifications, I conclude that the position of Data Analyst is a specialty occupation as defined under 8 C.F.R. 214.2(h)(4)(ii) requiring theoretical and practical application of a body of highly specialized knowledge, a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field and meets sufficient criteria for a specialty occupation . . . In addition, I conclude that the nature of the position is so specialized and complex that only an individual with a Bachelor's degree in such a field would be able to perform the job duties. Furthermore, the degree requirement is common to the industry in parallel positions among similar organizations and firms similar to the petitioner's routinely recruit and employ only degreed individuals in the specific specialty.

28. On September 13, 2018, the Government denied the petition filed by LexisNexis on behalf of Ms. Chatterjee. The decision acknowledged the existence of some of the evidence provided by LexisNexis and then summarily disregarded all of it, including the expert opinion. Ultimately, the Government denied the petition for one simple reason, stated several different

ways for each of the four regulatory criteria: LexisNexis had allegedly "not shown that the position is a specialty occupation."

29. It is important to note that the Government *did not* conclude that Ms. Chatterjee is not qualified to perform specialty occupation-level work.

30. On October 10, 2018, LexisNexis filed a motion with the Government to reopen or, in the alternative, a motion to reconsider the previously denied petition.  As part of LexisNexis's motion to reopen and for reconsideration, LexisNexis attached the following exhibits:  (a) a preponderance of the evidence memorandum detailing all of the factual support for the H-1B petition and explaining how the admissible evidence meets the "preponderance of the evidence" standard for granting the H-1B petition and explicitly stating that LexisNexis was seeking reconsideration of the September 13th decision and, alternatively, a reopening of the record; (b) background information regarding O*NET; (c) an O*NET Report for 15-1199.08 for the position of Business Intelligence Analyst; (d) documents showing the academic equivalency of degrees in accounting, economics, and operations research with degrees in statistics or mathematics based on their common usage of mathematical formulation, applied mathematics, and statistical analysis; and (e) another copy of Dr. Gerhard Steinke's Expert Opinion Letter.

31. On January 23, 2019, the Government, in a seven page decision, affirmed its prior decision finding LexisNexis's Data Analyst position not to be a specialty occupation within the meaning of the regulations.  It is the January 23, 2019 final Government decision that is the subject of this APA challenge.

32. If the Court were not to grant the requested 5 U.S.C. § 705 stay of the Defendant's final agency action prior to August 3, 2019, Ms. Chatterjee will be irreparably harmed.  Among the irreparable harm Ms. Chatterjee will suffer includes, but is not limited to, being required to (a)

11

stop working for LexisNexis in the United States; (b) default on her apartment lease and car loans and suffer related financial penalties she would not otherwise have incurred but for Defendants' action; (c) lose all career progress and momentum she has accumulated at LexisNexis while working in the United States; and (d) cease providing financial support to her parents in India.  If required to leave the United States, Ms. Chatterjee will not be able to find comparable employment in India for anywhere close to a comparable salary – resulting in a salary reduction from approximately $85,000 down to as low as $7,000 per year.   All of the foregoing, and other harms, will irreparably harm Ms. Chatterjee and her career, from which she will never fully recover if not granted the H-1B visa Defendants improperly denied and allowed to continue to lawfully work in the United States pending a resolution of this case.

33. Similarly if the Court were not to grant the requested 5 U.S.C. § 705 stay of the Defendant's final agency action, LexisNexis will be irreparably harmed.  Ms. Chatterjee possesses a unique blend of directly applicable education and years of experience working for LexisNexis.  LexisNexis will not be able to find a suitably educated replacement for Ms. Chatterjee and get that replacement up to speed to perform at a minimal level of proficiency involving LexisNexis' product line for at least a year if not longer.  In the interim, LexisNexis would be without a Data Analyst for LexisAdvance, its flagship product, and lack the competitive advantage that complex data analytics provide for its maintaining and improving its products and future product development.  As a result, LexisAdvance would likely lose subscribers and market share in the extremely competitive market for its products, from which it may never fully recover.

34. Defendants will not be harmed should the Court grant a 5 U.S.C. § 705 stay of the Defendant's final agency action and permit Ms. Chatterjee to work and remain in the United States pending a decision in this case.

35. It is in the public interest for the Court to grant a 5 U.S.C. § 705 stay of the Defendants' final agency action and permit Ms. Chatterjee to work and remain in the United States pending a decision in this case so as to ensure that the INA and implementing regulations are properly applied to the facts of Plaintiffs' H-1B petition and that visa applicants and beneficiaries are granted full due process rights and the government comports with the rule of law.

## COUNT ONE

### Violation of the Administrative Procedure Act
### 5 U.S.C. §701, et seq.

36. LexisNexis re-alleges and incorporates by reference herein all of the allegations set forth above.

37. The APA empowers this Court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

38. As discussed above, Plaintiffs need only prove one of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds by a preponderance of the evidence in order to establish that a position is a "specialty occupation."

39. The first of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds is that a "bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position.

40. LexisNexis, as part of its H-1B application, provided an LCA signed by the U.S. Department of Labor certifying that the Data Analyst position at issue in this case was properly

within SOC Code 15-1199 with SOC occupation title "Computer Occupations, All Other."
LexisNexis explained that the Data Analyst position at issue here fell within the "Business
Intelligence Analyst" subspecialty of "Computer Occupations, All Other."

41. Defendants, however, denied the H-1B application by relying solely on the U.S.
Department of Labor's Occupational Outlook Handbook ("OOH") and (a) incorrectly noting that
the "OOH does not contain detailed profiles for the computer occupations category"; (b) making
the factually and legally unsupported conclusion that a "reference to the USDOL's O*NET
standing alone, fails to establish that an occupation is a specialty occupation"; (c) wrongly
explaining (presumably cut and paste from another H-1B petition for a different position and
filed by a different applicant) for the Data Analyst position at issue here that "the JobZone
portion of the O*NET website groups *the position of administrative service manager* with
occupations such as *accountant, chef and head cook, computer programmer, historian,
pharmacist, and police detective*" (emphasis added); and (d) concluding that LexisNexis's
"counsel's argument that the USDOL has determined in its O*NET website that the offered
position qualifies as a specialty occupation is not persuasive."  Defendants do not cite any
evidence other than what LexisNexis provided in its H-1B application, and hence they do not cite
or rely on any contrary evidence to support their position.  In addition to the errors cited herein,
Defendants' January 23, 2019 decision applied a burden of proof other than the required
"preponderance of evidence" considering the decision they reached was made without citing any
evidence contrary to the evidence submitted by LexisNexis, presumably the only evidence in the
administrative record of this matter.

DM2\10094691.1

42. Defendants' narrow and exclusive reliance on the U.S. Department of Labor's OOH is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" for a variety of reasons, including but not limited to:

    a.   The U.S. Department of Labor's OOH is a document created by the U.S. Department of Labor's Bureau of Labor Statistics pursuant to a specific delegation of statutory authority to do so.  As such, Defendants – as a federal agency not delegated statutory authority to create or interpret the OOH – are not entitled to any deference in their "interpretation" of a document created by another federal cabinet agency.  For Defendants to have "interpreted" the OOH violated the APA.

    b.   Defendant's "interpretation" of the OOH to find it does not cover the Data Analyst position at issue here is error.  The OOH listing for "Computer Occupations, All Other" expressly cites and incorporates by reference the O*NET listing for Business Intelligence Analyst (SOC Code 15-1199.08) and expressly states "Typical entry-level education: **Bachelor's degree**". https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm. For the Government to have determined that a Bachelor's degree is not required for the position was error.

    c.   The O*NET cross reference to Business Intelligence Analyst in the OOH listing for "Computer Occupations, All Other" defines the technological (e.g., use of database management and/or query software) and educational (e.g., algebra, geometry, calculus, statistics, and their applications) requirements for the position and explains that more than of 90% Business Intelligence Analyst positions

DM2\10094691.1

require a Bachelor's degree and at least 33% of the positions also require a

Master's degree.

43. The Government, in their January 23, 2019 decision, do not cite to any contrary evidence

and rely solely on their misinterpretation and misapplication of the U.S. Department of Labor's

OOH.  In light of LexisNexis's proffered evidence and the complete lack of any contrary

evidence, LexisNexis satisfied its preponderance of the evidence burden of proof that the Data

Analyst position which is the subject of LexisNexis's H-1B petition is a "specialty occupation"

within the meaning of 8 C.F.R. §214.2(h)(4)(iii)(A).  The Government's January 23, 2019

decision to the contrary was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."

## COUNT TWO

### Violation of the Administrative Procedure Act
### 5 U.S.C. §701, et seq.

44. Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth

above in Paragraphs 1 through 43.

45. The second of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds is that the "degree

requirement is common to the industry in parallel positions among similar organizations or, in

the alternative, an employer may show that its particular position is so complex or unique that it

can be performed only by an individual with a degree."

46.  As discussed above, LexisNexis submitted six different position announcements for a

Data Analyst by six different employers as part of its June 18, 2018 response to the

Government's Request for Evidence.  Each of the Data Analyst position announcements

indicated that a Bachelor's degree or higher was required for position.  LexisNexis also supplied

an expert opinion from Professor Steinke reaffirming that "firms similar to the petitioner's routinely recruit and employ only degreed individuals in the specific specialty."

47. Ms. Chatterjee was hired for the Data Analyst position based on possessing a Master degree in Business Analytics and a Bachelor of Technology degree in Computer Science and Engineering providing further evidence that LexisNexis required a Bachelor degree or higher for the position.

48. In the Government's January 23, 2019 final agency decision, there was no mention, discussion, or analysis of the six different position announcements for Data Analyst that LexisNexis submitted in June 2018 or of the fact that Ms. Chatterjee possessed a Masters degree when originally hired for the Data Analyst position.  Defendants also ignored Professor Steinke's expert opinion stating that it is common in the industry to require at least a Bachelor's degree in business analytics, math, statistics, or related quantitative fields and confirming industry practices.  In effect, and for all practical purposes, Defendants completely ignored this highly probative and dispositive evidence.

49. LexisNexis, as part of its October 2019 motion for reconsideration, explained "that fields such as accounting, economics, and operations research employ techniques from other mathematical principals, such as mathematical formulation, applied mathematics, and statistical analysis.  Thus, the Data Analyst position requires a bachelor's degree that is limited to fields of study including statistics, mathematics, or fields that are closely related to those two areas of study."

50. Instead of focusing on the evidence submitted, Defendants explained in their January 23, 2019 decision: "It must be clarified that since multiple fields of education are suitable for the position of Data Analyst, the position is not one that is qualified as a specialty occupation,

requiring the application of a body of knowledge in one specific field as a minimum to perform

the duties associated with the position."  Such an unduly myopic review of the evidence

submitted and the mathematics and analytical nature of the duties and applicable degree majors

by the Government is arbitrary, capricious, an abuse of discretion, and not in accordance with

law.

51. Regarding the element of whether the position is so complex and unique that only

persons with a degree can perform the essential duties, the Government's analysis is equally

flawed.

52. Defendants, in their January 23, 2019 decision, acknowledged and briefly discussed the

Mathematical Association of America ("MMA") document provided by LexisNexis, which

elaborated on positions of "Mathematics and Operations Research in Industry."  Defendants

acknowledge, from the MMA document, that the "area of applied mathematics called Operations

Research combines mathematics, statistics, computer science, physics, engineering, economics

and social sciences to solve real-world business problems."  Defendants also acknowledged that

such positions "all require a solid background in mathematics and familiarity with other

disciplines (such as physics, economics, and engineering)."

53. Despite acknowledging the foregoing, and that an Operations Research/Data Analyst is a

cross-disciplinary occupation with a focus on advanced mathematics and related degrees,

Defendants explained:

> According to the evidence provided, it appears, again, that the position offered does
> not involve duties [sic] are so complex and unique that only an individual [sic] can
> perform them.  It is noted that skills such as problem formulation, mathematical
> modeling, data collection, solution methods, validation and analysis, and
> interpretation and implementation are skills that can be obtained through various
> fields of education.  This conclusion is reinforced by the statement on the document
> that education ion [sic] the fields of mathematics, statistics, computer science,

physics, engineering, economics, and social sciences may prepare an individual for the proffered position.

As such, you have not shown that this position involves duties seen as either unique or complex so that only an individual with a bachelor's degree or higher in a specific specialty could perform them.

54. The foregoing conclusion by Defendants – that the job duties are not common to the industry or that the job duties are not complex requiring a bachelor's degree or higher after expressly noting the various bachelor's and advanced degrees necessary to perform the identified tasks which it deems essential to a Data Analyst position - is arbitrary, capricious, an abuse of discretion, and/or not in accordance with law.

## COUNT THREE

### Violation of the Administrative Procedure Act
### 5 U.S.C. §701, et seq.

55. Plaintiff re-alleges and incorporates by reference herein all of the allegations set forth above in Paragraphs 1 through 54.

56. The fourth of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds is that the "nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree."

57. In support of its H-1B petition, LexisNexis submitted an expert opinion from Gerhard Steinke, Professor of Management and Information Systems at Seattle Pacific University. Professor Steinke's six page opinion identified his qualifications and the facts upon which his opinion was based, and explained how the complicated statistical and analytical tools and methods required for the specific Data Analyst position at issue requires at least an undergraduate degree in Business Analytics, Statistics, Mathematics, or a related quantitative field.  Professor Steinke further explains how Ms. Chatterjee's recent Master of Science degree in Business Administration (Business Analytics) more than satisfies "the minimum requirement

of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field."

58. The Government's January 23, 2019 decision noted the existence Professor Steinke's opinion, but stated "[s]ince the professor's evaluation does not constitute new evidence for purposes of this motion to reopen, this evidence will no [sic] be further discussed."   Such a conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" particularly in light of LexisNexis's express request that Defendants reconsider their prior September 13, 2018 decision which failed to properly analyze the professor's expert opinion. Defendants cited no evidence – other than Professor Steinke's expert opinion - to support its conclusion, nor do Defendants suggest any other such evidence exists.  Nor did Defendants engage in any requested reconsideration of its prior decision, in light of the evidence and arguments cited by LexisNexis in its motion for reconsideration.

59. In their original September 13, 2018 decision (which was rendered moot by the January 23, 2019 decision), Defendants attacked the factual foundation of Professor Steinke's expert opinion using supposition and conjecture, but failed to cite to any actual evidence which could suggest any real or perceived defect in Professor Steinke's expert analysis or conclusions.  In short, the Government summarily – and without citing to any specific evidence (either provided by LexisNexis or upon which Defendants may have supplied for the administrative record and which was not cited in the final agency decision) – concluded, as a matter of law, that it may disregard Professor Steinke's expert opinion because it "is not in accord with other information or is in any way questionable."  Given the complete lack of evidence upon which this legal and/or factual conclusion was purportedly based, the Government's decision on the fourth of

four 8 C.F.R. § 214.2(h)(4)(iii)(A) grounds for "specialty occupation" is "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1)  Assume jurisdiction over this matter;

(2)  Maintain the status quo for Ms. Chatterjee's visa status – pursuant to 5 U.S.C. § 705 – pending the Court's resolution of this case;

(3) Hold unlawful and set aside the Government's January 23, 2019 (and September 23, 2018) decision denying Plaintiffs I-129 petition on behalf of Ms. Chatterjee;

(4)  Order the Government to approve Plaintiffs I-129 petition on behalf of Ms. Chatterjee;

(5)  Grant reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA;

(6) Grant such further relief as the Court deems just and proper.


DATED:          July 3, 2019                                      Respectfully submitted,

                                                                 DUANE MORRIS LLP

                                                                 */s/ Michael J. Schrier*
                                                                 Michael J. Schrier
                                                                 (D.C. Bar No. 444693)
                                                                 Denyse Sabagh
                                                                 (D.C. Bar No. 369113)
                                                                 DUANE MORRIS LLP
                                                                 505 9th St., NW, Suite 1000
                                                                 Washington, D.C.  20004-2166
                                                                 Tel:  202-776-5221
                                                                 Fax:  202-478-0158
                                                                 MJSschrier@duanemorris.com
                                                                 DSabagh@duanemorris.com