## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RELX, INC. d/b/a LexisNexis USA,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **SUBHASREE CHATTERJEE** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No.:  1:19-cv-01993-EGS** |
| **v.** ) | |
| ) | |
| **KATHY A. BARAN,** ) | |
| **in her Official Capacity,** ) | |
| **Director of the California Service Center,** ) | |
| **U.S. Citizenship and Immigration** ) | |
| **Services, U.S. Department of** ) | |
| **Homeland Security, ET AL.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' 5 U.S.C. § 705 MOTION FOR STAY AND
FED.R.CIV.P. 65(C) PRELIMINARY INJUNCTION**</u>

DATED:      July 8, 2019

Respectfully submitted,

DUANE MORRIS LLP

*/s/ Michael J. Schrier*
Michael J. Schrier
(D.C. Bar No. 444693)
Denyse Sabagh
(D.C. Bar No. 369113)
DUANE MORRIS LLP
505 9th St., NW, Suite 1000
Washington, D.C.  20004-2166
Tel:  202-776-5221
Fax:  202-478-0158
MJSschrier@duanemorris.com
DSabagh@duanemorris.com

# TABLE OF CONTENTS

I.     **INTRODUCTION** ...........................................................................................1

II.    **PARTIES AND H-1B LEGAL FRAMEWORK** ...........................................2

     A.    **Plaintiffs RELX, Inc. And Subhasree Chatterjee** ............................. 2

     B.    **The Government Defendants** ................................................................ 4

     C.    **Legal Framework For Granting H-1B Visas** .................................... 5

III.   **FACTUAL AND PROCEDURAL HISTORY LEADING TO WRONGFUL
DENIAL OF PLAINTIFFS' H-1B PETITION** ............................................6

     A.    **Plaintiff's File Form I-129 Petition Seeking H-1B Status** ............... 6

     B.    **The Government Issues A Request For Evidence And Plaintiffs'
Response** .................................................................................................. 8

     C.    **Government Denies The H-1B Petition On Superficial And
Unsupported Grounds** ......................................................................... 10

     D.    **LexisNexis Moves To Reopen And/Or Reconsider Previously Denied
Petition** .................................................................................................. 10

     E.    **Government Denied Motions In January 23, 2019 Final Agency
Action** .................................................................................................... 11

IV.   **ARGUMENT** ...............................................................................................11

     A.    **5 U.S.C. § 705 Legal Standard** .......................................................... 11

     B.    **Preliminary Injunction Legal Standard** .......................................... 12

     C.    **Plaintiffs Have A Substantial Likelihood Of Success On The Merits** ........... 13

          1.    **The Government Erred As A Matter Of Law When It Failed To
Correctly Apply A Preponderance Of The Evidence Standard** ........ 14

          2.    **The Government's Analysis Of The First Prong Was Arbitrary,
Capricious, An Abuse Of Discretion And Not In Accordance With
Law** ......................................................................................................... 16

          3.    **The Government's Analysis Of The Second Prong Was Arbitrary,
Capricious, An Abuse Of Discretion And Not In Accordance With
Law** ......................................................................................................... 20

DM2\10095432.1

4.     The Government's Analysis Of The Fourth Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ............................................................... 23

5.     Plaintiffs Have Established A Substantial Likelihood Of Success On the Merits ............................................................... 26

D.     Plaintiffs Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted ............................................................... 27

1.     Ms. Chatterjee's Career And Financial Well-Being Will Be Irreparably Harmed If Not Granted Preliminary Injunctive Relief . 27

2.     LexisNexis Will Be Irreparably Harmed If Not Granted Preliminary Injunctive Relief ............................................................... 29

E.     The Balance Of The Equities And The Public Interest Favors Granting A Preliminary Injunction ............................................................... 30

F.     No Injunction Bond Should Be Required In This Case Concerning A Visa For Only One Specialty Occupation Visa Applicant ............................................................... 33

V.     CONCLUSION ...............................................................34

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) ........................................................13

*Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) .....................28

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ............12, 27, 29

*Damus v. Nielsen*, 313 F.Supp.3d 317 (D.D.C. 2018) .............................................13, 32

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (2009) ..................................12, 13

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D.Cal. 2018) ............................34

*Feng Wang v. Pompeo*, 354 F.Supp.3d 13 (D.D.C. 2018) .......................................... 13, 28, 30-31

*Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F.Supp.2d 30 (D.D.C. 2013) ................ 33-34

*Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078 (D.C. Cir. 2011) ......................................................................13

*Jacinto-Castanon de Nolasco v. USCIS*, 319 F.Supp.3d 491 (D.D.C. 2018) .........................14, 32

*MGU v. Nielsen*, 325 F.Supp.3d 111 (D.D.C. 2018) ....................................................12

*OMV Medical, Inc. v. U.S.*, 219 F.3d 1337 (Fed. Cir. 2000) ......................................17

*Ramirez v. USCIS*, 310 F.Supp.3d 7 (D.D.C. 2018) .........................................12, 28, 32

*Residential Finance Corp. v. U.S. Citizenship And Immigration Services*, 839 F.Supp.2d 985 (S.D.Ohio 2011) ........................................................................2

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ...............................................12, 13

*Smith v. Midland Mortgage*, 181 F.Supp.3d 73 (D.D.C. 2013) ....................................13

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ..................................................................................12,13, 31

**Federal Statutes and Rules of Court**

5 U.S.C. § 705 ............................................................. 1-2, 11-12, 28-29, 31-32, 34

5 U.S.C. §706(2)(A) .................................................................................14, 16

8 U.S.C. 1184(g)(5) ........................................................................................6

DM2\10095432.1

8 U.S.C. § 1103(a) ..................................................................................................5

8 U.S.C. §1184(i)(1) ...............................................................................................5

Fed.R.Civ.P. 65 ..................................................................................... 1, 11-12, 34

Fed.R.Civ.P. 65(c) ........................................................................................... 33-34

**Other Authorities**

8 C.F.R. §214.2(h)(4)(iii)(A) .............................................. 6, 8, 14, 16, 19-21, 23, 26

*Matter of Patel*, 18 I&N 774 (BIA 1988) .........................................................6, 15

*Matter of Pazandeh*, 19 I&N, 884 (BIA, 1989) ..............................................6, 15

*Matter of SooHoo*, 11 I&N 151 (BIA 1965) ...................................................6, 15

ii

Plaintiffs RELX, Inc. d/b/a LexisNexis USA ("LexisNexis") and Subhasree Chatterjee ("Chatterjee"), pursuant to 5 U.S.C. § 705 and Fed.R.Civ.P. 65, hereby move this Court for a preliminary injunction staying the Government's January 23, 2019 final agency decision and maintaining the status quo with Ms. Chatterjee in a valid visa status permitting her to work as a Data Analyst for LexisNexis pending a final resolution of this case. Pursuant to LCvR 65.1(d), Plaintiffs expressly request that a hearing on their application for preliminary injunction be set no later than 21 days after the filing of this motion so as to maintain Chatterjee's status as eligible to work in the United States before her current F-1 visa expires on August 3, 2019.

## I.      INTRODUCTION

This action seeks declaratory and injunctive relief against Kathy A. Baran, Director of the California Service Center, U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"); Kenneth T. Cuccinelli, Acting Director, USCIS; Kevin McAleenan, Acting Secretary, U.S. Department of Homeland Security; USCIS; and DHS (collectively "the Government" or "Defendants") under the Administrative Procedure Act ("APA"), 5 U.S.C. §702, based on the Government's improper January 23, 2019 denial of Form I-129, Petition for Nonimmigrant Worker, otherwise known as an H-lB visa petition, filed by LexisNexis on behalf of Ms. Chatterjee, for her to remain employed by LexisNexis as a Data Analyst after the expiration of her F-1 student visa.  The Government denied the H-1B petition on the sole ground that the job offered to Ms. Chatterjee allegedly did not qualify as an H-1B specialty occupation.  In light of the extensive evidence submitted by LexisNexis in support of the H-1B petition and the flawed analysis in the Government's January 23, 2019 denial, the denial was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Ultimately, Plaintiffs LexisNexis and Ms. Chatterjee request that the Court hold unlawful and set aside the January 23, 2019 denial of Ms. Chatterjee's H-1B petition (Plaintiffs' Exhibit[1] 1), order the Government to approve the H-1B petition, and grant other appropriate declaratory and injunctive relief.  *See, e.g., Residential Finance Corp. v. U.S. Citizenship And Immigration Services*, 839 F.Supp.2d 985, 994- 97 (S.D.Ohio 2011)("Defendant failed to examine all of the correct relevant data and to articulate an untainted, satisfactory explanation for the denial that rationally connected the facts to the decision. The denial of the petition here was thus arbitrary, capricious, and an abuse of discretion.")(granting employer summary judgment in APA challenge to Government denial of H-1B visa application for a Market Research Analyst based on the Government's faulty reading and analysis of the U.S. Department of Labor's Occupational Outlook Handbook and an overall failure to properly analyze the copious evidence submitted by the employer).

For purposes of this motion, however, LexisNexis and Ms. Chatterjee only request a 5 U.S.C. § 705 stay of the January 23, 2019 denial (PX 1) and, as a result, an extension of Ms. Chatterjee's visa status pending resolution of this case, thereby permitting Ms. Chatterjee to continue to work for LexisNexis as a Data Analyst at least until a final decision is reached in this case.

## II.     PARTIES AND H-1B LEGAL FRAMEWORK

### A.     Plaintiffs RELX, Inc. And Subhasree Chatterjee

Plaintiff RELX, Inc. d/b/a LexisNexis USA, is a Delaware corporation with its principal place of business in New York, NY.  RELX is an umbrella corporation with several key markets:

---

[1] Hereinafter, all references to "Plaintiffs' Exhibit" shall be to "PX" followed by the appropriate exhibit number and page, paragraph, or section number.

Legal, Scientific, Medical, Risk, and Exhibitions. LexisNexis USA is an unincorporated division of RELX, Inc..  Declaration of Leticia Andrade at ¶3.  LexisNexis is a leading provider of comprehensive information and business solutions to professionals in a variety of areas – legal, risk management, corporate, government, law enforcement, accounting, and academic.  *Id.* LexisNexis helps customers achieve their goals in 100 countries.  It provides customers access to 5 billion searchable documents from more than 32,000 legal, news, and business sources. Corporations and legal professionals manage, organize, and integrate their work processes using their unique set of solutions.  *Id.*  LexisNexis services its customers by building the best legal research tools available, including its flagship LexisAdvance. LexisAdvance is the engine that powers legal research at all levels of the judicial system.  *Id.* at ¶4.

LexisNexis does its work through three engineering "Centers of Excellence" ("COE") throughout the globe:  London, UK; Shanghai, China; and Raleigh, NC, USA.  *Id.* at ¶5.  The Raleigh, NC office is home to the engineering team for LexisAdvance.  *Id.* at ¶6.  LexisNexis has placed a great deal of emphasis in colocation of its employees, moving people from other US locations to Raleigh, NC. Within the Raleigh, NC COE, there is located LexisNexis's User Experience Research ("UXR") team which harnesses qualitative and quantitative data to ensure that the company is investing in the right areas of product development and designing products – including Lexis Advance – that users will find most useful.  *Id.* at ¶7.

Plaintiff Ms. Subhasree Chatterjee is a citizen of India, currently residing at 4700 Riverwood Circle, Raleigh, NC.  Declaration of Subhasree Chatterjee at ¶2.  Ms. Chatterjee is a current employee of LexisNexis working as a Data Analyst in LexisNexis's Raleigh, NC engineering COE on the flagship product LexisAdvance as part of the UXR team.  Andrade Decl. at ¶8.  Ms. Chatterjee holds a Master of Science in Business Administration, with a focus

on Business Analytics, from the University of Cincinnati, located in Ohio, USA.  Prior to earning

her Masters degree or beginning to work for LexisNexis in 2017, Ms. Chatterjee earned a

Bachelor of Technology degree in Computer Science and Engineering from West Bengal

University of Technology in Kolkata, India.  Ms. Chatterjee also had extensive practical

experience in data analytics from four years of working for Infosys in Pune, India and one year

working in data analytics for Evalueserve Inc. in Raleigh, NC in the specialized field of

Analytics Deliveryafter earning her undergraduate degree.  Chatterjee Decl. at ¶7.  Andrade

Decl. at ¶9.

Ms. Chatterjee is currently in the United States on a F-1 student visa with STEM OPT

(Optional Practical Training) that expires on August 3, 2019, after which she will not be

permitted to work in the United States and may need to leave the United States unless the

Government's final agency action is stayed or reversed by then.  Andrade Decl. at ¶10.  Ms.

Chatterjee is the subject of the H-1B petition LexisNexis filed and she is directly impacted by the

Government's January 23, 2019 final agency decision denying her a H-1B visa.

### B.    The Government Defendants

The Defendants in this case, all government officials sued in their official capacity or the

federal agencies involved, are each responsible for the January 23, 2019 final agency decision

denying a H-1B visa filed by LexisNexis on behalf of Ms. Chatterjee.

Defendant Kathy A. Baran is the Director of the California Service Center, U.S.

Citizenship and Immigration Services ("USCIS"). Among other things, the California Service

Center is responsible for adjudicating visa petitions, such as the H-1B visa petition filed by

LexisNexis. Defendant Baran is sued in her official capacity.

Kenneth T. Cuccinelli is the Acting Director of USCIS. As Director, Defendant

Cuccinelli has been delegated the authority to direct the administration of USCIS, and to enforce

4

the Immigration and Nationality Act ("INA") and all other laws relating to the immigration of non-citizens. Defendant Cuccinelli is responsible for USCIS's policies, practices, and procedures, and oversees the USCIS officers responsible for adjudicating Plaintiff's H-lB visa petition. Defendant Cuccinelli is sued in his official capacity.

Defendant Kevin McAleenan is the Acting Secretary of the U.S. Department of Homeland Security ("DHS"). DHS is the federal agency encompassing USCIS, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of non-citizens. In his official capacity as Director, Defendant McAleenan has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a). Defendant McAleenan is sued in his official capacity.

Defendant U.S. Citizenship and Immigration Services is an agency of the DHS, and is responsible for overseeing the adjudication of immigration benefits. USCIS implements federal law and policy with respect to immigration benefits applications.

Defendant the U.S. Department of Homeland Security is a cabinet department of the United States federal government responsible for immigration related services (USCIS), enforcement (Immigration and Customs Enforcement or "ICE"), and investigations (Homeland Security Investigations or "HIS"), among other duties. DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefits applications.

### C.    Legal Framework For Granting H-1B Visas

An H-1B visa allows a foreign national to be admitted temporarily to the United States to work in a "specialty occupation," which is defined as an occupation that requires "theoretical and practical application of a body of highly specialized knowledge" and "attainment of a bachelor's

DM2\10095432.1

or higher degree in a specific specialty (or its equivalent) as a minimum for entry into the

occupation in the United States." 8 U.S.C. §1184(i)(1).

Pursuant to regulations implementing the INA, a position must be found to meet one of

any of the following four criteria to quality as an H-1B specialty occupation:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. §214.2(h)(4)(iii)(A).

A visa applicant has the burden of proof to establish, by a preponderance of the evidence,

that any one of these four §214.2(h)(4)(iii)(A) criteria have been satisfied in order for the

Government to issue the H-1B visa.  *See, e.g., Matter of Chawathe*, 25 I&N, 369 (AAO 2010);

*Matter of Pazandeh*, 19 I&N, 884 (BIA, 1989); *Matter of Patel*, 18 I&N 774 (BIA 1988) and

*Matter of SooHoo*, 11 I&N 151 (BIA 1965).

## III.   FACTUAL AND PROCEDURAL HISTORY LEADING TO WRONGFUL DENIAL OF PLAINTIFFS' H-1B PETITION

### A.   Plaintiff's File Form I-129 Petition Seeking H-1B Status

On April 12, 2018, LexisNexis filed a Petition for Nonimmigrant Worker (Form I-129)

on behalf of Ms. Chatterjee, a citizen of India, petitioning to classify her in H-1B status so that

she could continue to work for LexisNexis in the specialty occupation of Data Analyst, at

LexisNexis's only specialized Center for Excellence located in the United States, and the only

Center of Excellence supporting LexisNexis' flagship product, LexisAdvance.  Andrade Decl. at ¶11; PX 2.  Because Ms. Chatterjee, as the Beneficiary, did not meet any of the exemptions in 8 U.S.C. 1184(g)(5), the petition filed on her behalf was subject to the H-lB cap. As such, LexisNexis filed the petition with a requested validity period of October 1, 2018 to September 1, 2021.  PX 2 at 10.

As a Data Analyst for LexisNexis, after earning her Masters degree with a focus on Business Analytics and upon Defendants' granting the H-1B petition, Ms. Chatterjee would have continued to be employed and paid by LexisNexis.  She would continue to work for LexisNexis at its only United States based Center for Excellence, located in Raleigh, NC and support LexisNexis' flagship product, LexisAdvance.  Andrade Decl. at 12.

In support of its petition, Plaintiff supplied a Labor Condition Application ("LCA") (Case Number I-200-18060-605447), certified by the U.S. Department of Labor for the requested validity period of September 2, 2018 through September 1, 2021 (PX 2 at 19-24); a letter from Leticia Andrade, Plaintiff's Immigration Compliance Specialist (PX 2 at 25-26); background information about LexisNexis (*id*); copies of Ms. Chatterjee's Master's degree from the University of Cincinnati and official transcript (PX  2 at 27-28); a copy of her F-1 student visa and work authorization (PX 2 at 29-38); and a copy of the biographic page of Ms. Chatterjee's unexpired passport (PX 2 at 41-42).

The position of Data Analyst offered to Ms. Chatterjee by LexisNexis has a great number of technical responsibilities that could not be performed by an individual lacking the equivalent of a U.S. bachelor's degree. These responsibilities, include "analyzing, investigating, and hypothesizing data to effectively communicate with internal and external customers, management and functional areas by presenting problem resolution, product information…work

with Designers and Researchers, embedded in product development teams, to help them understand customer behavior…analyze, investigate, negotiate and resolve problems to help inform product design decisions."  PX 2 at 25.  Andrade Decl. at ¶14.

**B.     The Government Issues A Request For Evidence And Plaintiffs' Response**

On or about May 7, 2018, the USCIS California Service Center issued a Request for Evidence to LexisNexis requesting illustrative categories of information regarding whether Ms. Chatterjee's Data Analyst position is a "specialty occupation."   PX 3.

On June 18, 2018, LexisNexis responded to Defendants' Request for Evidence (PX 4) with (a) a detailed supplemental letter from Leticia Andrade, Plaintiff's Immigration Compliance Specialist (PX 4 at 2-4); (b) an organizational chart (PX 4 at 5); (c) six job announcements for Data Analyst positions, from six different employers, each showing that the Data Analyst position for the other employers requires at least a Bachelor's degree in STEM fields such as business analytics, statistics, mathematics, economics or operations research (PX 4 at 6-11); and (d) an expert opinion from Dr. Gerhard Steinke, Professor of Management and Information Systems at Seattle Pacific University (PX 4 at 12-32).  Through its June 2018 submission, LexisNexis intentionally provided extensive evidence on only three out of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for "specialty occupation."  *See* PX 4.

Leticia Andrade explained the sophisticated and specialty nature of the Data Analyst position to Defendants in her supplemental letter, as follows:

> As indicated in the H-lB petition filed on her behalf, Ms. Chatterjee will be employed by LexisNexis USA as a Data Analyst. In this position, she will utilize her business analytics education and relevant professional experience to:
>
> •      Use SQL to extract data to describe user behavior on LexisAdvance, accessing the correct data sources, checking data integrity, and ensuring overall data quality (30%);
> •      Use R, Python, or other statistical programming software to program analyses and generate reports leveraging proper statistical techniques such as ANOVA,

t-tests, linear models, or logistic regression so that decisions on A/B test results are made with full statistical confidence (20%);

- Perform exploratory data analyses using tools like Rand Python; techniques such as descriptive statistics, kmeans clustering, hierarchical modeling, and dimensionality reduction (20%);

- Use Looker or other Business Intelligence tools to visualize data to provide ongoing insight into key metrics for stakeholders in the UX and PM teams (10%);

- Assist stakeholders in the formulation of hypotheses for web analytics A/B testing (10%);

- Present findings of reports to stakeholders, ensuring they understand implications of how decisions can affect the customer experience (5%); and

- Train stakeholders in the use of data tools such as Looker, ElasticSearch, and Kibana; document use of those tools for stakeholder reference (5%).

PX 4 at 2-3; Andrade Decl. at ¶16.

Dr. Gerharde Steinke stated in his expert opinion letter, after identifying and analyzing

the information upon which his opinion was based:

> The title of Data Analyst is given to a person who specialized in designing and performing complex data modeling, quantitative analysis and statistical analysis with a focus on enabling the business to better analyze and evaluate their processes, operations, and customers . . .

> After examining the Data Analyst position in detail, it becomes apparent that a minimum of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field provides an individual with the core competencies and skills needed for the role. This is because the nature of these specific responsibilities and knowledge is so specialized and complex, that knowledge required to perform these duties is usually associated with the attainment with the bachelor's degree in this field.

> The duties listed above require the employee to understand data and information technologies, databases, design options, along with business intelligence processes and methodologies. The position requires a broad understanding of the business environment, as well as knowledge and understanding of quantitative, statistical and business analytics tools, processes, requirements, and strategies. Such deeper knowledge and understanding is seldom achieved without a solid university education. A position with these duties would normally be entrusted only to a person with a minimum of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related qualitative field at a minimum in order to competently handle the duties required by the Data Analyst position. . . .

> Based on my qualifications, I conclude that the position of Data Analyst is a specialty occupation as defined under 8 C.F.R. 214.2(h)(4)(ii) requiring theoretical

9

and practical application of a body of highly specialized knowledge, a Bachelor's
degree in Business Analytics, Statistics, Mathematics, or a related quantitative field
and meets sufficient criteria for a specialty occupation . . . In addition, I conclude
that the nature of the position is so specialized and complex that only an individual
with a Bachelor's degree in such a field would be able to perform the job duties.
Furthermore, the degree requirement is common to the industry in parallel positions
among similar organizations and firms similar to the petitioner's routinely recruit
and employ only degreed individuals in the specific specialty.

PX 4 at 13-18.

C.    **Government Denies The H-1B Petition On Superficial And Unsupported
       Grounds**

On September 13, 2018, the Government denied the petition filed by LexisNexis on

behalf of Ms. Chatterjee. PX 5.  The decision acknowledged the existence of some of the

evidence provided by LexisNexis and then summarily disregarded all of it, including the expert

opinion.  *Id*.  Ultimately, the Government denied the petition for one simple reason, stated

several different ways for each of the four regulatory criteria: LexisNexis had allegedly "not

shown that the position is a specialty occupation."  *Id*.

It is important to note that the Government did not provide any of its own evidence to

support its decision.  Also, it *did not* conclude that Ms. Chatterjee is not qualified to perform

specialty occupation-level work.  *Id*.

D.    **LexisNexis Moves To Reopen And/Or Reconsider Previously Denied Petition**

On October 10, 2018, LexisNexis filed a motion with the Government to reopen or, in the

alternative, a motion to reconsider the previously denied petition.  PX 6.  As part of LexisNexis's

motion to reopen and for reconsideration, LexisNexis attached the following exhibits:  (a) a

preponderance of the evidence memorandum detailing all of the factual support for the H-1B

petition and explaining how the admissible evidence meets the "preponderance of the evidence"

standard for granting the H-1B petition and explicitly stating that LexisNexis was seeking

reconsideration of the September 13th decision and, alternatively, a reopening of the record (PX 6

10

at 12-18); (b) background information regarding the Department of Labor's O*NET (PX 6 at 35-36); (c) an O*NET Report for 15-1199.08 for the position of Business Intelligence Analyst (PX 6 at 38-41); (d) documents showing the academic equivalency of degrees in accounting, economics, and operations research with degrees in statistics or mathematics based on their common usage of mathematical formulation, applied mathematics, and statistical analysis (PX 6 at 45-52); and (e) another copy of Dr. Gerhard Steinke's Expert Opinion Letter (PX 6 at 54-74).

### E.    Government Denied Motions In January 23, 2019 Final Agency Action

On January 23, 2019, the Government, in a seven page decision, affirmed its prior decision finding LexisNexis's Data Analyst position not to be a specialty occupation within the meaning of the regulations.  PX 1.  It is the January 23, 2019 final Government decision that is the subject of this APA challenge.

## IV.   ARGUMENT

Plaintiffs move this Court to (a) stay enforcement of the Government's January 23, 2019 final agency decision and (b) maintain the status quo of Ms. Chatterjee's current visa status, permitting her to work and remain in the United States, pending the conclusion of this case.  The Court may grant the Plaintiffs' requested relief by issuing a preliminary injunction pursuant to 5 U.S.C. § 705 and Fed.R.Civ.P. 65.

### A.    5 U.S.C. § 705 Legal Standard

The Adminsitrative Procedure Act expressly authorizes federal courts to "preserve status or rights pending conclusion of the review proceedings."  Specifically:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.  The way the Court may effectuate its 5 U.S.C. § 705 grant of authority "to preserve status or rights pending conclusion of the review proceedings" is by issuing a preliminary injunction pursuant to Fed.R.Civ.P. 65.

### B.    Preliminary Injunction Legal Standard

Courts within this District routinely consider requests for preliminary injunctions and the elements of such relief in connection with immigration and visa issues.

> "[A] preliminary injunction is an injunction to protect [the movant] from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 954 (D.C. Cir. 2005) (*quoting* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedures § 2947 (2d ed. 1992) ). "[T]he decision to grant injunctive relief is a discretionary exercise of the district court's equitable powers." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F.Supp.3d 194, 201 (D.D.C. 2017) (*quoting Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1209 (D.C. Cir. 1989) ). A preliminary injunction is an "extraordinary remedy," and one is "never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). To warrant preliminary injunctive relief, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20, 129 S.Ct. 365. Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (reading *Winter* "to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction' " (*quoting Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009) (concurring opinion))); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("[A] movant must demonstrate at least some injury for a preliminary injunction to issue, for the basis of injunctive relief in federal courts has always been irreparable harm." (internal citations and quotation marks omitted)).

*Ramirez v. USCIS*, 310 F.Supp.3d 7, 16-17 (D.D.C. 2018)(preliminary injunction granted); *see*

*MGU v. Nielsen*, 325 F.Supp.3d 111, 116-17 (D.D.C. 2018)(preliminary injunction granted)[2];

---

[2]

Before the Supreme Court's decision in *Winter v. NRDC*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the

*Damus v. Nielsen*, 313 F.Supp.3d 317, 325-26 (D.D.C. 2018)(preliminary injunction granted); *see also Feng Wang v. Pompeo*, 354 F.Supp.3d 13, 19-20 (D.D.C. 2018) ("'If the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor.' 'However, the continued viability of the sliding scale approach is uncertain 'as the Supreme Court and the D.C. Circuit have strongly suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction.'"") (citations omitted); *cf. Smith v. Midland Mortgage*, 181 F.Supp.3d 73, 74 (D.D.C. 2013)(discussing elements of preliminary injunction).

As explained below, Plaintiffs satisfy all four of the *Winter* elements for issuance of a preliminary injunction in this case.

### C.    Plaintiffs Have A Substantial Likelihood Of Success On The Merits

"In ruling on a preliminary injunction a key issue—often the dispositive one—is whether the movant has shown a substantial likelihood of success on the merits." *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011). However,

> [w]hile plaintiffs seeking a preliminary injunction have the burden of demonstrating likelihood of success on the merits, they are not required to prove

---

factors" to overcome a weaker showing on another. *Damus v. Nielsen*, 313 F.Supp.3d 317, 325-26 (D.D.C. 2018) (quoting *Davis v. PBGC*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). This Circuit has hinted, though not held, that Winter v. NRDC—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (quoting *Davis v. PBGC*, 571 F.3d at 1296 (Kavanaugh, J., concurring) ); *see League of Women Voters of the United States v. Newby,* 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter v. NRDC*). Also unresolved is the related question of "whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a serious legal question on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (internal quotation marks and citation omitted)."

their case in full at the preliminary injunction stage, but only such portions that
enable them to obtain the injunctive relief that they seek. *See Univ. of Texas v.
Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

*Jacinto-Castanon de Nolasco v. USCIS*, 319 F.Supp.3d 491, 499 (D.D.C. 2018).  Hence, in order

to be eligible for preliminary injunctive relief at this stage of this case, all LexisNexis and/or Ms.

Chatterjee need to establish is that they have a substantial likelihood of success in demonstrating

that the Government's denial of the H-1B visa petition was flawed with regards to any one of the

four prongs of the 8 C.F.R. §214.2(h)(4)(iii)(A) test for a "specialty occupation."

The APA empowers this Court to hold unlawful and set aside agency action that is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§706(2)(A).  Plaintiffs' H-1B Petition (PX 2), their June 2018 response to the Government's

Request for Evidence (PX 4), and their October 2018 Motion to Reopen and Motion to

Reconsider (PX 6) presented extensive and compelling evidence on three of the four prongs.

The Government's January 23, 2019 decision (PX 1), however, fails to survive the APA standard

of review as to each or any one of those three prongs.

### 1. The Government Erred As A Matter Of Law When It Failed To Correctly Apply A Preponderance Of The Evidence Standard

As explained above, LexisNexis supplied ample and extensive evidence on the many

ways in which the Data Analyst position Ms. Chatterjee would occupy after being granted an H-

1B visa was a specialty occupation within the meaning of 8 C.F.R. §214.2(h)(4)(iii)(A).  In

neither the September 2018 decision (PX 5) nor the January 2019 final agency decision under

review here (PX 1), the Government did not identify the existence of any evidence in the

administrative record not provided solely by LexisNexis.  In fact, from the plain language of the

final agency decisions, there was absolutely no contrary evidence in the administrative record to

counter the evidence LexisNexis submitted.  Despite the non-existence of any contrary evidence

in the administrative record, the Government disregarded most of what LexisNexis submitted and ultimately denied its visa petition for an alleged failure to show "that the proffered position is a specialty occupation."  PX 1 at 6.

In reaching its result, it is critical to note that nowhere in the analytical portions of either the September 2018 or January 2019 final agency decisions was there any mention of the applicable burden of proof that LexisNexis or the Government was required to apply to the evidence and opinions presented solely by LexisNexis.  Instead, the Government only made identical passing formulaic references in the introductory portions of the decisions – without any legal citation or authority - that "based on a preponderance of the evidence, the petition will be denied for the reasons discussed below."  PX 1 at 1; PX 5 at 1.  The Government did not explain the preponderance of the evidence standard nor analyze how the evidence provided failed to meet that standard.

The applicable burden of proof Defendants should have applied here is "preponderance of the evidence."  *See Matter of Chawathe*, 25 I&N, 369 (AAO 2010); *Matter of Pazandeh*, 19 I&N, 884 (BIA, 1989); *Matter of Patel*, 18 I&N 774 (BIA 1988); *Matter of SooHoo*, 11 I&N 151 (BIA 1965).  *The Government did not cite this applicable legal standard in the analytical portions of its decisions which are the subject of this litigation*.  Nor did it apply that legally required preponderance of the evidence burden of proof when denying LexisNexis's visa petition.  It could not have applied the proper burden of proof if it denied LexisNexis's visa petition when the **only evidence** before the Government in the administrative record was the evidence provided by LexisNexis.  Even if the Government were justified in giving the only evidence in the administrative record "little weight" (which for reasons outlined below should not happen, but for arbitrary and capricious action or inaction by the Government), LexisNexis'

evidence as compared to zero evidence supplied by the Government should have been more than sufficient for LexisNexis to meet its preponderance of the evidence burden of proof.

Clearly, the Government applied a burden of proof other than preponderance of the evidence to LexisNexis's entire H-1B visa petition for Ms. Chatterjee. As such, the Government acted "not in accordance with law" and its entire January 2019 final agency decision must be set aside as a matter of law. *See* 5 U.S.C. §706(2)(A).

> **2.    The Government's Analysis Of The First Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law**

The first of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for granting a H-1B visa is that a "bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." LexisNexis supplied ample evidence to support this prong, which the Government improperly disregarded.

LexisNexis, as part of its H-1B application, provided an LCA signed by the U.S. Department of Labor certifying that the Data Analyst position at issue in this case was properly within SOC Code 15-1199 with SOC occupation title "Computer Occupations, All Other." PX 2 at 19-24. LexisNexis explained that the Data Analyst position at issue here fell within the "Business Intelligence Analyst" subspecialty of "Computer Occupations, All Other." Defendants, however, denied the H-1B application by incorrectly relying solely on the U.S. Department of Labor's Occupational Outlook Handbook ("OOH") – and no other evidence – to make three critical errors that arise to the level of arbitrary and capricious error under the APA.

> **a.    Defendants Are Not Entitled To Any Deference When "Interpreting" A Document Created By Another Federal Agency**

First, Defendants improperly attempted to "interpret" the U.S. Department of Labor's OOH. The U.S. Department of Labor is not one of the defendants in this case. The OOH is a

document created by the U.S. Department of Labor's Bureau of Labor Statistics pursuant to a Congressional delegation of authority to do so.  As such, Defendants – from Homeland Security and USCIS, federal agencies not delegated statutory authority to create or interpret the OOH – are not entitled to any deference in their "interpretation" of a document created by another federal cabinet agency.  *See e.g., OMV Medical, Inc. v. U.S.*, 219 F.3d 1337, 1343-44 (Fed. Cir. 2000)(setting aside and remanding Air Force's government contracting OOH-based computations on APA review).  Because Defendants are not entitled to any *Chevron/Auer* deference, their factually incorrect "interpretation" of the OOH is entitled to absolutely no deference and may be set aside for what it is – arbitrary, capricious and an abuse of discretion.

### b.    Defendants Ignore Dispositive Information From The OOH

Second, Defendants' "interpretation" of the OOH to find that the "OOH does not contain detailed profiles for the computer occupations category" (PX 1 at 3-4) is just factually wrong. The OOH listing for "Computer Occupations, All Other" created by the U.S. Department of Labor expressly cites and incorporates by reference the U.S. Department of Labor's O*NET listing for Business Intelligence Analyst (SOC Code 15-1199.08);  *See* https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm which links to https://www.onetonline.org/link/summary/15-1199.08. As such, the OOH does "contain detailed profiles for the computer occupations category" – contrary to Defendants' claim.  Even more devastating to the fragile validity of Defendant's January 2019 final agency decision is the fact that the OOH listing for "Computer Occupations, All Other" – covering all of the subspecialties including Business Intelligence Analyst – expressly states "Typical entry-level education: Bachelor's degree".  *See*  https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm;

The explicit O*NET cross reference to Business Intelligence Analyst (SOC Code 15-1199.08) contained in the OOH listing for "Computer Occupations, All Other" defines the technological (e.g., use of database management and/or query software) and educational (e.g., algebra, geometry, calculus, statistics, and their applications) requirements for the position and explains that "Most of these occupations require a four-year bachelor's degree, but some do not" with further detail that more than 90% of Business Intelligence Analyst positions require at least a Bachelor's degree and at least 33% of the positions also require a Master's degree.  *See* PX 6 at 40; https://www.onetonline.org/link/summary/15-1199.08.

### c. Defendants Incorrectly Rely On O*NET Job Title For An "Administrative Service Manager" When Denying The H-1B Visa Petition For A Data Analyst Position

Defendants' third APA error concerning whether a "bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position" is their reliance on a misquote from O*NET.  LexisNexis submitted a H-1B petition for a Data Analyst position.  Defendants, however, denied the petition based on an alleged snippet from O*NET concerning an Administrative Service Manager:  "the JobZone portion of the O*NET website groups the position of *administrative service manager* with occupations such as *accountant, chef and head cook, computer programmer, historian, pharmacist, and police detective*" PX 1 at 4 (emphasis added).

There are two fundamental problems with this.  First, it appears that Defendants cut and paste from another H-1B petition denial letter when preparing its January 2019 final agency decision.  If that was the case, then the entire January 2019 decision's analysis is fundamentally defective.  Alternatively, if Defendants really meant to rely on O*NET language concerning an Administrative Service Manager position when denying LexisNexis's H-1B petition for a Data Analyst position, then the Defendants' final agency decision is equally flawed because such

18

O*NET information was not in the administrative record of this case and the Government failed
to provide any citation to the alleged evidence it was relying on for its flawed decision.  Either
way, this portion of the Government's January 23, 2019 final agency decision is fundamentally
flawed and should be set aside as arbitratrary, capricious, an abuse of discretion or otherwise not
in accordance with law.

> **d.      Defendants Erred When They Ignored Professor Steinke's
>             Expert Opinion**

As discussed in more detail below, Professor Gehard Steinke's expert opinion expressly
found that "the position of Data Analyst . . . require[s] theoretical and practical application of a
body of highly specialized knowledge, a Bachelor's degree in Business Analytics, Statistics,
Mathematics, or a related quantitative field" and therefore meets the requirements for a specialty
occupation under applicable regulations.  *See, e.g.* PX 4 at 16.  The Government completely
failed to address any portion of Professor's Steinke's expert opinion with respect to the first of
the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds.  PX 1 at 3-4.  Such failure is arbitrary, capricious,
and/or an abuse of discretion in violation of the APA.

> **e.      Defendants Erred When They Ignored The OOH And Directly
>             Related O*NET And Expert Evidence**

As the foregoing demonstrates, such direct OOH and O*NET evidence, prepared by the
U.S. Department of Labor, establishes that the Data Analyst position for which LexisNexis hired
Ms. Chatterjee actually requires a bachelor's degree or higher, in a field related to the position
thereby satisfying the first of the 8 C.F.R. §214.2(h)(4)(iii)(A) requirements for H-1B visa status.
For the Government to have denigrated and then ignored this direct evidence (Plaintiffs'
"counsel's argument that the USDOL has determined in its O*NET website that the offered
position qualifies as a specialty occupation is not persuasive." PX 1 at 4) and have reached a
contrary conclusion to deny the H-1B visa application ("reference to the USDOL's O*NET

standing alone, fails to establish that an occupation is a specialty occupation" (*id*.)) was arbitrary, capricious and an abuse of discretion in violation of the APA.  Similarly, the Government's complete failure to address any aspect of Professor Steinke's expert opinion related to this H-1B requirement was similarly arbitrary, capricious and an abuse of discretion in violation of the APA.

> **3.**  **The Government's Analysis Of The Second Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law**

The second of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for granting a H-1B visa is that the "degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree."

 As discussed above, LexisNexis submitted six different position announcements for a Data Analyst by six different employers as part of its June 18, 2018 response to the Government's Request for Evidence.   PX 4 at 6-11. Each of the Data Analyst position announcements indicated that a Bachelor's degree or higher in a field related to the position was required for position.  LexisNexis also supplied an expert opinion from Professor Steinke reaffirming that "firms similar to the petitioner's routinely recruit and employ only degreed individuals in the specific specialty."  PX 4 at 17.

Ms. Chatterjee was hired for the Data Analyst position based on possessing a Master degree in Business Analytics and a Bachelor of Technology degree in Computer Science and Engineering providing further evidence that LexisNexis required a Bachelor degree or higher for the position.

In the Government's January 23, 2019 final agency decision, there was no mention, discussion, or analysis of the six different position announcements for Data Analyst that

LexisNexis submitted in June 2018 or of the fact that Ms. Chatterjee possessed a Masters degree when originally hired for the Data Analyst position. PX 1. Defendants also ignored Professor Steinke's expert opinion stating that it is common in the industry to require at least a Bachelor's degree in business analytics, math, statistics, or related quantitative fields and confirming industry practices. *Id*. In effect, and for all practical purposes, Defendants completely ignored this highly probative and dispositive evidence.

LexisNexis, as part of its October 2018 motion for reconsideration, explained "that fields such as accounting, economics, and operations research employ techniques from other mathematical principals, such as mathematical formulation, applied mathematics, and statistical analysis. Thus, the Data Analyst position requires a bachelor's degree that is limited to fields of study including statistics, mathematics, or fields that are closely related to those two areas of study." PX 6 at 15. Instead of focusing on the evidence submitted, Defendants explained in their January 23, 2019 decision: "It must be clarified that since multiple fields of education are suitable for the position of Data Analyst, the position is not one that is qualified as a specialty occupation, requiring the application of a body of knowledge in one specific field as a minimum to perform the duties associated with the position." PX 1 at 5. Such an unduly myopic review of the evidence submitted and the mathematics and analytical nature of the duties and applicable degree majors by the Government is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

Regarding the element of whether the position is so complex and unique that only persons with a degree can perform the essential duties, the Government's analysis is equally flawed. Defendants, in their January 23, 2019 decision, acknowledged and briefly discussed the Mathematical Association of America ("MMA") document provided by LexisNexis, which

elaborated on positions of "Mathematics and Operations Research in Industry." PX 1 at 5.

Defendants acknowledge, from the MMA document (PX 6 at 45-48), that the "area of applied

mathematics called Operations Research combines mathematics, statistics, computer science,

physics, engineering, economics and social sciences to solve real-world business problems."

Defendants also acknowledged that such positions "all require a solid background in

mathematics and familiarity with other disciplines (such as physics, economics, and

engineering)." PX 1 at 7.

Despite acknowledging the foregoing, and that an Operations Research/Data Analyst is a

cross-disciplinary occupation with a focus on advanced mathematics and related degrees,

Defendants explained:

> According to the evidence provided, it appears, again, that the position offered does
> not involve duties [sic] are so complex and unique that only an individual [sic] can
> perform them. It is noted that skills such as problem formulation, mathematical
> modeling, data collection, solution methods, validation and analysis, and
> interpretation and implementation are skills that can be obtained through various
> fields of education. This conclusion is reinforced by the statement on the document
> that education ion [sic] the fields of mathematics, statistics, computer science,
> physics, engineering, economics, and social sciences may prepare an individual for
> the proffered position.
>
> As such, you have not shown that this position involves duties seen as either unique
> or complex so that only an individual with a bachelor's degree or higher in a
> specific specialty could perform them.

PX 1 at 5.

The foregoing conclusion by Defendants – that the job duties are not common to the

industry or that the job duties are not complex requiring a bachelor's degree or higher after

expressly noting the various bachelor's and advanced degrees necessary to perform the identified

tasks which it deems essential to a Data Analyst position flies in the face of the MMA evidence

supplied, Professor Steinke's expert opinion, the O*NET listing for Business Analyst, and all of

the other evidence LexisNexis supplied. For Defendants to have so completely disregarded all of

the evidence Plaintiffs supplied and to have relied on no other record evidence to come to such a diametreically opposed factual and legal conclusion is the definition of arbitrary, capricious, an abuse of discretion, and/or not in accordance with law.

4. **The Government's Analysis Of The Fourth Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law**

The fourth of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for granting a H-1B visa is that the "nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." Once again, Defendants' analysis of LexisNexis's H-1B petition on this ground was arbitrary, capricious, an abuse of discretion and not in accordance with law.

In support of its H-1B petition, LexisNexis submitted an expert opinion from Gerhard Steinke, Professor of Management and Information Systems at Seattle Pacific University. *See e.g.* PX 4 at 12-32.  Professor Steinke's six page opinion identified his qualifications, including his education (MBA from Ball State University and PhD in Informatik from Univeristy of Passau in Germany and his Certified Information Systems Security Professional ("CISSP") credentials) his active and extensive participation in academic institutions concerning Information Systems curriculum development and accreditation, and his current role as Professor and head of the graduate Master of Science in Information systems management degree program at Seattle Pacific University.  PX 4 at 12.

Professor Steinke also noted that "I am also considered to be a recognized authority and I have issued over 250 professional opinions during the past year regarding industry and academic standards for professional in my and allied fields to USCIS and other institutions and agencies which have been accepted as authoritative by USCIS and other institutions and agencies." *Id.*

Professor Steinke, as any good expert would, identified the evidence upon which his expert opinions were based, specifically:

- A copy of a letter written to USCIS by Leticia Andrade, Immigration Compliance Specialist, dated March 7, 2018;
- A copy of a document that provides the job responsibilities for the position of Data Analyst at LexisNexis USA;
- A copy of the LCA filed for this case;
- A copy of a diploma that Ms. Subhasree Chatterjee received from the University of Cincinnati stating that she earned the degree of master of Science; and
- The U.S. Department of Labor's O*NET listing for Business Intelligence Analyst (SOC Code 15-1199.08) https://www.onetonline.org/link/summary/15-1199.08.

PX 4 at 12-13. All of the evidence Professor Steinke relied upon was evidence LexisNexis supplied to Defendants as part of its H-1B petition. *See* PX 2; PX 4; PX 6.

Professor Steinke then explained, in detail, how LexisNexis's Data Analyst position fell within the Business Intelligence Analyst position (SOC Code 15-1199.08) described on the U.S. Department of Labor's O*NET. PX 4 at 13-14. From there, Professor Steinke explained how the complicated statistical and analytical tools and methods required for the specific Data Analyst position at issue requires at least an undergraduate degree in Business Analytics, Statistics, Mathematics, or a related quantitative field. PX 4 at 15-16. Professor Steinke further explained how Ms. Chatterjee's recent Master of Science degree in Business Administration (Business Analytics) more than satisfies "the minimum requirement of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field." PX 4 at 16. Professor Steinke, in concluding his detailed expert analysis, wrote:

> Based on my qualifications, I conclude that the position of Data Analyst is a specialty occupation as defined under 8 C.F.R. 214.2(h)(4)((ii) requiring theoretical and practical application of a body of highly specialized knowledge, a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field and meets sufficient criteria for a specialty occupation under 8 C.F.R. 214.2(h)(4)(iii)(A). In addition, I conclude that the nature of the position is so specialized and complex that only an individual with a Bachelor's degree in such a field would be able to perform the job duties. Furthermore, the degree requirement

24

is common to the industry in parallel positions among similar organizations and firms similar to the petitioner's routinely recruit and employ only degreed individuals in the specific specialty.

PX 4 at 16-17.

The Government's January 23, 2019 decision noted the existence Professor Steinke's opinion, but stated "[s]ince the professor's evaluation does not constitute new evidence for purposes of this motion to reopen, this evidence will no [sic] be further discussed."   PX 1 at 6. Such a conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" particularly in light of LexisNexis's express request that Defendants reconsider their prior September 13, 2018 decision which failed to properly analyze the professor's expert opinion.  PX 6 at 12.  Defendants cited no evidence – other than Professor Steinke's expert opinion - to support its conclusion, nor do Defendants suggest any other such evidence exists. PX 1.  Nor did Defendants engage in any requested reconsideration of its prior decision, in light of the evidence and arguments cited by LexisNexis in its motion for reconsideration.  PX 1.

In their original September 13, 2018 decision (which was rendered moot and superceded by the January 23, 2019 decision), Defendants attacked the factual foundation of Professor Steinke's expert opinion using only supposition and conjecture, and failed to cite to any actual evidence which could suggest any real or perceived defect in Professor Steinke's expert analysis or conclusions.[3]  In short, the Government summarily – and without citing to any specific

_____

[3] For instance:

> The professor reached this conclusion by relying on your description of the position rather than any specific study of the position at your organization.  There is no evidence that the professor knew any more about the specific duties of ths position than what you provided.  The professor does not demonstrate or assert in-depth knowledge of your business operations or how the duties of the position would actually be performed in the context of your business.  The professor's opinion does not relate the professor's conclusions to specific, concrete aspects of your business

DM2\10095432.1

evidence (either provided by LexisNexis or upon which Defendants may have supplied for the

administrative record and which was not cited in the final agency decision) – concluded, as a

matter of law, that it may disregard Professor Steinke's expert opinion reasoning "where an

opinion is not in accord with other information or is in any way questionable, USCIS is not

required to accept or may give less weight to that evidence."  PX 5 at 8.  Curiously, Defendants

do not identify or describe any record evidence with which Professor Steinke's opinion is "not in

accord" nor did Defendants describe or identify any record evidence that could serve as a basis

for finding any aspect of Professor Steinke's opinion "questionable."  *See* PX 5.  Given the

complete lack of evidence upon which Defendant's legal and/or factual conclusion was

purportedly based, the Government's decision on the fourth of four 8 C.F.R. § 214.2(h)(4)(iii)(A)

grounds for "specialty occupation" is "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law."

**5.     Plaintiffs Have Established A Substantial Likelihood Of Success On the Merits**

As all of the foregoing demonstrates, Plaintiffs have established a substantial likelihood

of success on the merits, either based on Defendants' apparent failure to apply the correct legal

burden of proof (by holding Plaintiffs to something other than a preponderance of the evidence

standard when there was no opposing evidence in the administrative record as compared to the

detailed and voluminous evidence provided by Plaintiffs) or the Defendants' complete disdain

for and failure to consider any of Plaintiffs' evidence.  Either way, the Government's January

---

operations so as to demonstrate a sound factual basis for the professor's conclusions
about the educational requirements for the proffered position.  The [sic] does not
explain why the knowledge required for the furtherance of the job duties can only
be obtained through education in Busienss Analytics, Statistics, Mathematics or a
related quantitative field.

PX 5 at 7.

2019 final agency decision was arbitrary, capricious, an abuse of discretion and otherwise not in

accordance with law.  Therefore, Plaintiffs should prevail on the merits of their APA action in

this case and have clearly established the first element in their motion for preliminary injunctive

relief.

D.      **Plaintiffs Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted**

Equally important to whether a preliminary injunction should issue is whether the movant

will suffer irreparable harm.

> Courts in this jurisdiction have recognized that "[t]he concept of irreparable harm does not readily lend itself to definition." *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 514 F.Supp.2d 7, 10 (D.D.C. 2007). Nonetheless, the D.C. Circuit has laid out "several well known and indisputable principles" that should underlie a court's analysis. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). First, the party seeking preliminary injunctive relief must demonstrate that the claimed injury is "both certain and great" and "actual and not theoretical." Second, the movant "must show that '[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.' " *Id.* (alterations in original) (*quoting Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C.) ). And, finally, the injury must be "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

*Ramirez v. USCIS*, 310 F.Supp.3d 7, 31 (D.D.C. 2018); *see Feng Wang v. Pompeo*, 354

F.Supp.3d 13, 25-27 (D.D.C. 2018).  In this case, either Ms. Chatterjee, LexisNexis, or both of

them will suffer irreparable harm warranting preliminary injunctive relief.

1.      **Ms. Chatterjee's Career And Financial Well-Being Will Be Irreparably Harmed If Not Granted Preliminary Injunctive Relief**

If the Court were not to grant the requested 5 U.S.C. § 705 stay of the Defendant's final

agency action prior to August 3, 2019, Ms. Chatterjee will be irreparably harmed.  Ms.

Chatterjee's current F-1 student visa, with its STEM OPT extension, expires on August 3, 2019.

Once her current visa expires, Ms. Chatterjee will be required to cease working in the United

States and will have sixty (60) days to leave the United States.  See Declaration of Subhasree

Chatterjee ("Chatterjee Declaration") at ¶5.   It is unlikely that this Court will reach a final

determination on the merits of this case by October 3, 2019, let alone by August 3, 2019.

Ms. Chatterjee, a recent Masters degree candidate and at the very beginning of her

professional carrer, will lose all career progress and momentum she has accumulated at

LexisNexis during the short time she was working in the United States.  Chatterjee Declaration at

¶8.  The loss of opportunity to pursue her chosen profession as a Data Analyst for LexiNexus

constitutes irreparable harm.  "The irreparable nature of Plaintiffs' injury is heightened by

Plaintiffs' young age and fragile socioeconomic position. Setbacks early in their careers are

likely to haunt Plaintiffs for the rest of their lives. Thus, 'a delay, even if only a few months,

pending trial represents ... productive time irretrievably lost' to these young Plaintiffs." *Arizona*

*Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

In addition to irreparable career damage, Ms. Chatterjee will experience the following

irreparable financial harms commencing on August 4, 2019:

- She will lose her job and be required to stop working for LexisNexis anywhere in the United States and left without employment or any current means to support herself (Chatterjee Declaration at ¶9);
- She will be taken off the LexisAdvance UXR team and be left with no work to perform for LexisNexis anywhere outside of the United States because the LexisAdvance team only works out of the Raleigh, NC COE (*Id*. at ¶10);
- Because she will be without income and will be forced to leave the United States, she will be forced to default on her apartment lease, pay contractual penalties, and receive adverse credit scores as a result (*Id*. at ¶11);
- Because she will be without income and will be forced to leave the United States, she will be forced to default on her car loans, pay contractual penalties, sell her car, and receive adverse credit scores as a result (*Id*. at ¶12);
- Because she will be without income, Ms. Chatterjee will be required to cease providing financial support to her parents in India, causing irreparable harm to her, her parents and her entire extended family (*Id*. at ¶13);
- Ms. Chatterjee will not be able to find comparable employment in India for anywhere close to a comparable salary – resulting in a salary reduction from approximately $85,000 in the United States down to as low as $7,000 per year in India for the same occupation/profession.  *Id*. at ¶14.  It may also take several months or longer for Ms. Chatterjee to find employment in her profession in India

if she were forced to leave the United States. *Id*. at ¶15.  This would further compound the irreparable nature of the financial harms that would befall her if a preliminary injunction were not granted.

The foregoing harms are "beyond remediation" within the meaning of *Chaplaincy of Full Gospel Churches* because, even when Ms. Chatterjee prevails on the merits of her claims at the conclusion of this case, there will be no mechanism for her to recoup her career and life shattering financial losses from the Government.   Based on these irreparable harms, the Court should grant Plaintiffs the preliminary injunctive relief they seek.

> ## 2.     LexisNexis Will Be Irreparably Harmed If Not Granted Preliminary Injunctive Relief

While not as patently obvious as the calamitous harms that will befall Ms. Chatterjee, LexisNexis will also suffer irreparable harm "beyond remediation" if the Court were not to grant the requested 5 U.S.C. § 705 stay of the Defendant's final agency action.

> It is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co*., 758 F.2d at 674. " 'The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.' ... Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Id*. (*quoting Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (emphasis in original) (citation omitted) ).

*Feng Wang v. Pompeo*, 354 F.Supp.3d 13, 26-27 (D.D.C. 2018).

In this case, the loss of Ms. Chatterjee as an employee unless a preliminary injunction is granted will threaten the very existence of LexisNexis's LexisAdvance product.  Andrade Decl. at ¶17.  Ms. Chatterjee is the most qualified and most senior Data Analyst working on LexisNexis's LexisAdvance product. *Id.* at ¶18.  Ms. Chatterjee possesses a unique blend of directly applicable education and years of experience working for LexisNexis. *Id*.  LexisNexis will not be able to find a suitably educated replacement for Ms. Chatterjee, bring such hypothetical replacement to the Raleigh, NC COE, and get that replacement up to speed to

29

perform at a minimal level of proficiency involving LexisNexis' product line for at least a year, if not longer.  *Id*. at 19.  In the interim, LexisNexis would be without its most qualified and most senior Data Analyst for LexisAdvance, its flagship product, and lack the competitive advantage that complex data analytics provide for its maintaining and improving its products and future product development.  The absence of Ms. Chatterjee and her expertise will significantly delay product development and delivery, for up to a year if not longer.  *Id*. at 20.  As a result, LexisAdvance will likely lose subscribers and market share in the extremely competitive market for its products, from which it may never fully recover.  *Id*. at 21.  Given the highly competitive nature of on-line legal research with only two major players in the marketplace (of which the Court can likely take judicial notice), LexisNexis's inability to retain Ms. Chatterjee after August 3, 2019 and during the pendency of this case may threaten the very existence of LexisAdvance and LexisNexis's place in the online legal research marketplace.  Id. at 22.

Based on the foregoing irreparable harms to Ms. Chatterjee, LexisNexis, or both of them, Plaintiffs have satisfied the irreparable harm element of their motion for preliminary injunctive relief and a 5 U.S.C. § 705 stay of the Government's January 2019 final agency decision pending a final decision in this case.

### E.    The Balance Of The Equities And The Public Interest Favors Granting A Preliminary Injunction

The third element of any request for preliminary injunctive relief is a review of the balance of the equities, and the fourth element is analyzing the public interest.   Both of those elements favor granting injunctive relief to Plaintiffs.

> In addition to analyzing substantial likelihood on the merits and irreparable harm, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24, 129 S.Ct. 365 (internal quotation marks omitted) (*quoting Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ). "[C]ourts ... should [also] pay particular regard for the public consequences in

employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (citation omitted). When the government is the non-movant, as it is in this case, these factor merge. *See Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009); *see also Doe v. Mattis*, 889 F.3d 745, 766 (D.C. Cir. 2018) ("When a private party seeks injunctive relief against the government, the final two injunction factors—the balance of equities and the public interest—generally call for weighing the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined.").

*Feng Wang v. Pompeo*, 354 F.Supp.3d 13, 27 (D.D.C. 2018)(granting preliminary injunction).

While the balance of the equities and public interest factors "merge" when the Government is the non-moving party, as explained above, Plaintiffs will analyze each separately below – as each leads to the same result.

In considering whether to grant a preliminary injunction, the Court must "balance the competing claims of injury and ... consider the effect on each party of the granting or withholding of the requested relief." *Texas Children's Hosp. v. Burwell*, 76 F.Supp.3d 224, 245 (D.D.C. 2014) (internal quotation marks and citations omitted). Where an injunction will "not substantially injure other interested parties," the balance of equities tips in the movant's favor. *League of Women Voters of the United States v. Newby*, 838 F.3d at 12 (citation omitted). Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Open Communities Alliance v. Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017).

*Jacinto-Castanon de Nolasco v. USCIS*, 319 F.Supp.3d 491, 503 (D.D.C. 2018)(granting preliminary injunction).

In this case, Defendants will not be harmed should the Court grant a 5 U.S.C. § 705 stay of the Defendant's final agency action and permit Ms. Chatterjee to work and remain in the United States pending a decision in this case.  There is likely no set of facts that could suggest any material harm to the Government when the Court grants Plaintiffs preliminary injunctive relief here so as to permit Ms. Chatterjee, who lawfully entered into this country on a student F-1 visa and is currently employed by LexisNexis during the STEM OPT portion of that valid visa, to remain gainfully employed by LexisNexis as a Data Analyst pending a final resolution of this matter.

The result of the foregoing analysis is affirmed when the Court also considers the public interest factor.  "As courts in this district have recognized, 'The public interest is served when administrative agencies comply with their obligations under the APA.'"  *Damus v. Nielsen*, 313 F.Supp.3d 317, 342 (D.D.C. 2018) (*quoting N. Mariana Islands v. United States*, 686 F.Supp.2d 7, 21 (D.D.C. 2009)); *see also Jacinto-Castanon de Nolasco v. USCIS*, 319 F.Supp.3d 491, 504-505 (D.D.C. 2018)("The public's interest in enforcing the criminal and immigration laws of this country would be unaffected by issuance of the requested preliminary injunction. The Executive Branch remains free to prosecute those who unlawfully enter the United States and institute removal proceedings against them. But the public also has an interest in ensuring that its government respects the rights of immigrants to family integrity while their removal proceedings – or in this case, asylum proceedings – are pending.")(granting preliminary injunction); *Ramirez v. USCIS*, 310 F.Supp.3d 7, 33 (D.D.C. 2018) ("The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate.")(granting preliminary injunction).

In this case, the public interest is served by granting the limited scope status quo preserving preliminary injunction Plaintiffs seek here so as to permit Ms. Chatterjee to remain gainfully and legally employed by LexisNexis pending a final resolution of this case.  It is clearly in the public interest that Defendants comply with immigration laws and regulations and comply with the APA and properly consider and weigh all of the evidence submitted when deciding whether to grant H-1B visa petitions.  Given Defendants' failure to abide by basic administrative law principles, it is in the public interest to maintain the status quo for both Ms. Chatterjee and LexisNexis pending a resolution of this case on the merits.

Therefore, based on the foregoing, the third and fourth preliminary injunction factors squarely favor granting Plaintiffs the preliminary injunctive relief they seek here.

### F.     No Injunction Bond Should Be Required In This Case Concerning A Visa For Only One Specialty Occupation Visa Applicant

Plaintiffs respectfully request that the Court not require that either of them post a Fed.R.Civ.P. 65(c) bond, or simply post a bond in a nominal amount.

> Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "It is well settled that Rule 65(c) gives the Court wide discretion in the matter of requiring security." *Nat'l Res. Def. Council, Inc. v. Morton*, 337 F.Supp. 167, 168 (D.D.C.1971). "[T]he district court has power not only to set the amount of security but to dispense with any security requirement whatsoever where the restraint will do the defendant no material damage, where there has been no proof of likelihood of harm, and where the applicant for equitable relief has considerable assets and is ... able to respond in damages if defendant does suffer damages by reason of a wrongful injunction." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (internal citations, quotation marks, and alterations omitted).

*Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F.Supp.2d 30, 52 (D.D.C. 2013).

In this case, all of the conditions in *Fox Television Stations* have been satisfied justifying a waiver of any security.  As discussed above, the 5 U.S.C. § 705 stay is expressly authorized by federal statute and granting Plaintiffs' requested relief – concerning a solitary visa application only for Ms. Chatterjee – will result in absolutely no material damage or harm to any Defendant. Nor is there any proof of likelihood of harm to the Government should the statutory stay be put in place.  *See East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 868-69 (N.D.Cal. 2018) (waiving any injunction bond for APA challenge to nationwide immigration policies). Finally, LexisNexis, a large corporation wth preeminence in the legal research market,  "has considerable assets and is ... able to respond in damages if" the Government somehow were to

suffer by reason of a wrongful injunction involving only the H-1B visa petition for the benefit of

Ms. Chatterjee.

Therefore, based on the foregoing, Plaintiffs respectfully request that they not be required

to post any Fed.R.Civ.P. 65 bond.  In the alternative, Plaintiffs suggest that an nominal bond, for

instance in the amount of $500.00, be required as a condition for issuing 5 U.S.C. § 705

preliminary injunctive relief in this case.

## V.     CONCLUSION

Based on the foregoing, Plaintiffs RELX, Inc. d/b/a LexisNexis USA and Subhasree

Chatterjee respectfully ask this Court to order a 5 U.S.C. § 705 stay and Fed.R.Civ.P. 65(c)

preliminary injunction (each without any requirement to post a bond) against the Government

Defendants to maintain the current status quo of Ms. Chatterjee's visa status thereby permitting

her to work for RELX, Inc. in her current role as a Data Analyst and remain in the United States

while this Court proceeds in due course to rule on the merits of Plaintiff's Administrative

Procedure Act challenge to the Government's January 23, 2019 final agency decision.

DATED:        July 8, 2019                              Respectfully submitted,

                                                        DUANE MORRIS LLP

                                                        */s/ Michael J. Schrier*
                                                        Michael J. Schrier
                                                        (D.C. Bar No. 444693)
                                                        Denyse Sabagh
                                                        (D.C. Bar No. 369113)
                                                        DUANE MORRIS LLP
                                                        505 9th St., NW, Suite 1000
                                                        Washington, D.C.  20004-2166
                                                        Tel:  202-776-5221
                                                        Fax:  202-478-0158
                                                        MJSschrier@duanemorris.com
                                                        DSabagh@duanemorris.com

## CERTIFICATE OF SERVICE

I hereby certify on this 8th day of July, 2019, a true and correct copy of the foregoing and related exhibits and declarations was served via certified mail, return receipt requested to the following:

Kathy A. Baran, in her Official Capacity,
Director of the California Service Center,
U.S. Citizenship and Immigration Services,
U.S. Department of Homeland Security
24000 Avila Road
Laguna Niguel, CA 92677

Kenneth T. Cuccinelli, in his Official Capacity, Acting Director
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
20 Massachusetts Avenue, NW
Washington, DC 20529

Kevin McAleenan, in his Official Capacity, Acting Secretary
U.S. Department of Homeland Security
245 Murray Lane, SW
Washington, DC 20528

U.S. Citizenship and Immigration Services
20 Massachusetts Avenue, NW
Washington, DC 20529

U.S. Department of Homeland Security
245 Murray Lane, SW
Washington, DC 20528

United States Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530

United States Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530

*/s/ Michael J. Schrier*
Michael J. Schrier

1