## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RELX, INC. d/b/a LexisNexis USA, ) | |
| ) | |
| and ) | |
| ) | |
| SUBHASREE CHATTERJEE ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 1:19-cv-01993-EGS |
| v. ) | |
| ) | |
| KATHY A. BARAN, ) | |
| in her Official Capacity, ) | |
| Director of the California Service Center, ) | |
| U.S. Citizenship and Immigration ) | |
| Services, U.S. Department of ) | |
| Homeland Security, ET AL. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DATED:     July 22, 2019

Michael J. Schrier
(D.C. Bar No. 444693)
Denyse Sabagh
(D.C. Bar No. 369113)
DUANE MORRIS LLP
505 9th St., NW, Suite 1000
Washington, D.C.  20004-2166
Tel:  202-776-5221
Fax:  202-478-0158
MJSschrier@duanemorris.com
DSabagh@duanemorris.com

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   PARTIES AND H-1B LEGAL FRAMEWORK....................................................2

      A.   Plaintiffs RELX, Inc. And Subhasree Chatterjee ............................................ 2

      B.   The Government Defendants ........................................................... 4

      C.   Legal Framework For Granting H-1B Visas.................................... 4

III.  STATEMENT OF FACTS ..........................................................................5

      A.   Plaintiff's File Form I-129 Petition Seeking H-1B Status .................................. 5

      B.   The Government Issues A Request For Evidence And Plaintiffs' Response.......................................................................... 7

      C.   Government Denies The H-1B Petition On Superficial And Unsupported Grounds ...................................................................... 9

      D.   LexisNexis Moves To Reopen And/Or Reconsider Previously Denied Petition ......................................................................... 9

      E.   Government Denied Motions In January 23, 2019 Final Agency Action ......................................................................... 10

IV.   ARGUMENT ..........................................................................................11

      A.   Combined Summary Judgment And APA Standard Of Review .................. 11

      B.   The Government Erred As A Matter Of Law When It Failed To Correctly Apply A Preponderance Of The Evidence Standard .................... 13

      C.   The Government's Analysis Of The First Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ......................................................................................... 16

           1.   The Government Applied The Wrong Legal Standard...................... 17

           2.   Defendants Are Not Entitled To Any Deference When "Interpreting" A Document Created By Another Federal Agency............................. 17

           3.   Defendants Ignore Dispositive Information From The OOH............ 18

           4.   The Government Applied The Wrong Burden Of Proof .................... 20

5.      Defendants Incorrectly Rely On O*NET Job Title For An "Administrative Service Manager" When Denying The H-1B Visa Petition For A Data Analyst Position .................................... 21

6.      Defendants Erred When They Ignored Professor Steinke's Expert Opinion ................................................................................................ 22

7.      Defendants Erred When They Ignored The OOH And Directly Related O*NET And Expert Evidence ................................................ 22

D.      The Government's Analysis Of The Second Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ............................................................................................................. 23

E.      The Government's Analysis Of The Fourth Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ............................................................................................................. 27

F.      Plaintiffs Have Established Multiple Grounds for Setting Aside The Final Agency Action Pursuant To The APA ...................................... 31

G.      Plaintiffs Request Immediate Injunctive Relief Directing The Government To Issue The Improperly Withheld H-1B Visa To Ms. Chatterjee ......................................................................................... 32

V.      CONCLUSION ............................................................................................. 33

DM2\10203863.2

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abington Memorial Hospital v. Burwell*, 216 F.Supp.3d 110 (D.D.C. 2016) ...............................12

*Almerfedi v. Obama*, 654 F.3d 1 (D.C. Cir. 2011).......................................................................15

*Auer v. Robins*, 519 U.S. 452 (1997) ..........................................................................................18

*Bloch v. Powell*, 227 F.Supp.2d 25 (D.D.C. 2002)……..…………………………………….12

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837
    (1984) .......................................................................................................................................18

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28
    L.Ed.2d 136 (1971)…..…...………………………………………………………………12

*Coburn v. McHugh*, 679 F.3d 924 (D.C. Cir. 2012).....................................................................12

*Georgia v. Ashcroft*, 204 F.Supp.2d 4 (D.D.C. 2002) .................................................................14

*Groundfish Forum v. Ross*, 375 F.Supp.3d 72 (D.D.C. 2019)......................................................12

*Hospital of University of Pennsylvania v. Sebelius*, 847 F.Supp.2d 125 (D.D.
    2012) .......................................................................................................................................12

*Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 117 S.Ct. 1953, 138 L.Ed.2d
    327 (1997)...............................................................................................................................14

*Motor Vehicle  Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29
    103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)………………………………..………………...12

*N.C. Fisheries Ass'n v. Gutierrez*, 518 F.Supp.2d 62 (D.D.C. 2007)……..…………………….11

*Occidental Eng'g Co. v. INS*, 753 F.2d 766
    (9th Cir. 1985)…………………………………………………………………………11-12

*OMV Medical, Inc. v. U.S.*, 219 F.3d 1337 (Fed. Cir. 2000).......................................................18

*Residential Finance Corp. v. U.S. Citizenship And Immigration Services*, 839
    F.Supp.2d 985 (S.D.Ohio 2011) ................................................................................2, 21, 25

*Richards v. INS*, 554 F.2d 1173 (D.C. Cir. 1977)………………..…………………….….12

*Van Hollen, Jr. v. FEC*, 811 F.3d 486 (D.C. Cir. 2016).............................................................12

i

**Federal Statutes and Rules of Court**

5 U.S.C. § 556(d) ................................................................................................................13

5 U.S.C. § 706 ...............................................................................................11, 16, 31, 32

8 U.S.C. § 1184(g)(5) ............................................................................................................5

8 U.S.C. § 1101(a)(15)(H)(i)(B) ........................................................................................10

8 U.S.C. §1184(i)(1) ............................................................................................................4

29 U.S.C. § 2 ........................................................................................................................18

**Other Authorities**

8 C.F.R. §214.2(h)(4)(iii)(A) ....................................................................................... Passim

*Matter of Patel*, 18 I&N 774 (BIA 1988) ...........................................................................13

*Matter of Pazandeh*, 19 I&N, 884 (BIA, 1989) .................................................................13

*Matter of SooHoo*, 11 I&N 151 (BIA 1965) ......................................................................13

## I.      INTRODUCTION

Plaintiffs RELX, Inc. d/b/a LexisNexis USA ("LexisNexis") and Subhasree Chatterjee ("Chatterjee"), pursuant to Fed.R.Civ.P. 56 and LCvR 7(h), hereby move this Court for summary judgment in this Administrative Procedure Act case challenging the validity of the Government's January 23, 2019 final agency decision denying Ms. Chatterjee a H-1B visa to work as a Data Analyst for LexisNexis.   The Court placed this matter on an expedited briefing and hearing schedule – consolidating the pending Motion for Preliminary Injunction with a decision on the merits - in light of the fact that Ms. Chatterjee's current F-1 visa expires on August 3, 2019.  Plaintiffs seek declaratory judgment that the January 23, 2019 final agency action must be set aside and an order from this Court directing the Government to issue Ms. Chatterjee a H-1B visa immediately, before the expiration of her current F-1 visa.

This action seeks relief against Kathy A. Baran, Director of the California Service Center, U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"); Kenneth T. Cuccinelli, Acting Director, USCIS; Kevin McAleenan, Acting Secretary, U.S. Department of Homeland Security; USCIS; and DHS (collectively "the Government" or "Defendants") under the Administrative Procedure Act ("APA"), 5 U.S.C. §702, based on the Government's improper January 23, 2019 denial of Form I-129, Petition for Nonimmigrant Worker, otherwise known as an H-lB visa petition, filed by LexisNexis on behalf of Ms. Chatterjee, for her to remain employed by LexisNexis as a Data Analyst after the expiration of her F-1 student visa.  The Government denied the H-1B petition on the sole ground that the job offered to Ms. Chatterjee allegedly did not qualify as an H-1B specialty occupation.  In light of the extensive evidence submitted by LexisNexis in support of the H-1B petition and the fundamentally flawed analysis in the Government's January 23, 2019 denial, the denial was

1

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Plaintiffs LexisNexis and Ms. Chatterjee request that the Court hold unlawful and set aside the

January 23, 2019 denial of Ms. Chatterjee's H-1B petition, order the Government to issue the

"unlawfully withheld or unreasonably delayed" H-1B visa immediately, and grant other

appropriate declaratory and injunctive relief.  *See, e.g., Residential Finance Corp. v. U.S.*

*Citizenship And Immigration Services*, 839 F.Supp.2d 985, 994- 97 (S.D.Ohio 2011)("Defendant

failed to examine all of the correct relevant data and to articulate an untainted, satisfactory

explanation for the denial that rationally connected the facts to the decision. The denial of the

petition here was thus arbitrary, capricious, and an abuse of discretion.")(granting employer

summary judgment in APA challenge to Government denial of H-1B visa application for a

Market Research Analyst based on the Government's faulty reading and analysis of the U.S.

Department of Labor's Occupational Outlook Handbook and an overall failure to properly

analyze the copious evidence submitted by the employer).

## II.      PARTIES AND H-1B LEGAL FRAMEWORK

### A.      Plaintiffs RELX, Inc. And Subhasree Chatterjee

Plaintiff RELX, Inc. d/b/a LexisNexis USA, is a Delaware corporation with its principal

place of business in New York, NY.  RELX is an umbrella corporation with several key markets:

Legal, Scientific, Medical, Risk, and Exhibitions. LexisNexis USA is an unincorporated division

of RELX, Inc..  Declaration of Leticia Andrade[1] at ¶3.  LexisNexis is a leading provider of

comprehensive information and business solutions to professionals in a variety of areas – legal,

---

[1] To the extent the Court requires support for these background facts which do not form the basis
for the APA challenge and are not directly evident from the Administrative Record, the Court is
directed to review the Declaration of Leticia Andrade and/or the Declaration of Subhasree
Chatterjee that were supplied as exhibits to Plaintiffs' prior Motion for Preliminary Injunction.

risk management, corporate, government, law enforcement, accounting, and academic. *Id.* LexisNexis helps customers achieve their goals in 100 countries. It provides customers access to 5 billion searchable documents from more than 32,000 legal, news, and business sources. Corporations and legal professionals manage, organize, and integrate their work processes using their unique set of solutions. *Id.* LexisNexis services its customers by building the best legal research tools available, including its flagship LexisAdvance. LexisAdvance is the engine that powers legal research at all levels of the judicial system. *Id.* at ¶4.

LexisNexis does its work through three engineering "Centers of Excellence" ("COE") throughout the globe: London, UK; Shanghai, China; and Raleigh, NC, USA. *Id.* at ¶5. The Raleigh, NC office is home to the engineering team for LexisAdvance. *Id.* at ¶6. LexisNexis has placed a great deal of emphasis in colocation of its employees, moving people from other US locations to Raleigh, NC. Within the Raleigh, NC COE, there is located LexisNexis's User Experience Research ("UXR") team which harnesses qualitative and quantitative data to ensure that the company is investing in the right areas of product development and designing products – including Lexis Advance – that users will find most useful. *Id.* at ¶7.

Plaintiff Ms. Subhasree Chatterjee is a citizen of India, currently residing in Raleigh, NC. Declaration of Subhasree Chatterjee at ¶2. Ms. Chatterjee is a current employee of LexisNexis working as a Data Analyst in LexisNexis's Raleigh, NC engineering COE on the flagship product LexisAdvance as part of the UXR team. Andrade Decl. at ¶8. Ms. Chatterjee holds a Master of Science in Business Administration, with a focus on Business Analytics, from the University of Cincinnati, located in Ohio, USA. AR034-5. Prior to earning her Masters degree or beginning to work for LexisNexis in 2017, Ms. Chatterjee earned a Bachelor of Technology degree in Computer Science and Engineering from West Bengal University of Technology in

Kolkata, India.  Ms. Chatterjee also had extensive practical experience in data analytics from

four years of working for Infosys in Pune, India and one year working in data analytics for

Evalueserve Inc. in Raleigh, NC in the specialized field of Analytics Delivery after earning her

undergraduate degree.  Chatterjee Decl. at ¶7.  Andrade Decl. at ¶9.

     Ms. Chatterjee is currently in the United States on a F-1 student visa with STEM OPT

(Optional Practical Training) that expires on August 3, 2019 (AR037-45), after which she will

not be permitted to work in the United States and may need to leave the United States unless the

Government's final agency action is stayed or reversed by then.  Ms. Chatterjee is the subject of

the H-1B petition LexisNexis filed and she is directly impacted by the Government's January 23,

2019 final agency decision denying her a H-1B visa.

     **B.**     **The Government Defendants**

     The Defendants in this case, all government officials sued in their official capacity or the

federal agencies involved, are each responsible for the January 23, 2019 final agency decision

denying a H-1B visa filed by LexisNexis on behalf of Ms. Chatterjee.

     **C.**     **Legal Framework For Granting H-1B Visas**

     An H-1B visa allows a foreign national to be admitted temporarily to the United States to

work in a "specialty occupation," which is defined as an occupation that requires "theoretical and

practical application of a body of highly specialized knowledge" and "attainment of a bachelor's

or higher degree in a specific specialty (or its equivalent) as a minimum for entry into the

occupation in the United States." 8 U.S.C. §1184(i)(1).

     Pursuant to regulations implementing the INA, a position must be found to meet one of

any of the following four mutually independent criteria to qualify as an H-1B specialty

occupation:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. §214.2(h)(4)(iii)(A).

## III.    STATEMENT OF FACTS

### A.    Plaintiff's File Form I-129 Petition Seeking H-1B Status

On April 12, 2018, LexisNexis filed a Petition for Nonimmigrant Worker (Form I-129) on behalf of Ms. Chatterjee, a citizen of India.  Administrative Record[2] at 086.  LexisNexis petitioned to classify Ms. Chatterjee in H-1B status so that she could continue to work for LexisNexis in the specialty occupation of Data Analyst, at LexisNexis's only specialized Center for Excellence located in the United States, and the only Center of Excellence supporting LexisNexis' flagship product, LexisAdvance.  Andrade Decl. at ¶11; AR008-49.  Because Ms. Chatterjee, as the Beneficiary, did not meet any of the exemptions in 8 U.S.C. 1184(g)(5), the petition filed on her behalf was subject to the H-lB cap for persons with "U.S. Master's Degree

---

[2] In email correspondence from Government counsel dated July 18, 2019, counsel stated that the Government would not be preparing a Certified Administrative Record for this case (as expressly required by LCvR 7(n)) prior to Plaintiffs' July 22, 2019 summary judgment filing deadline. Instead, the Government "agree[d] that the attachments to your motion for preliminary injunction can constitute the CAR for purposes of your citations in your MSJ."  In reliance on that representation from counsel, and for the convenience of the Court, Plaintiffs have consolidated Exhibit 1 through 6 from their Preliminary Injunction motion to make a solitary "Administrative Record" with appropriate consecutive bates numbers for purposes of this motion.  Hereinafter, all references to the Administrative Record shall be to "AR" followed by the appropriate page number.

or Higher."  AR024.  As such, LexisNexis filed the petition with a requested validity period of October 1, 2018 to September 1, 2021.  AR017.

As a Data Analyst for LexisNexis, after earning her Masters degree with a focus on Business Analytics and upon Defendants' granting the H-1B petition, Ms. Chatterjee would have continued to be employed and paid by LexisNexis.  She would continue to work for LexisNexis at its only United States based Center for Excellence, located in Raleigh, NC and support LexisNexis' flagship product, LexisAdvance.  Andrade Decl. at 12.

In support of its petition, Plaintiff supplied a Labor Condition Application ("LCA") (Case Number I-200-18060-605447), certified by the U.S. Department of Labor for the requested validity period of September 2, 2018 through September 1, 2021 (AR026-31); a letter from Leticia Andrade, Plaintiff's Immigration Compliance Specialist (AR032-33); background information about LexisNexis (*id*); copies of Ms. Chatterjee's Master's degree from the University of Cincinnati and official transcript (AR034-35); a copy of her F-1 student visa and work authorization (AR036-45); and a copy of the biographic page of Ms. Chatterjee's unexpired passport (AR048-49).

The position of Data Analyst offered to Ms. Chatterjee by LexisNexis has a great number of technical responsibilities that cannot be performed by an individual lacking the equivalent of a U.S. bachelor's degree. These responsibilities, include "analyzing, investigating, and hypothesizing data to effectively communicate with internal and external customers, management and functional areas by presenting problem resolution, product information…work with Designers and Researchers, embedded in product development teams, to help them understand customer behavior…analyze, investigate, negotiate and resolve problems to help inform product design decisions."  AR032.

6

**B.     The Government Issues A Request For Evidence And Plaintiffs' Response**

On or about May 7, 2018, the USCIS California Service Center issued a Request for

Evidence to LexisNexis requesting illustrative categories of information regarding whether the

Data Analyst position is a "specialty occupation."   AR052-53.  Among the categories requested

were (i) "A detailed statement to explain the beneficiary's proposed duties and responsibilities;

indicate the percentage of time devoted to each duty; and state the educational requirements for

these duties"; (ii) "Job postings or advertisements showing a degree requirement is common to

the industry in parallel positions among similar organizations"; and (iii) expert opinions

supported by "The writer's qualifications as an expert; How the conclusions were reached; and

The basis for the conclusions supported by copies or citations of any materials used."  AR052.

Plaintiffs fully complied with the Government's RFE and submitted precisely the

information requested.  On June 18, 2018, LexisNexis responded to Defendants' Request for

Evidence with (a) a detailed supplemental letter from Leticia Andrade, Plaintiff's Immigration

Compliance Specialist (AR055-57); (b) an organizational chart (AR058); (c) six job

announcements for Data Analyst positions, from six different employers, each showing that the

Data Analyst position for the other employers requires at least a Bachelor's degree in STEM

fields such as business analytics, statistics, mathematics, economics or operations research

(AR059-64); and (d) an expert opinion from Dr. Gerhard Steinke, Professor of Management and

Information Systems at Seattle Pacific University (AR065-85).  Through its June 2018

submission, LexisNexis intentionally provided extensive evidence on only three out of the four 8

C.F.R. §214.2(h)(4)(iii)(A) grounds for "specialty occupation."

Leticia Andrade explained the sophisticated and specialty nature of the Data Analyst

position to Defendants in her supplemental letter, as follows:

As indicated in the H-lB petition filed on her behalf, Ms. Chatterjee will be employed by LexisNexis USA as a Data Analyst. In this position, she will utilize her business analytics education and relevant professional experience to:

- Use SQL to extract data to describe user behavior on LexisAdvance, accessing the correct data sources, checking data integrity, and ensuring overall data quality (30%);
- Use R, Python, or other statistical programming software to program analyses and generate reports leveraging proper statistical techniques such as ANOVA, t-tests, linear models, or logistic regression so that decisions on A/B test results are made with full statistical confidence (20%);
- Perform exploratory data analyses using tools like Rand Python; techniques such as descriptive statistics, kmeans clustering, hierarchical modeling, and dimensionality reduction (20%);
- Use Looker or other Business Intelligence tools to visualize data to provide ongoing insight into key metrics for stakeholders in the UX and PM teams (10%);
- Assist stakeholders in the formulation of hypotheses for web analytics A/B testing (10%);
- Present findings of reports to stakeholders, ensuring they understand implications of how decisions can affect the customer experience (5%); and
- Train stakeholders in the use of data tools such as Looker, ElasticSearch, and Kibana; document use of those tools for stakeholder reference (5%).

AR055-56.

Dr. Gerharde Steinke stated in his expert opinion letter, after identifying and analyzing

the information upon which his opinion was based:

The title of Data Analyst is given to a person who specialized in designing and performing complex data modeling, quantitative analysis and statistical analysis with a focus on enabling the business to better analyze and evaluate their processes, operations, and customers . . .

After examining the Data Analyst position in detail, it becomes apparent that a minimum of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field provides an individual with the core competencies and skills needed for the role. This is because the nature of these specific responsibilities and knowledge is so specialized and complex, that knowledge required to perform these duties is usually associated with the attainment with the bachelor's degree in this field.

The duties listed above require the employee to understand data and information technologies, databases, design options, along with business intelligence processes and methodologies. The position requires a broad understanding of the business environment, as well as knowledge and understanding of quantitative, statistical

8

and business analytics tools, processes, requirements, and strategies.  Such deeper knowledge and understanding is seldom achieved without a solid university education.  A position with these duties would normally be entrusted only to a person with a minimum of a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related qualitative field at a minimum in order to competently handle the duties required by the Data Analyst position. . . .

Based on my qualifications, I conclude that the position of Data Analyst is a specialty occupation as defined under 8 C.F.R. 214.2(h)(4)(ii) requiring theoretical and practical application of a body of highly specialized knowledge, a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field and meets sufficient criteria for a specialty occupation . . . In addition, I conclude that the nature of the position is so specialized and complex that only an individual with a Bachelor's degree in such a field would be able to perform the job duties. Furthermore, the degree requirement is common to the industry in parallel positions among similar organizations and firms similar to the petitioner's routinely recruit and employ only degreed individuals in the specific specialty.

AR066-70.

## C.    Government Denies The H-1B Petition On Superficial And Unsupported Grounds

On September 13, 2018, the Government denied the petition filed by LexisNexis on behalf of Ms. Chatterjee. AR086-94.  The decision acknowledged the existence of some of the evidence provided by LexisNexis and then summarily disregarded all of it, including the expert opinion.  *Id*.  Ultimately, the Government denied the petition for one simple reason, stated several different ways for each of the four mutually independent criteria: LexisNexis had allegedly "not shown that the position is a specialty occupation."  *Id*.

It is important to note that the Government did not provide any of its own evidence to support its decision.  Also, it *did not* conclude that Ms. Chatterjee is not qualified to perform specialty occupation-level work.  *Id*.

## D.    LexisNexis Moves To Reopen And/Or Reconsider Previously Denied Petition

On October 10, 2018, LexisNexis filed a motion with the Government to reopen or, in the alternative, a motion to reconsider the previously denied petition.  *See* AR095-112.  As part of

LexisNexis's motion to reopen and for reconsideration, LexisNexis attached the following exhibits:  (a) a preponderance of the evidence memorandum detailing all of the factual support for the H-1B petition and explaining how the admissible evidence meets the "preponderance of the evidence" standard for granting the H-1B petition and explicitly stating that LexisNexis was seeking reconsideration of the September 13th decision and, alternatively, a reopening of the record (AR107-112); (b) background information regarding the Department of Labor's O*NET (AR129-30); (c) an O*NET Report for 15-1199.08 for the position of Business Intelligence Analyst (AR132-35); (d) documents showing the academic equivalency of degrees in accounting, economics, and operations research with degrees in statistics or mathematics based on their common usage of mathematical formulation, applied mathematics, and statistical analysis (AR137-53); and (e) another copy of Dr. Gerhard Steinke's Expert Opinion Letter (AR148-53).

### E. Government Denied Motions In January 23, 2019 Final Agency Action

On January 23, 2019, the Government, in a seven page decision, affirmed its prior decision finding LexisNexis's Data Analyst position not to be a specialty occupation within the meaning of 8 C.F.R. § 214.2(h)(4)(iii)(A).  AR001-7.  The Government did not argue, or provide any analysis specifically contending, that the Data Analyst position at issue did not meet the requirements for "specialty occupation" pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(B).  Hence, it is the January 23, 2019 final Government decision solely concerning the application of the record evidence to 8 C.F.R. § 214.2(h)(4)(iii)(A) that is the subject of this APA challenge.[3]

_____

[3] On July 22, 2019, the undersigned discovered on the USCIS case management webpage that the January 2019 decision at issue in this case has been "Reopened For Reconsideration."  The USCIS webpage further stated:

## IV.     ARGUMENT

Plaintiffs move for summary judgment in this Administrative Procedure Act case,

seeking a Court order setting aside the Government's January 23, 2019 final agency decision

pursuant to 5 U.S.C. § 706 and an injunction ordering the Government to issue the unlawfully

withheld and unreasonably delayed H-1B visa to Ms. Chatterjee.

### A.     Combined Summary Judgment And APA Standard Of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In a case involving review of a final agency action under the Administrative Procedures Act, 5  U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of  a court in reviewing the administrative record. *See N.C. Fisheries Ass'n v. Gutierrez*, 518 F.Supp.2d 62, 79 (D.D.C. 2007). Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70

---

On July 18, 2019, we reopened your Form I-129, Petition for a Nonimmigrant Worker, Receipt Number WAC1814451524, and are reconsidering our earlier decision. We sent you a notice that describes how we will process your case. Please follow the instructions in the notice. If you do not receive your notice by August 17, 2019, please go to www.uscis.gov/e-request  to request a copy of the notice. If you move, go to www.uscis.gov/addresschange  to give us your new mailing address.

Plaintiffs did not file any motion with USCIS to request such reopening, and such reopening was done without Plaintiffs' consent.  Plaintiffs have also not received the alleged "notice" referenced above prior to filing this motion, which, if sent, was sent via U.S. Mail and will likely not be received until after today.  To date, the Government has not provided Plaintiffs or the Court with any written notice of its actions or the purported legal basis for such action while a Preliminary Injunction Motion (to be consolidated with this motion) is currently pending before this Court.  It is Plaintiffs' contention that the Government's action is without legal or regulatory support and is an improper attempt to divest the Court of jurisdiction and otherwise unreasonably delay a resolution to this case, thereby forcing Ms. Chatterjee to leave the United States after August 3, 2019.  Given the Court's scheduling order, Plaintiffs have no choice but to proceed with filing this summary judgment motion today.  Once the purported rationale for the Government's unilateral action becomes apparent, Plaintiffs will respond accordingly.

(9th Cir. 1985). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *See Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977), *cited in Bloch v. Powell*, 227 F.Supp.2d 25, 31 (D.D.C. 2002), *aff'd*, 348 F.3d 1060 (D.C. Cir. 2003).

> Under the APA, a court may vacate an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if it is "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E). Agency actions are entitled to much deference, and the standard of review is narrow. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The reviewing court is not permitted to substitute its judgment for that of the agency. *See id*. That is, it is not enough for the agency decision to be incorrect—as long as the agency decision has some rational basis, the court is bound to uphold it. *See id*. The court may only review the agency action to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id*.

*Hospital of University of Pennsylvania v. Sebelius*, 847 F.Supp.2d 125, 133 (D.D.C. 2012) (granting plaintiff summary judgment); *see Van Hollen, Jr. v. FEC*, 811 F.3d 486, 495 (D.C. Cir. 2016) (a party challenging an agency action as arbitrary and capricious "must show the agency action is not a product of reasoned decisionmaking."); *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012)("an agency decision is owed no deference if it fails to 'give a reason that a court can measure ... against the 'arbitrary or capricious' standard of the APA.'")(citations omitted); *Groundfish Forum v. Ross*, 375 F.Supp.3d 72, 81 (D.D.C. 2019)("agency action is not arbitrary or capricious provided that the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'")(*quoting Motor Vehicle  Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)); *Abington Memorial Hospital v. Burwell*, 216 F.Supp.3d 110, 129 (D.D.C. 2016)(APA review "effectively creates a division of labor: 'it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record,' and it is the Court's role to 'determine whether or not

as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'")(citations omitted).

### B. The Government Erred As A Matter Of Law When It Failed To Correctly Apply A Preponderance Of The Evidence Standard

The Government fundamentally failed to apply a "preponderance of the evidence" standard to its decision denying Plaintiffs the visa.  The only evidence in the Administrative Record of this case is evidence submitted by Plaintiffs.  The Government did not submit any evidence into the Administrative Record of this case.  Because only Plaintiffs submitted evidence and there was no evidence in the Administrative Record to contradict any of Plaintiffs' evidence, it is unclear how the Government could have denied the visa application in this case without running afoul of the APA.

According to the Government's own administrative case law and internal policy guidance[4], the applicable burden of proof in this case should have been a "preponderance of the evidence."  *See* AR122-127; *Matter of Chawathe*, 25 I&N, 369 (AAO 2010); *Matter of Pazandeh*, 19 I&N, 884 (BIA, 1989); *Matter of Patel*, 18 I&N 774 (BIA 1988); *Matter of SooHoo*, 11 I&N 151 (BIA 1965); *see also* 5 U.S.C. § 556(d)("Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof.").  The Government only made

---

[4] The Government's own internal policy guidance states:

The standard of proof applied in most administrative immigration proceedings is the "preponderance of the evidence" standard.  Thus, even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the applicant or petitioner has satisfied the standard of proof.  If the director can articulate a material doubt, it is appropriate for the director to either request additional evidence or, if that doubt leads the director to believe that the claim is probably not true, deny the application or petition.

AR123.

identical passing formulaic references in the introductory portions of the decisions – without any

legal citation or authority - that "based on a preponderance of the evidence, the petition will be

denied for the reasons discussed below."  AR001; AR086.  In none of the analytical portions of

the final agency decision does the Government even mention or pay lip service to a

"preponderance of the evidence" standard.  AR001-7; *see also* AR086-93.  No statutes,

regulations, or case law is mentioned in the final agency action so as to provide any hint as to

what evidentiary standard the Government actually applied to the record evidence in this case.

*Id*.  The Government did not explain the preponderance of the evidence standard or analyze how

the evidence provided allegedly failed to meet that standard.  Given this fundamental failure to

identify and/or explain the applicable evidentiary standard to be applied, it is necessary to have a

firm grounding in what the evidentiary standard really means.

> "The burden of showing something by a preponderance of the evidence ... simply
> requires the trier of fact to believe that the existence of a fact is more probable than
> its nonexistence before [he] may find in favor of the party who has the burden to
> persuade the [judge] of the fact's existence."  In other words, the preponderance
> standard goes to how convincing the evidence in favor of a fact must be in
> comparison with the evidence against it before that fact may be found, but does not
> determine what facts must be proven as a substantive part of a claim or defense.
> Unlike other standards of proof such as reasonable doubt or clear and convincing
> evidence, the preponderance standard "allows both parties to share the risk of error
> in roughly equal fashion," except that "when the evidence is evenly balanced, the
> [party with the burden of persuasion] must lose[.]"

*Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9, 117 S.Ct. 1953, 138 L.Ed.2d 327,

(1997) (citations omitted)(Finding the Director of Office of Workers' Compensation Programs

misapplied the preponderance of evidence burden of proof when it required employee facing

reduction in Longshore and Harbor Workers' Compensation Act benefits prove more than

required to meet his burden); *see Georgia v. Ashcroft*, 204 F.Supp.2d 4, 9 (D.D.C. 2002) ("A

preponderance standard ...  requires merely that the fact-finder believe that the existence of a

fact is more probable than the non-existence of that fact."  In other words, " '[t]he burden of

showing something by a preponderance of the evidence ... simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [the trier of fact] may find in favor of the party who has the burden to persuade the [court] of the fact's existence.' ")(citations omitted).

> The preponderance of the evidence standard does not require the Government
>
> to reach a conclusion about whether that proposition is actually true; "[c]ertainty [is] not necessary, nor [is] absence of any reasonable doubt." In other words, "[t]he preponderance of the evidence standard requires the party with the burden of proof to support its position [only] with the greater weight of the evidence." That does not mean that we simply weigh, in a mechanical sense, the number of pieces of probative evidence on the government's side against that offered by a petitioner. Rather, the court makes a judgment about the persuasiveness of the evidence offered by each party and decides whether it is more likely than not that the petitioner meets the [applicable legal] standard.

*Almerfedi v. Obama*, 654 F.3d 1, 5 (D.C. Cir. 2011) (citations omitted); see

As explained above, LexisNexis supplied ample and extensive evidence on the many ways in which the Data Analyst position Ms. Chatterjee would occupy after being granted an H-1B visa was a specialty occupation within the meaning of 8 C.F.R. §214.2(h)(4)(iii)(A). In the September 2018 decision (AR086-93) and the January 2019 final agency decision under review here (AR001-7), the Government did not identify the existence of any evidence in the administrative record not provided solely by LexisNexis. In fact, from the plain language of the final agency decision, there was absolutely no contrary evidence in the administrative record to counter the evidence LexisNexis submitted. Despite the non-existence of contrary evidence in the administrative record, the Government ignored or disregarded much of what LexisNexis submitted and ultimately denied its visa petition for an alleged failure to show "that the proffered position is a specialty occupation." AR006.

*The Government did not cite, discuss, or analyze the preponderance of the evidence standard in the analytical portions of its decisions which are the subject of this litigation*. Nor

did it apply that legally required preponderance of the evidence burden of proof when denying LexisNexis's visa petition.  It could not have applied the proper burden of proof if it denied LexisNexis's visa petition when the **only evidence** before the Government in the administrative record was the evidence provided by LexisNexis.  Even if the Government were justified in giving the only evidence in the administrative record "little weight" (which for reasons outlined below should not happen, but for arbitrary and capricious action or inaction by the Government), LexisNexis' evidence as compared to zero evidence supplied by the Government should have been more than sufficient for LexisNexis to meet its preponderance of the evidence burden of proof.

Clearly, the Government applied a burden of proof other than preponderance of the evidence to LexisNexis's entire H-1B visa petition for Ms. Chatterjee – implicitly requiring "certainty" or "absence of reasonable doubt."  As such, the Government acted "not in accordance with law" and its entire January 2019 final agency decision must be set aside as a matter of law. *See* 5 U.S.C. §706(2)(A).

### C.   The Government's Analysis Of The First Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law

The first of the four mutually independent 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for granting a H-1B visa is that a "bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position."  LexisNexis supplied ample evidence to support this prong, which the Government improperly disregarded.

 LexisNexis, as part of its H-1B application, provided an LCA signed by the U.S. Department of Labor certifying that the Data Analyst position at issue in this case was properly within SOC Code 15-1199 with SOC occupation title "Computer Occupations, All Other." AR0027-31.  LexisNexis explained that the Data Analyst position at issue here fell within the

16

"Business Intelligence Analyst" subspecialty of "Computer Occupations, All Other."  AR003.

The Government did not find any fault with the LCA submitted by Plaintiffs.  The Government,

however, denied the H-1B application by incorrectly relying solely on the U.S. Department of

Labor's Occupational Outlook Handbook ("OOH") – and no contrary evidence – to make many

critical errors that arise to the level of arbitrary, capricious, abuse of discretion or outright legal

error reversible under the APA.

### 1.      The Government Applied The Wrong Legal Standard

The applicable regulatory standard for whether to issue a H-1B visa is whether a

"baccalaureate or higher degree or its equivalent is ***normally*** the minimum requirement for entry

into the particular position."  8 C.F.R. §214.2(h)(4)(iii)(A)(1) (emphasis added).  The standard is

NOT whether a bachelors or higher is ALWAYS required – only whether it is NORMALLY

required.

The Government's final agency decision at issue here effectively required Plaintiffs to

prove that a bachelors degree or higher was always required for a Data Analyst position.

AR003-4.  As such, the Government's decision was "not in accordance with law" and must be

reversed by this Court pursuant to the APA.

### 2.      Defendants Are Not Entitled To Any Deference When "Interpreting" A Document Created By Another Federal Agency

Second, Defendants improperly attempted to "interpret" the U.S. Department of Labor's

OOH instead of taking the information contained therein at face value.  This is particularly

curious since the Government expressly admits that they "recognize[] the *Occupational Outlook*

*Handbook* ("OOH"), a publication of the U.S. Department of Labor (DOL), as an authoritative

source on the duties and educational requirements of the wide variety of occupations that it

addresses."  AR052.  Why would any interpretation of any authoritative reference even be
necessary?

The U.S. Department of Labor is not one of the defendants in this case.  The OOH is a
document created by the U.S. Department of Labor's Bureau of Labor Statistics pursuant to a
Congressional delegation of authority to do so.  *See, e.g.*, 29 U.S.C. § 2.  As such, Defendants –
from Homeland Security and USCIS, federal agencies not delegated statutory authority to create
or interpret the OOH – are not entitled to any deference under *Chevron U.S.A., Inc. v. Natural
Resources Defense Council, Inc*., 467 U.S. 837 (1984), *Auer v. Robins*, 519 U.S. 452 (1997), or
similar authority for their "interpretation" of a document created by another federal cabinet
agency.  *See e.g., OMV Medical, Inc. v. U.S.*, 219 F.3d 1337, 1343-44 (Fed. Cir. 2000)(setting
aside and remanding Air Force's government contracting OOH-based computations on APA
review).  Because Defendants are not entitled to any *Chevron*/*Auer* deference, their factually
incorrect "interpretation" of the OOH is entitled to absolutely no deference and may be set aside
for what it is – arbitrary, capricious and an abuse of discretion.

### 3.     Defendants Ignore Dispositive Information From The OOH

Third, Defendants' "interpretation" of the OOH to find that the "OOH does not contain
detailed profiles for the computer occupations category" (AR003-4) is just factually wrong.  The
OOH listing for "Computer Occupations, All Other" created by the U.S. Department of Labor
expressly cites and incorporates by reference the U.S. Department of Labor's O*NET listing for
Business Intelligence Analyst (SOC Code 15-1199.08);  *See*

https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm[5] which links to

---

[5] While apparently not physically part of the Administrative Record of this case, the Court may
take Fed.R.Evid. 201 judicial notice of the U.S. Department of Labor's OOH in light of the fact
that it was unequivocally the touchstone of this part of the Government's improper denial of Ms.

https://www.onetonline.org/link/summary/15-1199.08 (AR132-35). As such, the OOH does "contain detailed profiles for the computer occupations category" – contrary to Defendants' claim. Even more devastating to the validity of Defendant's January 2019 final agency decision is the fact that the OOH listing for "Computer Occupations, All Other" – covering all of the listed subspecialties including Business Intelligence Analyst – expressly states "Typical entry-level education: Bachelor's degree" for all such subspecialties. *See* Exhibit A (https://www.bls.gov/ooh/about/data-for-occupations-not-covered-in-detail.htm).

The explicit O*NET cross reference to Business Intelligence Analyst (SOC Code 15-1199.08) contained in the OOH listing for "Computer Occupations, All Other" defines the technological (e.g., use of database management and/or query software) and educational (e.g., algebra, geometry, calculus, statistics, and their applications) requirements for the position and explains that "Most of these occupations require a four-year bachelor's degree, but some do not" with further detail that more than 90% of Business Intelligence Analyst positions require at least a Bachelor's degree and at least 33% of the positions also require a Master's degree. *See* AR0134. As the Department of Labor itself explains, "[t]he O*NET Program is the nation's primary source of occupational information. The database, which is available to the public at no cost, is continually updated from input by a broad range of workers in each occupation." AR129. Nowhere in the final agency decision does the Government argue that the subject Data Analyst position is not analogous to the Business Intelligence Analyst position described in O*NET and expressly included by reference in the OOH.

---

Chatterjee's H-1B visa. For the Court's convenience, relevant portions of this Department of Labor webpage have been prepared and attached as Exhibit A hereto.

DM2\10203863.2

For the Government to claim in the RFE that the OOH is "an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses" (AR052) and then in both the January 2019 and September 2018 agency decisions to "interpret" the OOH and claim – through their interpretation - that the OOH does not provide sufficient evidence to prove that the Data Analyst position at issue here is a "specialty occupation" is the height of arbitrary, capricious, abuse of discretion and not otherwise in accordance with law.

### 4.      The Government Applied The Wrong Burden Of Proof

As explained herein, the ONLY evidence the Government considered in this portion of its final agency decision was the OOH and related O*NET listing.  AR003-4.  At no point did the Government challenge or question the underlying validity or reliability the OOH or the O*NET listing prepared by the Department of Labor.  Nor did the Government contend that the Data Analyst position at issue here does not fall within the Business Intelligence Analyst position in O*NET/OOH.  With both the OOH and O*NET in the Administrative Record and the absence of any contrary record evidence on the issue of whether a "baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position," the Government necessarily failed to apply the proper preponderance of the evidence standard when it denied Ms. Chatterjee a H-1B visa.  Upon review of the uncontested factual record in this case, it is beyond doubt that the OOH and O*NET listings, standing alone, establish by a preponderance of the evidence that a bachelor's degree is "normally" required for entry into the Data Analyst position at issue in this case.[6]  As such, the Government violated the APA and the Court should direct the Government to issue Ms. Chatterjee a H-1B visa.

------

[6] Ms. Chatterjee has a Master's degree in Business Analytics.  AR024, 034-35.  She currently works for LexisNexis as a Data Analyst while on her F-1 student visa.  The position for which the H-1B visa is being requested is the same Data Analyst position for which she was hired after

5.     **Defendants Incorrectly Rely On O\*NET Job Title For An "Administrative Service Manager" When Denying The H-1B Visa Petition For A Data Analyst Position**

Regardless of which evidentiary standard was applied, the Government made a fundamental factual error involving a misquote from O\*NET that embodies the arbitrary, capricious and abuse of discretion nature of its final agency decision.

LexisNexis submitted a H-1B petition for a Data Analyst position. Defendants, however, denied the petition based on an alleged snippet from O\*NET concerning an <u>Administrative Service Manager</u>: "the JobZone portion of the O\*NET website groups the position of *administrative service manager* with occupations such as *accountant, chef and head cook, computer programmer, historian, pharmacist, and police detective*" AR004 (emphasis added).

There are two fundamental problems with this. First, it appears that Defendants cut and paste from another H-1B petition denial letter when preparing its January 2019 final agency decision. If that was the case, then the entire January 2019 decision's analysis is fundamentally defective. See *Residential Finance Corp.*, 839 F.Supp.2d at 996-97 ("Defendant failed to examine all of the correct relevant data and to articulate an untainted, satisfactory explanation for

---

earning her Master's degree. *See, e.g.*, AR027, 055-57. The Government makes no mention in either its January 2019 (AR001-7) or September 2018 (AR086-93) decisions of the fact that Ms. Chatterjee possesses a Master's degree in the very occupation for which the H-1B visa is being requested or that she is currently employed by LexisNexis as a Data Analyst. Such undisputed record facts go to the heart of each of the four independent 8 C.F.R. § 214.2(h)(4)(iii)(A) criteria for "specialty occupation." It strains credulity for any "Information solutions" company such as LexisNexis (AR017) to hire a recently graduated Master candidate with a specialty degree in Business Analytics for any position other than one specially tailored for her advanced and specialized degree. The Government's failure to consider Ms. Chatterjee's Master degree in Business Analytics under any of the four mutually independent 8 C.F.R. § 214.2(h)(4)(iii)(A) grounds when seeking a H-1B visa for a Data Analyst position was arbitrary, capricious, and/or an abuse of discretion warranting an order by the Court directing the Government to issue the requested H-1B visa.

the denial that rationally connected the facts to the decision. The denial of the petition here was thus arbitrary, capricious, and an abuse of discretion" after noting that USCIS grossly misapplied the OOH and based its decision on an analysis of the wrong position).

Alternatively, if Defendants really meant to rely on O*NET language concerning an Administrative Service Manager position when denying LexisNexis's H-1B petition for a Data Analyst position, then the Defendants' final agency decision is equally flawed because such O*NET information for a different position was not in the administrative record of this case and the Government failed to provide any citation to the alleged evidence it was relying on for its flawed decision.  Either way, this portion of the Government's January 23, 2019 final agency decision is fundamentally flawed and should be set aside as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

>     **6.**     **Defendants Erred When They Ignored Professor Steinke's Expert Opinion**

As discussed in more detail below, Professor Gehard Steinke's expert opinion expressly found that "the position of Data Analyst . . . require[s] theoretical and practical application of a body of highly specialized knowledge, a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field" and therefore meets the requirements for a specialty occupation under applicable regulations.  *See, e.g.* AR069-70.  The Government completely failed to address any portion of Professor's Steinke's expert opinion with respect to the first of the four mutually independent 8 C.F.R. §214.2(h)(4)(iii)(A) grounds.  AR003-4.  Such failure is arbitrary, capricious, and/or an abuse of discretion in violation of the APA.

>     **7.**     **Defendants Erred When They Ignored The OOH And Directly Related O*NET And Expert Evidence**

As the foregoing demonstrates, such direct OOH and O*NET evidence, prepared by the U.S. Department of Labor, establishes that the Data Analyst position for which LexisNexis hired

Ms. Chatterjee actually requires a bachelor's degree or higher, in a field related to the position

thereby satisfying the first of the four mutually independent 8 C.F.R. §214.2(h)(4)(iii)(A)

requirements for H-1B visa status.  For the Government to have denigrated and then ignored this

direct Department of Labor created evidence (Plaintiffs' "counsel's argument that the USDOL

has determined in its O*NET website that the offered position qualifies as a specialty occupation

is not persuasive." AR004) and have reached a contrary conclusion to deny the H-1B visa

application ("reference to the USDOL's O*NET standing alone, fails to establish that an

occupation is a specialty occupation" (*id.*)) was arbitrary, capricious and an abuse of discretion in

violation of the APA.  Similarly, the Government's complete failure to address any aspect of

Professor Steinke's expert opinion related to this H-1B requirement was similarly arbitrary,

capricious and an abuse of discretion in violation of the APA.

> **D.     The Government's Analysis Of The Second Prong Was Arbitrary,
>          Capricious, An Abuse Of Discretion And Not In Accordance With Law**

The second of the four mutually independent 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for

granting a H-1B visa is that the "degree requirement is ***common*** to the industry in parallel

positions among similar organizations or, in the alternative, an employer may show that its

particular position is so complex or unique that it can be performed only by an individual with a

degree."  (emphasis added).

 As discussed above, LexisNexis submitted six different position announcements for a

Data Analyst by six different employers as part of its June 18, 2018 response to the

Government's Request for Evidence.  AR059-64.  Each of the Data Analyst position

announcements indicated that a Bachelor's degree or higher in a field related to the position was

required for position.  LexisNexis also supplied an expert opinion from Professor Steinke

reaffirming that "firms similar to the petitioner's routinely recruit and employ only degreed individuals in the specific specialty."  AR070.

Ms. Chatterjee was hired for the Data Analyst position based on possessing a Master degree in Business Analytics and a Bachelor of Technology degree in Computer Science and Engineering providing further evidence that LexisNexis required a Bachelor degree or higher for the position.

In the Government's January 23, 2019 final agency decision, there was no mention, discussion, or analysis of the six different position announcements for Data Analyst (each requiring a Bachelor degree in sophisticated quantitative analysis fields of study and similar job duties) that LexisNexis submitted in June 2018 or of the fact that Ms. Chatterjee possessed a Masters degree when originally hired for the Data Analyst position.  AR004-6.  Defendants also ignored Professor Steinke's expert opinion stating that it is common in the industry to require at least a Bachelor's degree in business analytics, math, statistics, or related quantitative fields and confirming industry practices.  *Id*.  In effect, and for all practical purposes, Defendants completely ignored this highly probative and dispositive evidence.

LexisNexis, as part of its October 2018 motion for reconsideration, explained "that fields such as accounting, economics, and operations research employ techniques from other mathematical principals, such as mathematical formulation, applied mathematics, and statistical analysis.  Thus, the Data Analyst position requires a bachelor's degree that is limited to fields of study including statistics, mathematics, or fields that are closely related to those two areas of study."  AR109.  Instead of focusing on the evidence submitted, Defendants explained in their January 23, 2019 decision: "It must be clarified that since multiple fields of education are suitable for the position of Data Analyst, the position is not one that is qualified as a specialty

24

occupation, requiring the application of a body of knowledge in one specific field as a minimum to perform the duties associated with the position." AR005. This misreads the regulation. There is no requirement for a one to one tracking for degrees to professions anywhere on the face of 8 C.F.R. § 214.2(h)(4)(iii)(A)(2) nor is any caselaw provided suggesting that one is required.

> Defendant's implicit premise that the title of a field of study controls ignores the realities of the statutory language involved and the obvious intent behind them. The knowledge and not the title of the degree is what is important. Diplomas rarely come bearing occupation-specific majors. What is required is an occupation that requires highly specialized knowledge and a prospective employee who has attained the credentialing indicating possession of that knowledge.

*Residential Finance Corp.*, 839 F.Supp.2d at 996-97.

Hence, the focus is on the specialized knowledge acquired from the degree and not the descriptive name/major of the Bachelor degree issued. As explained by Plaintiffs' submissions and Professor Steinke's expert opinion, there are multiple bachelor degree paths to entry into the Data Analyst field – all of which require quantitative analysis with an emphasis on statistical analysis. The Data Analyst position at issue here requires application of "SQL, R, Python, [and] other statistical programming software to [perform analyses using] statistical techniques such as ANOVA, t-tests, linear models, [] logistic regression . . . descriptive statistics, kmeans clustering, hierarchical modeling, and dimensionality reduction." AR055. These are topics not taught in a high school curriculum and are the subject of study at the Bachelors or Masters degree level. The Government's unduly myopic review of the evidence submitted and the descriptive names of the majors in which Bachelors degrees were issued (as opposed to focusing on the actual specialized mathematics and quantitative analytic knowledge acquired through such majors) is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

Regarding the element of whether the position is so complex and unique that only persons with a degree can perform the essential duties, the Government's analysis is equally

flawed.  Defendants, in their January 23, 2019 decision, acknowledged and briefly discussed the

Mathematical Association of America ("MMA") document provided by LexisNexis, which

elaborated on positions of "Mathematics and Operations Research in Industry."  AR005.  As

with the OOH, the Government does not challenge or question the reliability or relevance of the

unrebutted MMA document Plaintiffs submitted.  Instead, Defendants acknowledge, from the

MMA document (AR139-42), that the "area of applied mathematics called Operations Research

combines mathematics, statistics, computer science, physics, engineering, economics and social

sciences to solve real-world business problems."  AR005.  Defendants also acknowledged that

such positions "all require a solid background in mathematics and familiarity with other

disciplines (such as physics, economics, and engineering)."  AR007.

Despite acknowledging the foregoing, and that an Operations Research/Data Analyst is a

cross-disciplinary occupation with a focus on advanced mathematics and related degrees,

Defendants explained:

> According to the evidence provided, it appears, again, that the position offered does
> not involve duties [sic] are so complex and unique that only an individual [sic] can
> perform them.  It is noted that skills such as problem formulation, mathematical
> modeling, data collection, solution methods, validation and analysis, and
> interpretation and implementation are skills that can be obtained through various
> fields of education.  This conclusion is reinforced by the statement on the document
> that education ion [sic] the fields of mathematics, statistics, computer science,
> physics, engineering, economics, and social sciences may prepare an individual for
> the proffered position.
>
> As such, you have not shown that this position involves duties seen as either unique
> or complex so that only an individual with a bachelor's degree or higher in a
> specific specialty could perform them.

AR005.

The foregoing conclusion by Defendants – that the job duties are not common to the

industry or that the job duties are not complex requiring a bachelor's degree or higher after

expressly noting the various bachelor's and advanced degrees necessary to perform the identified

tasks which it deems essential to a Data Analyst position flies in the face of the MMA evidence

supplied (AR139-42), Professor Steinke's expert opinion (AR148-53), the O*NET listing for

Business Intelligence Analyst (AR132-35), LexisNexis' detailed description of the actual job

duties for the Data Analyst position which spells out sophisticated mathematical and statistical

knowledge requirements that only come through college degrees (AR055-56), and all of the

other evidence LexisNexis supplied.  For Defendants to have so completely disregarded all of the

evidence Plaintiffs supplied and to have relied on no other record evidence to come to such a

diametrically opposed factual and legal conclusion is the definition of arbitrary, capricious, an

abuse of discretion, and/or not in accordance with law.  In addition, to have required Plaintiffs to

provide more unrebutted evidence than they already did, given the applicable statutory and

regulatory standard, strongly suggests that the Government applied a burden of proof greater

than a preponderance of the evidence (such as "certainty" or "absence of reasonable doubt") and,

as such, erred as a matter of law.

> **E.    The Government's Analysis Of The Fourth Prong Was Arbitrary,
> Capricious, An Abuse Of Discretion And Not In Accordance With Law**

The fourth of the four 8 C.F.R. §214.2(h)(4)(iii)(A) grounds for granting a H-1B visa is

that the "nature of the specific duties are so specialized and complex that knowledge required to

perform the duties is **_usually_** associated with the attainment of a baccalaureate or higher degree."

(emphasis added).  It is important to note that the regulation's plain language states "usually" and

not "always" – despite the Government's final agency decision which suggests otherwise.  Once

again, Defendants' analysis of LexisNexis's H-1B petition on this ground was arbitrary,

capricious, an abuse of discretion and not in accordance with law.

In support of its H-1B petition, LexisNexis submitted an expert opinion from Gerhard

Steinke, Professor of Management and Information Systems at Seattle Pacific University.  *See*

DM2\10203863.2

*e.g.* AR065-70.  Professor Steinke's six page opinion identified his qualifications, including his education (MBA from Ball State University and PhD in Informatik from University of Passau in Germany and his Certified Information Systems Security Professional ("CISSP") credentials) his active and extensive participation in academic institutions concerning Information Systems curriculum development and accreditation, and his current role as Professor and head of the graduate Master of Science in Information systems management degree program at Seattle Pacific University.  AR065.

Professor Steinke also noted that "I am also considered to be a recognized authority and I have issued over 250 professional opinions during the past year regarding industry and academic standards for professionals in my and allied fields to USCIS and other institutions and agencies which have been accepted as authoritative by USCIS and other institutions and agencies."  *Id.*

Professor Steinke, as any good expert would, identified the evidence upon which his expert opinions were based, specifically:

- A copy of a letter written to USCIS by Leticia Andrade, Immigration Compliance Specialist, dated March 7, 2018;
- A copy of a document that provides the job responsibilities for the position of Data Analyst at LexisNexis USA;
- A copy of the LCA filed for this case;
- A copy of a diploma that Ms. Subhasree Chatterjee received from the University of Cincinnati stating that she earned the degree of master of Science; and
- The U.S. Department of Labor's O*NET listing for Business Intelligence Analyst (SOC Code 15-1199.08) https://www.onetonline.org/link/summary/15-1199.08.

AR065-66.  All of the evidence Professor Steinke relied upon was evidence LexisNexis supplied to Defendants as part of its H-1B petition.  *See generally*, AR.

Professor Steinke then explained, in detail, how LexisNexis's Data Analyst position fell within the Business Intelligence Analyst position (SOC Code 15-1199.08) described on the U.S. Department of Labor's O*NET.  AR066-67.  From there, Professor Steinke explained how the

28

complicated statistical and analytical tools and methods required for the specific Data Analyst

position at issue requires at least an undergraduate degree in Business Analytics, Statistics,

Mathematics, or a related quantitative field.  AR068-69.  Professor Steinke further explained

how Ms. Chatterjee's recent Master of Science degree in Business Administration (Business

Analytics) more than satisfies "the minimum requirement of a Bachelor's degree in Business

Analytics, Statistics, Mathematics, or a related quantitative field."   AR069.  Professor Steinke,

in concluding his detailed expert analysis, wrote:

> Based on my qualifications, I conclude that the position of Data Analyst is a
> specialty occupation as defined under 8 C.F.R. 214.2(h)(4)((ii) requiring theoretical
> and practical application of a body of highly specialized knowledge, a Bachelor's
> degree in Business Analytics, Statistics, Mathematics, or a related quantitative field
> and meets sufficient criteria for a specialty occupation under 8 C.F.R.
> 214.2(h)(4)(iii)(A).  In addition, I conclude that the nature of the position is so
> specialized and complex that only an individual with a Bachelor's degree in such a
> field would be able to perform the job duties.  Furthermore, the degree requirement
> is common to the industry in parallel positions among similar organizations and
> firms similar to the petitioner's routinely recruit and employ only degreed
> individuals in the specific specialty.

AR069-70.  In short, Professor Steinke's expert opinion provided all of the elements and

information the Government requested in its May 7, 2019 RFE.  AR052.

The Government's January 23, 2019 decision noted the existence Professor Steinke's

opinion, but stated "[s]ince the professor's evaluation does not constitute new evidence for

purposes of this motion to reopen, this evidence will no [sic] be further discussed."   AR006.

Such a conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law" particularly in light of LexisNexis's express request that Defendants reconsider their

prior September 13, 2018 decision which failed to properly analyze the professor's expert

opinion.  AR106.  In short, the Government improperly and completely ignored LexisNexis'

request for reconsideration of the Government's defective analysis of Professor Steinke's expert

opinion.  Such a failure to comply with, or even acknowledge, LexisNexis's express request for

29

reconsideration should be grounds to set aside the final agency decision for non-compliance with the APA.

Regardless of their procedural error, Defendants cited no evidence – other than Professor Steinke's expert opinion - to support its conclusion on this fourth independent element of specialty occupation, nor do Defendants suggest any other such evidence exists.  AR001-7.  Nor did Defendants engage in any requested reconsideration of its prior decision, in light of the evidence and arguments cited by LexisNexis in its motion for reconsideration.  *Id*.

In their original September 13, 2018 decision (which was rendered moot and superseded by the January 23, 2019 decision), Defendants attacked the factual foundation of Professor Steinke's expert opinion using only supposition and conjecture, and failed to cite to any actual evidence which could suggest any real or perceived defect in Professor Steinke's expert analysis or conclusions.[7]  In short, the Government summarily – and without citing to any specific evidence (either provided by LexisNexis or upon which Defendants may have supplied for the administrative record and which was not cited in the final agency decision) – concluded, as a matter of law, that it may disregard Professor Steinke's expert opinion reasoning "where an

---

[7] For instance:

> The professor reached this conclusion by relying on your description of the position rather than any specific study of the position at your organization.  There is no evidence that the professor knew any more about the specific duties of the position than what you provided.  The professor does not demonstrate or assert in-depth knowledge of your business operations or how the duties of the position would actually be performed in the context of your business.  The professor's opinion does not relate the professor's conclusions to specific, concrete aspects of your business operations so as to demonstrate a sound factual basis for the professor's conclusions about the educational requirements for the proffered position.  The [sic] does not explain why the knowledge required for the furtherance of the job duties can only be obtained through education in Business Analytics, Statistics, Mathematics or a related quantitative field.

AR092.

opinion is not in accord with other information or is in any way questionable, USCIS is not required to accept or may give less weight to that evidence." AR093. Curiously, Defendants do not identify or describe any record evidence with which Professor Steinke's opinion is "not in accord" nor did Defendants describe or identify any record evidence that could serve as a basis for finding any aspect of Professor Steinke's opinion "questionable." *See* AR086-93.

In its motion for reconsideration, LexisNexis provided a detailed legal explanation as to how and why the Government improperly excluded Professor Steinke's expert opinion. AR109-111. Such arguments are expressly incorporated herein. The Government ignored all of those arguments in its January 2019 final agency decision. AR006.

Given the complete lack of evidence upon which Defendant's legal and/or factual conclusion was purportedly based, the Government's decision on the fourth of four 8 C.F.R. § 214.2(h)(4)(iii)(A) grounds for "specialty occupation" is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### F. Plaintiffs Have Established Multiple Grounds for Setting Aside The Final Agency Action Pursuant To The APA

As all of the foregoing demonstrates, the Government's January 2019 final agency decision fails to survive 5 U.S.C. § 706 scrutiny for any number of reasons. The Government applied the wrong burden of proof, applied the wrong legal standard, improperly "interpreted" evidence prepared by the U.S. Department of Labor, improperly excluded expert testimony, and otherwise failed to consider the complete lack of any evidence contradicting Plaintiffs' unrebutted and unopposed evidence. Any way you slice it, the Government's January 2019 final agency decision was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

31

Plaintiffs submit that the evidence in the Administrative Record, when reviewed by the Court using the proper preponderance of the evidence standard and any one of the four analytically independent 8 C.F.R. § 214.2(h)(4)(iii)(A) tests, clearly demonstrates that they met their burden of proving the Data Analyst position at issue qualifies as a "specialty occupation" and a H-1B visa should issue.  Therefore, the Court should not only set aside the January 2019 final agency decision, but it should also immediately direct the Government to issue Ms. Chatterjee a H-1B visa for the Data Analyst position because it is a "specialty occupation" within the meaning of the applicable regulations.

### G.     Plaintiffs Request Immediate Injunctive Relief Directing The Government To Issue The Improperly Withheld H-1B Visa To Ms. Chatterjee

The APA expressly authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  The Government had two chances to properly apply the facts, law, and burdens of proof, but chose not to do so.  The analysis in the pages above demonstrates that the Government "unlawfully withheld" a H-1B visa based on dubious factual and legal grounds.  Any pure remand of this case – either by the Court or of the Government's own volition – would constitute "agency action . . . unreasonably delayed."[8]  This is particularly so in this case, given its unique factual and procedural posture, in light of the August 3, 2019 expiration of Ms. Chatterjee's current F-1 visa.  LexisNexis will not be able to employ Ms. Chatterjee after August 3, 2019 and Ms. Chatterjee will be required to cease all

---

[8] Presumably the Government would issue a new RFE if the Court were to remand this matter after setting aside the January 2019 decision.  It is unclear what benefit, if any, a new RFE would have.  In response to the first RFE (AR050-53), Plaintiffs provided exactly the categories and qualities of information the Government requested. *See* AR054-85. Nonetheless, the Government still denied the visa, twice.  Plaintiffs submit that any possible future RFE's and future responses would effectively be futile and serve no purpose other than to unreasonably delay a final decision in this matter.

work in the United States after August 3, 2019 and leave the United States shortly thereafter once her current F-1 visa expires.

In light of this, the only reasonable remedy here – particularly given the impending expiration of Ms. Chatterjee's F-1 student visa and the unreasonable delay that would result if the Government were allowed an unfettered "do over" without any time constraints all while Ms. Chatterjee was in a non-visa status – is to order the Government to issue the twice improperly denied H-1B visa, immediately.

## V.   CONCLUSION

Based on the foregoing, Plaintiffs RELX, Inc. d/b/a LexisNexis USA and Subhasree Chatterjee respectfully ask this Court to (a) grant their motion for summary judgment; (b) set aside the Government's January 23, 2019 final agency decision as not in compliance with the APA; and (c) order the Government to issue Ms. Chatterjee the H-1B visa Plaintiffs applied for back in April 2018 immediately and before her current F-1 student visa expires on August 3, 2019.

DATED:          July 22, 2019                              Respectfully submitted,

                                                          DUANE MORRIS LLP

                                                          */s/ Michael J. Schrier*
                                                          Michael J. Schrier
                                                          (D.C. Bar No. 444693)
                                                          Denyse Sabagh
                                                          (D.C. Bar No. 369113)
                                                          DUANE MORRIS LLP
                                                          505 9th St., NW, Suite 1000
                                                          Washington, D.C. 20004-2166
                                                          Tel: 202-776-5221
                                                          Fax: 202-478-0158
                                                          MJSschrier@duanemorris.com
                                                          DSabagh@duanemorris.com

33

DM2\10203863.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 22nd day of July, 2019, a true and correct copy of the foregoing and related exhibit was served via certified mail, return receipt requested and email to the following:

Matthew Kahn
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, NW
Washington, DC 20530
Matthew.Kahn@usdoj.gov

/s/ <i>Michael J. Schrier</i>
Michael J. Schrier
