# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RELX, INC. d/b/a LexisNexis USA,**<br><br>and<br><br>**SUBHASREE CHATTERJEE**<br><br>    *Plaintiffs*,<br><br>     **v.**<br><br>**KATHY A. BARAN,**<br>**in her Official Capacity,**<br>**Director of the California Service Center,**<br>**U.S. Citizenship and Immigration**<br>**Services, U.S. Department of**<br>**Homeland Security, ET AL.**<br><br>    *Defendants*. | Civil Action No. 19-1993 (EGS) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STAY THE PROCEEDINGS AND DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rules 7(a) and 7(b), Defendant Kathy Baran, Director of the California Service Center of the United States Citizenship and Immigration Services ("USCIS"), through undersigned counsel, hereby submits the following Memorandum of Points and Authorities: (1) in support of Defendants' motion to dismiss Plaintiffs' Complaint or, in the alternative, motion to stay the proceedings; and (2) in opposition to Plaintiffs' motion for summary Judgment.  Plaintiffs RELX, Inc. d/b/a LexisNexis USA ("LexisNexis") and Subhasree Chatterjee ("Chatterjee") commenced this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, seeking judicial review of USCIS's decision denying Plaintiff

LexisNexis's  H-1B petition to classify Plaintiff Chatterjee as an H-1B nonimmigrant and ultimately to work as a Data Analyst for LexisNexis.

As demonstrated herein, the Court should dismiss Plaintiffs' challenge to USCIS's decision because the decision has been vacated.  On July 18, 2019, after reassessing the record, USCIS administratively reopened the petition and, on July 22, 2019, issued Plaintiff LexisNexis a supplemental Request for Evidence ("RFE") to afford LexisNexis the opportunity to cure deficiencies in the record.  *See* Exhibit A.  LexisNexis's petition is, therefore, currently pending administratively.  Given the lack of final agency action at this time, Plaintiffs fail to state a claim on which relief can be granted.  Relatedly, this Court lacks subject matter jurisdiction because Plaintiffs' claim is not ripe and Plaintiffs have failed to exhaust administrative remedies. Accordingly, Plaintiffs' complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, proceedings should be stayed pending final agency action.  Furthermore, the Court should deny Plaintiffs' summary judgment motion as there is no genuine issue of material fact.  Finally, even if there were final agency action, Plaintiffs argument that the Court should order USCIS to grant their petition is without merit as the Court's only authority would be to set aside the decision.

## BACKGROUND

### I.    Procedural History

On September 13, 2018, USCIS denied Plaintiffs' Petition for Nonimmigrant Worker, Form I-129, known as an H-1B petition, filed by LexisNexis on behalf of Ms. Chatterjee, for her to be classified as eligible for H-1B nonimmigrant status and notify the consulate in India, so she can then return to India and obtain an H-1B visa from Department of State abroad.  Thereafter,

Plaintiffs requested reconsideration of that decision and the USCIS subsequently issued a second denial on January 23, 2019.  This action seeks relief under the APA based on the USCIS's January 23, 2019 denial. USCIS denied the H-1B petition on the ground that the job offered to Ms. Chatterjee did not qualify as a specialty occupation as defined by statute and regulation. Plaintiffs, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), move this Court for summary judgment in this Administrative Procedure Act case challenging the validity of USCIS's January 23, 2019 decision.[1]

The Court placed this matter on an expedited briefing and hearing schedule – consolidating the pending Motion for Preliminary Injunction with a decision on the merits - in light of the fact that Ms. Chatterjee's current status expires on August 3, 2019. Plaintiffs seek declaratory judgment that the January 23, 2019 final agency action must be set aside and an order from this Court directing USCIS to issue Ms. Chatterjee a H-1B visa immediately, before

---

[1] On July 3, 2019, over five months after USCIS issued its denial, Plaintiff filed the instant complaint and a motion for a preliminary injunction on the grounds that her visa would be expiring on August 2, 2019.  Plaintiffs nowhere explain why they delayed over five months after USCIS issued its denial, and less than one month before the subject visa is expiring, to file their complaint and motion.  Although this matter is currently being briefed as a summary judgment pursuant to the Court's order, had the briefing proceeded with respect to the motion for preliminary injunction, this unexplained delay on the part of Plaintiffs would have certainly weighed against them.   Courts have concluded that lack of diligence "standing alone" can be a sufficient basis for denying a preliminary junction, "because it goes primarily to the issue of irreparable harm[.]"  *Majorica, S.A. v. R.H. Macy & Co.,* 762 F.2d 7, 8 (2d Cir. 1985) (per curiam opinion reversing the district court); *see also, Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998) ("If the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay, the district court should be reluctant to award relief"); *AARP v. United States Equal Employment Opportunity Comm'n*, 226 F. Supp. 3d 7, 22 (D.D.C. 2016) ("Several circuits have observed that delay in pursuing a preliminary injunction undercuts a claim of irreparable injury"); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm").

the expiration of her current status. On July 18, 2019, USCIS reopened and vacated the January 23, 2019 decision and on July 22, 2019, USCIS issued a new RFE.

## II.    Legal Framework

The authority of USCIS to grant H-1B nonimmigrant classification is subject to section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act ("INA"), which provides, in part, for the classification of a qualified nonimmigrant:

> coming temporarily to the United States to perform services . . . in a specialty occupation described in section 214(i)(1) . . . , who meets the requirements for the occupation specified in section 214(i)(2) . . . , and with respect to whom the Secretary of Labor determines and certifies . . . that the intending employer has filed with the Secretary an application under section 212(n)(1).

8 U.S.C. § 1101(a)(15)(H).  The INA requires that an H-1B employer shows that each H-1B beneficiary will temporarily come to "the United States to perform services . . . in a specialty occupation described at [INA] section 214(i)(1)."   INA § 214(i)(1) defines "specialty occupation" as follows, in relevant part:

> the term "specialty occupation" means an occupation that requires-
>
> (A) theoretical and practical application of a body of highly specialized knowledge, and
>
> (B) attainment of a bachelor's or higher degree **in the specific specialty** (or its equivalent) as a minimum for entry into the occupation in the United States.

(emphasis added) 8 U.S.C. § 1184(i).

Title 8, Code of Federal Regulations, 8 C.F.R. § 214.2(h)(4)(i)(A)(1), states that H-1B classification may be granted to an alien who:

> **Will perform services in a specialty occupation** which requires theoretical and practical application of a body of highly specialized knowledge and attainment of a baccalaureate or higher degree or its equivalent as a minimum requirement for entry into the occupation in the United States, and who is qualified to perform

4

services in the specialty occupation because he or she has attained a baccalaureate or higher degree or its equivalent in the specialty occupation[.]

(emphasis added).  In addition, 8 C.F.R. § 214.2(h)(4)(ii) defines "specialty occupation" as

> … an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher **in a specific specialty**, or its equivalent, as a minimum for entry into the occupation in the United States.

(emphasis added).  Moreover, 8 C.F.R. § 214.2(h)(4)(iii)(A) provides that the proffered position must meet one of the following criteria to qualify as a specialty occupation:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties [is] so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

USCIS construes the term "degree" to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the proposed position. *See Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 147 (1st Cir. 2007) (describing "a degree requirement in a specific specialty" as "one that relates directly to the duties and responsibilities of a particular position.").

## ARGUMENT

## I.   Motion To Dismiss

A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or a factual challenge.  "A facial challenge attacks the factual allegations of the complaint that are

contained on the face of the complaint, while a factual challenge is addressed to the underlying facts contained in the complaint." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal quotations and citations omitted). When a defendant makes a facial challenge, the district court must accept the allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). With respect to a factual challenge, as here, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims. *Jerome Stevens Pharmacy, Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The plaintiff bears the responsibility of establishing the factual predicates of jurisdiction by a preponderance of evidence. *Erby*, 424 F. Supp. 2d at 182.

In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In satisfying this requirement that it "state a claim to relief that is plausible on its face," *id.* at 570, a complaint cannot survive a motion to dismiss through only "a formulaic recitation of the elements of a cause of action." *Id.* at 555. As with facial challenges to subject matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Generally, the Court is not to consider matters outside the pleadings, per Federal Rule of Civil Procedure ("Rule") 12(d), without converting a defendant's motion to dismiss into a motion for summary judgment.  In interpreting the scope of this limitation, however, the D.C. Circuit has instructed that the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  The D.C. Circuit has approved judicial notice of public records on file at a government agency.  *See, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (patent records at the Patent Trademark Office).

### A.  There Is Currently No Final Agency Decision

The Court should dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs lack a cause of action in the absence of final agency action.  The Court's authority to review the conduct of an administrative agency is limited to cases challenging "final agency action."  5 U.S.C. § 704.  A final agency action "mark[s] the consummation of the agency's decisionmaking process" and is "'one by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Commission*, 324 F.3d 726, 731 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).  "Although the APA does not confer jurisdiction, what its judicial review petitions, 5 U.S.C. §§ 701-06, do provide is a limited cause of action for parties adversely affected by agency action."  *Trudeau v. FTC*, 456 F.3d 178,

185 (D.C. Cir. 2006) (citations omitted).  Accordingly, where there is "'no final agency action . . . , there is no doubt [plaintiffs] would lack a cause of action under the APA.'"  *Id.* (quoting *Reliable*, 324 F.3d at 731) (affirming dismissal of APA claim pursuant to Rule 12(b)(6) where there was no final agency action).

USCIS's reopening of Plaintiff LexisNexiss petition renders non-final the previous denial decision.  *See, e.g., Utah Life Real Estate Grp., LLC v. USCIS*, 259 F. Supp. 3d 1294, 1297 (D. Utah 2017); *Net-Inspect, L.L.C. v. USCIS*, Civ. A. No. 14-1514, 2015 WL 880956, at *4-5 (W.D. Wash. Mar. 2, 2015).[2]  Plaintiffs' response to the RFE is currently pending.  Courts have held that "once an administrative agency decides to reopen a decision and conduct further proceedings [(*e.g.*, issue an RFE and request additional evidence of eligibility)], the previous denial is no longer the agency's 'last word on the matter,' and therefore not final or reviewable under the [APA]."  *Utah Life Real Estate Grp., LLC*, 259 F. Supp. 3d at 1297 (citing *Net-Inspect*, 2015 WL 880956, at *4).  Here, USCIS requested additional evidence concerning whether Plaintiff LexisNexis has established that the proffered position is a specialty occupation as defined by statute and regulation.  *See* Exhibit A.  LexisNexis has until October 17, 2019 to provide USCIS with additional documentation to support the petition.  *Id.* at 1. Plaintiffs still

---

[2] To the extent that Plaintiff argues USCIS lacks the authority to reopen the denied petition and request additional evidence (in the form of an RFE), *see* Pls' Mot. at 10 note 3, the Court should reject any such argument.  This is because 8 C.F.R. § 103.5(a)(5) provides USCIS with the authority to *sua sponte* reopen denied visa petitions.  *See, e.g.*, *Net-Inspect*, 2015 WL 880956, at *5 ("Contrary to Net-Inspect's contention, USCIS's regulations permit the agency to reopen and reconsider petitions both on its own motion and on motions by affected parties."); *True Capital Mgmt., LLC v. DHS*, No. 13-261-JSC, 2013 WL 3157904, at *3 (N.D. Cal. June 20, 2013) (finding that USCIS's regulations permit it to reopen a petition *sua sponte* and issue a request for evidence).  In the instant case, after reassessing Plaintiff's petition, USCIS lawfully reopened the petition on the agency's own motion in accordance with 8 C.F.R. § 103.5(a)(5) and issued a supplemental RFE.

have the opportunity to provide evidence in support of the petition; thus, no legal relationship has been fixed as the agency has not made a determination or issued any order concerning the application.  Because there is no final agency action concerning the pending petition, Plaintiffs lack a cause of action under the APA and the Court should dismiss its claims.

Furthermore, the Court should dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) because Plaintiffs' request relief which is not available.  In its H-1B petition, Plaintiffs requested action if the petition is approved is that USCIS notify the consulate in Kolkata, India, so that Ms. Chatterjee can try to obtain a visa from the Department of State at its consulate.  *See* AR0014-0015.  Now, however, Plaintiffs request USCIS to issue the H-1B visa "immediately."  *See* Pl's Mot. at 1. This requested relief goes beyond USCIS's capabilities as USCIS does not issue visas and it goes beyond the requested action in the H-1B petition filed by Plaintiffs.  Regardless of the requested relief, Ms. Chatterjee was expected to depart the United States sometime on or before the expiration of her current status with the understanding that she would need to apply for a visa with the Department of State in India before she would be able to return to the United States. Plaintiffs fail to acknowledge this key point in their motions and appear to try to circumvent their own request that Ms. Chatterjee depart the United States to obtain a visa in India.

Additionally, Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because they are not ripe.[3]  The finality requirement is similar to the requirement of ripeness, although "furthering slightly different interests."  *Public Citizen Health*

---

[3] The question of ripeness goes to the Court's subject matter jurisdiction to hear the case. *See Duke City Lumber Co. v. Butz,* 539 F.2d 220, 221 n. 2 (D.C. Cir. 1976) (per curiam) (question of ripeness may be raised *sua sponte* by appellate court because it goes to court's subject matter jurisdiction).

*Research Group v. Commissioner, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984). Notwithstanding the difference in emphasis, "the doctrines tend to converge in that both are meant to prevent premature judicial intervention in the administrative process." *Id.* The ripeness doctrine requires courts to consider two factors, "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967); *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 234-35 (D.C. Cir. 1988). Hardship considerations "will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions" of agencies. *Public Citizen*, 740 F.2d at 31. Here, as discussed *supra*, there is no final agency action as Plaintiffs have a pending RFE. Thus, Plaintiffs cannot meet the finality factor of the ripeness test and its APA claims may be dismissed on that basis as well. *See Transport Robert (1973) LTEE v. I.N.S.*, 940 F. Supp. 338 (D.D.C. 1996) (remanding APA claim where letter from immigration official was not final agency action and claim was not ripe for judicial intervention).

Finally, the Court should dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs have not exhausted administrative remedies where there is no final agency action. *Cf. McGee v. United States*, 402 U.S. 479, 486 (1971) (purpose of exhaustion requirement is to avoid premature claims and ensure the agency is given the opportunity to bring its expertise to bear to resolve a claim). Here, USCIS reopened the previously denied petition and issued Plaintiff LexisNexis an RFE which reviews the evidence previously submitted and details the deficiencies in the petition that remain. *See* Exhibit A at 3-11. The RFE requests that LexisNexis provide additional evidence of eligibility, and gives LexisNexis another opportunity to overcome the deficiencies in the petition in an attempt to

administratively resolve this case.  Plaintiffs' are afforded 87 days to respond to the RFE. Because LexisNexis has not yet had the opportunity to respond to the RFE, and because USCIS has not yet reviewed or adjudicated the submission of additional evidence for eligibility for approval, USCIS has not yet had "the opportunity to bring its expertise to bear to resolve [Plaintiffs'] claim." *McGee*, 402 U.S. at 486.  For these reasons, Plaintiffs have an unexhausted administrative remedy available.

**B.  Alternatively, Further Proceedings Should Be Stayed**

In the event that the Court is not inclined to grant Defendants' motion to dismiss, Defendants alternatively request a stay of the proceedings pending further administrative action to allow the issue to ripen.  This Court has broad discretion to stay proceedings.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  In determining whether to grant a stay, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed by either side."  *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970).

**II.    Summary Judgment and The APA**

Defendants believe that there is no final agency decision to defend in this case given that the case has been reopened and therefore summary judgment briefing is unnecessary. Nevertheless, because Plaintiffs have briefed various issues (which are no longer ripe for adjudication), Defendant hereby responds to Plaintiffs' arguments.   As explained above, Plaintiffs move for summary judgment seeking a Court order setting aside the Government's January 23, 2019 decision and an injunction ordering the Government to issue the unlawfully withheld and unreasonably delayed H-1B visa to Ms. Chatterjee. Beyond the fact that there is no

final agency action and that the case is not ripe for review, Plaintiffs motion for summary judgment fails on the merits.

### A.       Standard of Review

The Court's review of USCIS's denial of Plaintiffs' petition is governed by the Administrative Procedure Act.  *See* 5 U.S.C. § 701*, et seq*. 5 U.S.C. § 704 provides that "final agency action" is subject to judicial review. Under the APA, the reviewing court shall set aside an agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing an agency action under the arbitrary and capricious standard, the court is limited to the administrative record upon which the agency based its decision. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

### B.       USCIS Correctly Applied a Preponderance Of The Evidence Standard

Plaintiffs assert that USCIS did not provide contradictory evidence to show that the preponderance standard was not met.  *See* Pls' Mot. at 13-16.  But Plaintiff cites no authority for such a novel interpretation of the preponderance standard that would impose such a requirement. To the contrary, Plaintiff cites to USCIS's policy which indicates the issue is whether the evidence submitted supports the conclusion that the claim is probably true or more likely than not.  That standard of proof was applied here because the record indicates Defendants explained that Plaintiffs' claim does not meet the preponderance of the evidence standard.  *See* AR0001-0007; 0086-0094.

Further, Plaintiffs submit that "the Government ignored or disregarded much of what LexisNexis submitted and ultimately denied its visa petition for an alleged failure to show 'that the proffered position is a specialty occupation.'"  Pls' Mot. at 15.  To the contrary, Defendants directly addressed in its decisions Plaintiffs' evidence.  *See* AR0001-0007; 0086-0094. Accordingly, given the deficient nature of such evidence, Defendants, in applying the preponderance standard, could find such evidence did not indicate the claim was probably true or more likely than not. Plaintiffs' theory that the preponderance standard requires the submission of contradictory evidence, a theory for which Plaintiffs cite no support, should thus be rejected.

**C.  USCIS's Analysis Of The First Prong Was Not Arbitrary Or Capricious**

**1.  USCIS Applied The Correct Legal Standard**

Plaintiffs note that the regulatory standard for whether a position is a specialty occupation under the first prong is whether a "baccalaureate or higher degree or its equivalent is ***normally*** the minimum requirement for entry into the particular position."  *See* Pls' Mot. at 17 (quoting 8 C.F.R. §214.2(h)(4)(iii)(A)(1)) (emphasis in original).  Plaintiffs assert that USCIS's decision effectively required Plaintiffs to prove that a bachelor's degree or higher was always required for a Data Analyst position.  *Id.*  Plaintiffs, however, cite no record evidence to support such assertion, which highlights the extent to which Plaintiffs misread the decision.  Accordingly, such argument should be rejected.

**2.  USCIS Did Not Interpret The Occupational Outlook Handbook**

Plaintiffs' assert that Defendants improperly attempted to "interpret" the U.S. Department of Labor's ("DOL's") Occupational Outlook Handbook ("OOH") instead of taking the information contained therein at face value.  *See* Pls' Mot. at 17-18.  As a preliminary matter, it

has been determined that USCIS can look to the OOH as an authority.  Accordingly, Defendants note that USCIS recognizes the OOH "as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses." AR052.  Plaintiffs, however, fail to establish that Defendants interpreted the OOH.  *See* Pls' Mot. at 17-18.  As such, whether deference to an interpretation is warranted is beside the point.

### 3.        The Occupational Outlook Handbook Is Not Dispositive

Plaintiffs assert that Defendants' conclusion that the OOH "does not contain detailed profiles for the computer occupations category" (which they call an "interpretation") is wrong. Pls' Mot. at 18-20.  Plaintiffs note that the OOH listing for "Computer Occupations, All Other" created by the DOL and incorporates by reference the DOL's O*NET listing for Business Intelligence Analyst (SOC Code 15-1199.08); as such, Plaintiffs reason that the OOH does "contain detailed profiles for the computer occupations category." *Id.*

But whether the OOH contains "detailed profiles" is beside the point.  Indeed, after asserting that the foregoing documents contain "detailed profiles" Plaintiffs go on to assert that the "detailed" profiles on which they rely state that the OOH listing for "Computer Occupations, All Other" – covering all of the listed subspecialties including Business Intelligence Analyst – expressly states "Typical entry level education: Bachelor's degree" for all such subspecialties. Pls' Mot. at 19.  Although the foregoing point advances their claim, it is insufficient given that the OOH and O*NET listing do not reflect that a degree *in a particular specialty* is required.  *See Royal Siam Corp.*, 484 F.3d at 147 (describing "a degree requirement in a specific specialty" as "one that relates directly to the duties and responsibilities of a particular position.").

14

Plaintiffs gloss over this significant element. As Defendant explained in its decision, "USCIS consistently interprets the term 'degree' in the criteria at 8 CFR § 214.2(h)(4)(iii)(A) to mean not just any bachelor's or higher degree, *but one in a specific specialty that is directly related to the proffered position*." *See* AR0004 (emphasis added). This is consistent with the statute and regulatory definitions at 8 U.S.C. § 1184(i) and 8 C.F.R. § 214.2(h)(4)(ii). Thus, the fact that a degree is normally required is not dispositive.

### 4.       USCIS Correctly Applied The Preponderance Standard

Plaintiffs assert the only evidence USCIS considered in its decision was the OOH and related O*NET listing. *See* Pls' Mot. at 20. They further argue that "[w]ith both the OOH and O*NET in the Administrative Record and the absence of any contrary record evidence on the issue of whether a 'baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position,' the Government failed to apply the proper preponderance of the evidence standard" because "it is beyond doubt that the OOH and O*NET listings, standing alone, establish by a preponderance of the evidence that a bachelor's degree is 'normally' required for entry into the Data Analyst position at issue in this case." *Id.* As explained *supra*, however, even if the foregoing is correct, it is insufficient to establish that USCIS should have granted the petition in this case because Plaintiffs' burden is to submit evidence establishing a degree *in a particular specialty* is required, which they have not done. *Royal Siam Corp.*, 484 F.3d at 147; AR0004.

Moreover, despite Plaintiffs emphasis on the fact that Ms. Chatterjee has a master's degree, *see* Pls' Mot. at 21 n. 6, this is insufficient to establish that the position she has been offered qualifies as a specialty occupation. *See, e.g., 2233 Paradise Rd., LLC v. Cissna*, Civ. A.

No. 17-1018, 2018 WL 3312967, at *1, *3 (D. Nev. July 3, 2018) (where the applicant had "a doctorate in Philosophy and a Master of Management and Business Administration (MBA) with focuses in finance, entrepreneurship, and marketing" the court still found that USCIS did not act arbitrarily or capriciously in denying a petition and recognized "courts and the agency have consistently made clear that a position requiring a business administration degree does not constitute a specialty occupation because a business administration degree is a 'general-purpose' degree") (citing *Royal Siam Corp.* and *Irish Help at Home LLC v. Melville*, Civ. A. No. 13-943, 2015 WL 848977, at *1 (N.D. Cal. Feb. 24, 2015), *aff'd*, 679 F. App'x 634 (9th Cir. 2017); *Health Carousel, LLC v. Bureau of Citizenship & Immigration Servs.*, Civ. A. No. 1:13-23, 2014 WL 29591, at *1, *3 (S.D. Ohio Jan. 3, 2014) (finding the denial of a visa petition was not arbitrary or capricious even where the company indicated that the applicant had attained the equivalent of a United States master's degree in business administration).[4]

## 5.       USCIS Did Not Incorrectly Rely On The O*NET Job Title

Plaintiffs assert that they submitted a petition for a Data Analyst position and claim Defendants denied the petition based on a section from O*NET concerning an Administrative Service Manager: "the JobZone portion of the O*NET website groups the position of administrative service manager with occupations such as accountant, chef and head cook, computer programmer, historian, pharmacist, and police detective." *See* Pls' Mot. at 21-22.

---

[4] Curiously, Plaintiffs make no argument under the third prong of 8 C.F.R. §214.2(h)(4)(iii)(A), which is that "[t]he employer normally requires a degree or its equivalent for the position." On its face, this would appear to be the easiest way for Plaintiffs to make their case if LexisNexis in fact required a degree for the position. It stands to reason LexisNexis does not require a degree. This would explain why Plaintiffs repeatedly emphasize Ms. Chatterjee has a master's degree and why they would otherwise go to great lengths under the other three prongs of 8 C.F.R. §214.2(h)(4)(iii)(A), which apparently impose a heavier burden than the third prong, to try and convince this Court that she is engaged in a specialty occupation.

Plaintiffs assert that "it appears that Defendants cut and paste from another H-1B petition denial letter when preparing its January 2019 final agency decision" and if that was the case then "the entire January 2019 decision's analysis is fundamentally defective." *Id.* Defendants, however, did not "cut and paste" nor do Plaintiffs provide any probative evidence for such assertion.

Plaintiffs also assert that "if Defendants really meant to rely on O*NET language concerning an Administrative Service Manager position when denying LexisNexis's H-1B petition for a Data Analyst position, then the Defendants' final agency decision is equally flawed because such O*NET information for a different position was not in the administrative record of this case[.]" Pls' Mot. at 22. But Defendants did not "rely" on the foregoing language in reaching its decision. Rather, such language (which was prefaced by the phrase "for example") was discussed merely as an analogy to illustrate another position for which a degree in a specific specialty is not required (which precluded such position from being a specialty occupation).

### 6.       USCIS Addressed Professor Steinke's Opinion

Plaintiffs' note that Professor Gehard Steinke's opinion found that "the position of Data Analyst . . . require[s] theoretical and practical application of a body of highly specialized knowledge, a Bachelor's degree in Business Analytics, Statistics, Mathematics, or a related quantitative field" and therefore meets the requirements for a specialty occupation. Pls' Opp at 22. Plaintiffs assert that USCIS failed to address any portion of such opinion under the first of the four grounds in 8 C.F.R. §214.2(h)(4)(iii)(A) grounds. *Id.* However, USCIS explained the deficiencies in such opinion elsewhere in its decision and thus there was no need to address this specifically under prong one of 8 C.F.R. §214.2(h)(4)(iii)(A).

7.      **USCIS Did Not Err**

Plaintiffs assert that the "OOH and O*NET evidence, prepared by the DOL, establishes that the Data Analyst position for which LexisNexis hired Ms. Chatterjee requires a bachelor's degree or higher, *in a field related to the position* thereby satisfying the first of the four mutually independent 8 C.F.R. §214.2(h)(4)(iii)(A) requirements for H-1B visa status."  Pls' Mot. at 22-23 (emphasis added).  It is noteworthy that the only time in its prong one arguments that Plaintiffs address the requirement that a degree be *in a field related to the position* is in the instant argument wherein Plaintiffs conclude they have established prong one.

As Defendants have explained, however, Plaintiffs have not provided evidence of a sufficient nexus between the degree and the specialty field to which it relates.  Moreover, this is not what the OOH and ONET state; they only state the subject position normally requires a bachelor's degree or higher -- not in a specific field -- which is a gaping deficiency riddled throughout Plaintiffs' analysis.  Accordingly, the Court should reject Plaintiffs' arguments under prong one of 8 C.F.R. §214.2(h)(4)(iii)(A).

**D.  USCIS's Analysis Of The Second Prong Was Not Arbitrary Or Capricious**

The second of the four grounds for a specialty occupation is that the "degree requirement is common to the industry in parallel positions among similar organizations *or, in the alternative*, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree."  8 C.F.R. §214.2(h)(4)(iii)(A) (emphasis added). Because 8 C.F.R. §214.2(h)(4)(iii)(A) contains two bases for establishing a specialty occupation, each basis will be discussed in turn.

18

1.      **Plaintiffs Fails To Show The Degree Requirement Is Common**

Plaintiffs assert that "LexisNexis submitted six different position announcements for a Data Analyst by six different employers as part of its June 18, 2018 response to the Government's Request for Evidence" and that each position announcement indicated that a "Bachelor's degree or higher in a field related to the position was required for position."  Pls' Mot. at 23-24.  Although Plaintiffs now recognize (as opposed to in its prong one arguments) the need for a position to normally require a degree *in a field related to the position*, they did not submit sufficient evidence to show these are "parallel positions among similar organizations."  8 C.F.R. §214.2(h)(4)(iii)(A); *see* AR 0004-0005; 0090-0091.

Curiously, Plaintiffs make the unsupported assertion that "Ms. Chatterjee was hired for the Data Analyst position *based on* possessing a Master degree in Business Analytics and a Bachelor of Technology degree in Computer Science and Engineering providing further evidence that LexisNexis required a Bachelor degree or higher for the position."  Pls' Mot. at 24 (emphasis added).  Tellingly, however, Plaintiffs have not submitted LexisNexis' announcement for any Data Analyst position.

Plaintiffs also assert that Defendants ignored Professor Steinke's opinion that it is "common in the industry to require at least a Bachelor's degree in business analytics, math, statistics, or related quantitative fields and confirming industry practices."  Pls' Mot. at 24. However, as Defendants have already explained, "the professor has not provided sufficient facts that would support the contention that the proffered position requires at least a bachelor's degree or higher or its equivalent *in a specific specialty*." *See* AR 0093 (emphasis added).  Accordingly,

based on the foregoing, Plaintiffs fail to establish that, under the first category of prong two, the

degree requirement is common to the industry in parallel positions among similar organizations.

[5]

### 2.    Plaintiffs Fail To Show The Position Is Sufficiently Complex

Under the second category of prong two of 8 C.F.R. §214.2(h)(4)(iii)(A)(2), Plaintiffs

note that Defendants January 2019 decision briefly discussed the Mathematical Association of

America ("MAA") document provided by LexisNexis (which elaborated on positions of

"Mathematics and Operations Research in Industry").  Pls' Mot. at 25-27.  They further assert

---

[5] In its prong two argument, Plaintiffs tangentially point out that LexisNexis' motion for reconsideration stated "fields such as accounting, economics, and operations research employ techniques from other mathematical principals, such as mathematical formulation, applied mathematics, and statistical analysis. Thus, the Data Analyst position requires a bachelor's degree that is limited to fields of study including statistics, mathematics, or fields that are closely related to those two areas of study."  Pls' Mot. at 24.  Plaintiffs then proceed to attack Defendants' statement that "since multiple fields of education are suitable for the position of Data Analyst, the position is not one that is qualified as a specialty occupation, requiring the application of a body of knowledge in one specific field as a minimum to perform the duties associated with the position." *Id.*  Plaintiffs argue this misreads 8 C.F.R. § 214.2(h)(4)(iii)(A)(2) because, as they allege, there is no requirement for a tracking for degrees to professions.  *Id.*

Plaintiffs argument regarding the body of specialized knowledge for the position at issue is not directly germane to whether, under 8 C.F.R. §214.2(h)(4)(iii)(A)(2), the "degree requirement is common to the industry in parallel positions among similar organizations."  In any event, Plaintiffs fail to recognize that 8 C.F.R. § 214.2(h)(4)(iii)(A)(2) must be interpreted in conjunction with INA § 214(i)(1) and 8 C.F.R. § 214.2(h)(4)(ii), the latter of which defines a specialty occupation to mean "an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor[.]"  *Id.*; *see* AR 0002 (explaining all of the foregoing provisions must be read in tandem and noting that the term "degree" is interpreted to mean a degree in a "specific specialty that is directly related to the proffered position").   As such, Plaintiffs reliance on *Residential Finance Corp. v. U.S. Citizenship And Immigration Services*, 839 F. Supp. 2d 985, 996-97 (S.D. Ohio 2011), which rejected the "premise that the title of a field of study controls ignores the realities of the statutory language involved and the obvious intent behind them[,]" is misplaced.  *See* Pls' Mot. at 25. And as to Plaintiffs' suggestion that USCIS unduly focused on the titles of majors, not only is there no support for such assertion, it is also belied by the record which indicates that Defendant did not focus on titles by themselves but also on the position duties.  *See* AR 0003.

that Defendants acknowledged that the "area of applied mathematics called Operations Research combines mathematics, statistics, computer science, physics, engineering, economics and social sciences to solve real-world business problems" and that such positions "all require a solid background in mathematics and familiarity with other disciplines (such as physics, economics, and engineering)." *Id.*

Plaintiffs, however, misquote Defendants as the foregoing language was in the MAA. *See* AR 0005, 0139.  Moreover, in analyzing the issue, Defendants concluded that the subject positon was not so complex, which even Plaintiffs (at 26) have recognized:

> According to the evidence provided, it appears, again, that the position offered does not involve duties [that] are so complex and unique that only an individual [with a degree] can perform them. It is noted that skills such as problem formulation, mathematical modeling, data collection, solution methods, validation and analysis, and interpretation and implementation are skills that can be obtained through various fields of education. This conclusion is reinforced by the statement on the document that education [in] the fields of mathematics, statistics, computer science, physics, engineering, economics, and social sciences may prepare an individual for the proffered position.

AR005.  As such, Defendants concluded that Plaintiffs had "not shown that this position involves duties seen as either unique or so complex that only an individual with a bachelor's degree or higher in a specific specialty could perform them." *Id.*  Plaintiffs offer no valid reason why this conclusion was not rationally reached in light of the record evidence.  Accordingly, for the foregoing reasons, Plaintiffs' prong two arguments should be rejected.

Indeed, the scope of review under the APA's arbitrary and capricious standard is "narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Manufacturers Association v. State Farm Mutual Insurance Company*, 463 U.S. 29, 43 (1983). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its

action including a 'rational connection between the facts found and the choice made.'" *Id.*

(citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).  Thus, under the APA,

the Court should not overturn USCIS's decision (or should not have done so) if USCIS examined

the relevant data and provided an explanation which included a rational connection between the

facts and the denial of the petition.  Because the foregoing illustrates that USCIS has done so, *see*

AR092, Plaintiffs' claim under prong two ultimately fails.

### E.  USCIS's Analysis Of The Fourth Prong Was Not Arbitrary And Capricious[6]

The last of the four 8 C.F.R. §214.2(h)(4)(iii)(A) prongs is that the "nature of the specific

duties are so specialized and complex that knowledge required to perform the duties is usually

associated with the attainment of a baccalaureate or higher degree."   Plaintiffs asserts that

Professor Seinke's opinion was not given sufficient weight by USCIS.  *See* Pls' Mot. at 27-31.

Plaintiffs (at 30), however, recognize USCIS addressed the deficiencies in the opinion:

> The professor reached this conclusion by relying on your description of the
> position rather than any specific study of the position at your organization. There
> is no evidence that the professor knew any more about the specific duties of the
> position than what you provided. The professor does not demonstrate or assert in-
> depth knowledge of your business operations or how the duties of the position
> would actually be performed in the context of your business. The professor's
> opinion does not relate the professor's conclusions to specific, concrete aspects of
> your business operations so as to demonstrate a sound factual basis for the
> professor's conclusions about the educational requirements for the proffered
> position. The [sic] does not explain why the knowledge required for the
> furtherance of the job duties can only be obtained through education in Business
> Analytics, Statistics, Mathematics or a related quantitative field.

AR092.  Plaintiffs (at 30) suggest that this analysis contains conjecture but fail to explain why.

To the contrary, such opinion shows that USCIS "examine[d] the relevant data and articulate[d]

---

[6] As explained *supra* at 16 note 4, Plaintiffs make no argument as to the third prong.

a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle,* 463 U.S. at 43 (citing *Burlington,* 371 U.S. at 168).

Nevertheless, Plaintiffs attack USCIS for not elaborating on Professor Seinke's opinion in its January 2019 decision. *See* Pls' Mot. at 29-30. But Plaintiffs blatantly failed to address the deficiencies identified in the September 2018 decision, which they could have easily done by submitting new evidence to supplement such opinion for purposes of the January 2019 decision. Instead of recognizing that they failed to submit additional evidence to strengthen the deficient opinion and thereby meet their burden, Plaintiffs are attempting to shift the burden to USCIS by asserting that USCIS did not address their motion for reconsideration. *See* Pls' Mot. at 29-30. But such motion did not control the grounds on which USCIS decided to reconsider its decision and it was Plaintiffs' choice, at their own peril, to continue to rely on the opinion despite the deficiencies that USCIS meticulously articulated.

Plaintiffs also attack USCIS for stating that "where an opinion is not in accord with other information or is in any way questionable, USCIS is not required to accept or may give less weight to that evidence." Pls' Mot. at 30-31. Plaintiffs further assert that "Defendants do not identify or describe any record evidence with which Professor Steinke's opinion is 'not in accord' nor did Defendants describe or identify any record evidence that could serve as a basis for finding any aspect of Professor Steinke's opinion 'questionable.'" *Id.* This, however, is precisely what USCIS did when it explained that the opinion only relied on a description of the position in concluding that it was a specialty occupation, which, as USCIS indicated, conflicted with the fact that there was no evidence that the Professor knew any more about the duties of the job beyond that which Plaintiffs' provided, which made such opinion questionable. *See* AR092.

23

To the extent that Plaintiffs implicitly assume, as a matter of law, that USCIS was required to cite independent evidence to undermine the opinion as opposed to analyzing the opinion itself, Plaintiffs fail to provide any support for such conclusion.

Perhaps most fatal to Plaintiffs' argument is that, even if the foregoing opinion established the duties of the job are so complex they usually require a degree, as noted above, merely satisfying this prong is insufficient to establish a "specialty occupation" given that "USCIS consistently interprets the term 'degree' in the criteria at 8 CFR § 214.2(h)(4)(iii)(A) to mean not just any bachelor's or higher degree, *but one in a specific specialty that is directly related to the proffered position*."  AR0004 (emphasis added).  Plaintiffs shed no light on the latter point and thus their arguments ultimately fail.[7]

## CONCLUSION

Based on the foregoing, Defendants respectfully requests that the Court dismiss Plaintiffs' Complaint (or, in the alternative, stay proceedings pending administrative action) and deny Plaintiffs' Motion for Summary Judgment.

Dated: July 26, 2019                          Respectfully submitted,

                                              JESSIE K. LIU, D.C. Bar No. 472845
                                              United States Attorney

                                              DANIEL F. VAN HORN, D.C. Bar No. 924092
                                              Chief, Civil Division

---

[7] With respect to Sections F and G of Plaintiffs' motion where they assert that they have established multiple grounds for establishing that USCIS's decision was arbitrary and capricious and further assert they are entitled to have the Court immediately order USCIS to issue a visa, *see* Pls' Mot. at 31-33, as explained above, USCIS has reopened the decision and thus the relief requested is not available, and furthermore, Plaintiffs cite no authority indicating that the Court can order USCIS to issue a visa.  Additionally, because Plaintiffs requested consular notification, Ms. Chatterjee has to leave the United States even if her petition were granted in which case she would still not be permitted to remain in the United States beyond August 3, 2019.

By: _/s/ Matthew Kahn_
MATTHEW KAHN
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6718
Fax: (202) 252-2599
Matthew.Kahn@usdoj.gov

_Counsel for Defendant_