# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RELX, INC. d/b/a LexisNexis USA, <br><br> and <br><br> SUBHASREE CHATTERJEE <br><br>     Plaintiffs, <br><br> v. <br><br> KATHY A. BARAN, <br> in her Official Capacity, <br> Director of the California Service Center, <br> U.S. Citizenship and Immigration <br> Services, U.S. Department of <br> Homeland Security, ET AL. <br><br>     Defendants. | Case No.:  1:19-cv-01993-EGS |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## MOTION TO STAY THE PROCEEDINGS AND REPLY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DATED:     July 29, 2019

Michael J. Schrier
(D.C. Bar No. 444693)
Denyse Sabagh
(D.C. Bar No. 369113)
DUANE MORRIS LLP
505 9th St., NW, Suite 1000
Washington, D.C.  20004-2166
Tel:  202-776-5221
Fax:  202-478-0158
MJSschrier@duanemorris.com
DSabagh@duanemorris.com

# TABLE OF CONTENTS

**Page**

I.     Introduction .................................................................................................... 1

II.    The Government's Motion To Dismiss Fails Because It Lacks Authority To Reopen The Administrative Case ...................................................................... 2

III.   The Government's Motion For Stay Should Be Denied ................................... 8

IV.   The Government Failed To File A Cross-Motion For Summary Judgment, Effectively Conceding That The January 2019 Final Agency Decision Fails APA Review ...................................................................................................... 9

V.    The Government's Arguments In Opposition To Plaintiffs' Motion For Summary Judgment Are Unpersuasive .......................................................... 10

      A.     The Preponderance Of The Evidence Standard Was Not Applied ....................... 10

      B.     The Government's Analysis Of The First Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ........... 12

      C.     The Government's Analysis Of The Second Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ...................................................................................................... 14

      D.     The Government's Analysis Of The Fourth Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law ...................................................................................................... 15

VI.   Any Remand Would Be Futile Because The "New" RFE Asks For The Same Information As The Old One Proving The Governments Seeks An Unreasonable Delay And Not Resolution To This Case ................................. 17

VII.   The Government's Attempt To Reopen And Unreasonably Delay Resolution Of This Case Highlights How And Why 5 USC §706(1) Relief Is Warranted. .......... 20

VIII.   Conclusion ................................................................................................... 21

DM2\10264770.3

# TABLE OF AUTHORITIES

**Federal Cases**

*Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996) ...........................................................16

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) ..................................................................................................11

*Gordon v. FDIC*, 427 F.2d 578 (D.C. Cir. 1970) ......................................................................8

*Landis v. N. Am. Co.*, 299 U.S. 248, 57 S.Ct. 16381 L.Ed. 153 (1936) ..........................................8

*Mantena v. Hazuda*, No. 17cv5142, 2018 U.S. Dist. LEXIS 132826 (S.D.N.Y. Aug. 7, 2018) .................................................................................................7, 19

*Net-Inspect, LLC v. USCIS*, Civ. A. No. 14-1514, 2015 U.S. Dist. LEXIS 24951 (W.D. Wash. Mar. 2, 2015) ...........................................................................5, 7

*Otero v. Johnson*, No. CIV 16-090-TUC-CKJ, 2016 U.S. Dist. LEXIS 151961 (D. Ariz. Nov. 2, 2016) .................................................................................5-7, 20

*RCM Technologies, Inc. v. DHS*, 614 F.Supp.2d 39 (D.D.C. 2009) ..................................................6

*Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ............................16

*True Capital Mgmt. v. DHS*, No. 13-261, 2013 U.S. Dist. LEXIS 87084 (N.D.Cal. June 20, 2013) ......................................................................................5

*Utah Life Real Estate Grp., LLC v. USCIS*, 259 F.Supp.2d 1294 (D.Utah 2017) ........................5, 7

**Federal Statutes**

5 USC §706(1) .........................................................................................................20

**Rules**

Fed.R.Civ.P. 34 ......................................................................................................11

Fed.R.Evid. 101(a) ...................................................................................................16

Fed.R.Evid. 703 ......................................................................................................15

**Regulations**

8 C.F.R. § 103.5(a)(5) .............................................................................................2-3

8 C.F.R. § 103.5(a)(5)(i) ............................................................................................3

8 C.F.R. § 103.5(a)(5)(ii) ................................................................................................*Passim*

8 C.F.R. § 214.2(h)(4)(iii)(A) ....................................................................................14

DM2\10264770.3

## I.     Introduction

Plaintiffs RELX, Inc. d/b/a LexisNexis USA ("LexisNexis") and Subhasree Chatterjee ("Chatterjee") hereby submit this Opposition to Defendants' Motion to Dismiss (ECF#12) and Reply in support of Plaintiffs' Motion for Summary Judgment (ECF #7).

The centerpiece of the Government's motion to dismiss is its alleged unilateral attempt to administratively reopen the Plaintiff's petition for a H-1B visa on July 18, 2019 (for which no evidence was provided to counsel or this Court of this actually occurring) and issue a new Request for Evidence ("RFE") on July 22, 2019 – all after the parties appeared before the Court on July 11, 2019 for a status conference on Plaintiff's Complaint and Motion for Preliminary Injunction.  As explained below, the Government is without authority to do what it has attempted to do thereby rendering its "reopening" a nullity.  As such, the January 2019 final agency decision stands, and the Government's Motion to Dismiss or Motion to Stay must be denied, as a matter of law.

The Court directed the Government to "file a cross-motion for summary judgment and opposition" to Plaintiff's motion for summary judgment.  *See* ECF (July 12, 2019 Minute Order).   The Government failed to do what the Court requested.  The Government only filed an opposition to Plaintiffs' motion for summary judgment – and ***did not file a cross-motion for summary judgment***.  The Government's failure to file a cross-motion for summary judgment on the Administrative Record in this Administrative Procedure Act case is a tacit admission that its January 2019 final agency decision fails to survive APA review. Instead, the Government only argues that Plaintiffs are not entitled to summary judgment and does not affirmatively argue that the Government is entitled to summary judgment. That should be all the Court needs to know to decide this APA case.   Regardless, the Government's arguments and the "new" July 22, 2019 RFE all demonstrate that the January

2019 final agency decision fails to survive APA review.  Hence, the Court should grant

Plaintiffs summary judgment, order the Government to grant LexisNexis's H-1B visa

petition, and immediately grant Ms. Chatterjee H-1B visa status.

## II.     The Government's Motion To Dismiss Fails Because It Lacks Authority To Reopen The Administrative Case

The keystone to the Government's Motion to Dismiss is the argument that there is no

"final agency action" to review in light of the Government's July 18, 2019 alleged

reopening of the January 2019 final agency decision and subsequent July 22, 2019 "new"

RFE.  Government's Motion to Dismiss (ECF# 12) (hereinafter "MTD") at 7-11.  The

Government is wrong.

While the Government attempts to argue that the January 2019 final agency decision

has been rendered "non-final", the Government curiously buries the explanation for its

alleged authority to take the actions it claims to have taken.  Noticeably absent from the

Government's motion is an exhibit, declaration, administrative motion, or any other

document evidencing or reflecting the purported July 18, 2019 "decision" to reopen the

administrative case and the alleged reasons/rationale for doing do.  The Government simply

asks the Court to take its word for it, without providing any proof to support its alleged

actions.  In the complete absence of any proof of such an alleged agency action on July 18,

2019, the necessary factual predicate for the Government's motion to dismiss is completely

lacking.

Buried in footnote 2 to the Government's Motion to Dismiss is the statement:  "This

is because 8 C.F.R. § 103.5(a)(5) provides USCIS with the authority to *sua sponte* reopen

denied visa petitions."  While that may be generally true under certain situations, the

regulation does not give the Government the authority to act as it claims to have done in this

case because a necessary condition precedent is missing.  The regulation states, in relevant part:

> (a) Motions to reopen or reconsider in other than special agricultural worker and legalization cases—
>
> . . .
>
> (5) Motion by Service officer—
>
>> (i) Service motion with decision favorable to affected party. When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision in order to make a new decision favorable to the affected party, the Service officer shall combine the motion and the favorable decision in one action.
>>
>> (ii) Service motion with decision that may be unfavorable to affected party. When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30–day period.

8 C.F.R. § 103.5(a)(5).

It is clear that the Government is not relying on 8 C.F.R. §103.5(a)(5)(i) because it is clearly not "mak[ing] a new decision favorable to the affected party."  If it was, then the Government would be issuing documents granting the requested H-1B visa status, Plaintiffs would not object, and this case would be concluded.

Instead, it appears that the Government is relying § 103.5(a)(5)(ii) – even though that subsection is never once mentioned in the Government's brief or in the non-existent July 2018 decision which is not part of the record of this case.  While the Government has some authority to reopen cases, the Government must follow its own regulations in how it chooses to do so.  Specifically, § 103.5(a)(5)(ii) expressly states:  "When a Service officer, **on his or her own motion**, reopens a Service proceeding or reconsiders a Service decision, and the

new decision may be unfavorable to the affected party, **the officer shall give the affected party 30 days <u>after service of the motion</u> to submit a brief**." (emphasis added). Hence, the plain language of the Government's own regulation requires that the Service officer **file a motion** before reopening any proceeding or decision and provide the petitioner the opportunity to file a brief in opposition to the proposed action. There is no evidence in the Administrative Record of this case that any such required "motion" has been filed or even exists, the Government does not argue that it actually filed any such motion before unilaterally attempting to reopen the administrative proceedings, and Plaintiffs have never received any alleged "motion" to reopen. The "new" July 22, 2019 RFE (Ex. A to MTD) makes no mention of § 103.5(a)(5)(ii) or the existence of any predicate "motion" by the Government. Nor does the RFE advise Plaintiffs of their regulatory right to submit a brief in opposition to the Government's motion to reopen within "30 days after service of the [Government's] motion." There was no "motion", hence the required regulatory condition precedent to reopening or reconsidering the January 2019 final agency decision has not been satisfied. As a result, the Government's January 2019 final agency decision remains untouched as the final agency action under review in this case and the Government's Motion to Dismiss must be denied, as a matter of law.

Even if the Government were to somehow move quickly enough between today and the scheduled August 1, 2019 motion hearing to draft and serve the required "motion" and otherwise correct its obvious procedural errors under 8 C.F.R. § 103.5(a)(5)(ii) or even if the Court were to conclude that the Government already complied with § 103.5(a)(5)(ii) despite the plain language to the contrary, the Government nonetheless lacks the authority to "take

back" its January 2019 final agency decision in a deliberate attempt to deprive this Court of jurisdiction.

The rule of decision on this issue of whether the Government has the power to deprive the Court of jurisdiction to hear this matter at this stage of the proceedings ultimately comes down to which of two federal district court cases decided six months apart from each other this Court finds more persuasive in its logic. The Government cites to *Utah Life Real Estate Grp., LLC v. USCIS*, 259 F.Supp.2d 1294 (D.Utah 2017) – a case with little analysis and a conclusion oriented decision - for the proposition that "USCIS's reopening of Plaintiff LexisNexiss [sic] petition renders non-final the previous denial decision." MTD at 8. However, *Otero v. Johnson*, No. CIV 16-090-TUC-CKJ, 2016 U.S. Dist. LEXIS 151961, *23-24 (D. Ariz. Nov. 2, 2016) – a case not mentioned in the Government's brief – extensively reviews the same underlying legal authority as *Utah Life* and comes to the exact opposite conclusion, specifically: "The general rule that an agency may not divest a federal court of jurisdiction by unilaterally reopening its administrative proceedings applies in this case." (citations omitted).

*Otero* expressly distinguishes *Net-Inspect, LLC v. USCIS*, Civ. A. No. 14-1514, 2015 U.S. Dist. LEXIS 24951 (W.D. Wash. Mar. 2, 2015) and *True Capital Mgmt. v. DHS*, No. 13-261, 2013 U.S. Dist. LEXIS 87084 (N.D.Cal. June 20, 2013) – the only two other cases the Government relies upon for its motion on factual grounds. 2016 U.S. Dist. LEXIS 151961, *13-14. *Otero* also holds that USCIS may be able to reopen a case to deprive a federal court of jurisdiction only when "further administrative relief is available if a pending removal proceeding exists." *Id.*, *19. *Otero* also holds that "agency attempts to 'divest the federal courts of jurisdiction by unilaterally reopening its administrative proceedings' are

disfavored." *Id.*, *27-28. *Otero* concludes: "[t]here is no basis to conclude, therefore, that the actions of Defendants in vacating its prior decision and reopening the status of adjustment proceedings was valid or that it divested this Court of subject matter jurisdiction." *Id.*, *37-38. Based on the foregoing, the Government's denial of a visa petition is final.[1] And, most importantly, the Government may not unilaterally attempt to divest this Court of jurisdiction by reopening its administrative proceedings.

If the Government were allowed to do what it has attempted to do and divest this Court of jurisdiction by unilaterally reopening the administrative case below, there is no limit to how often that technique could be used to effectively place this case in perpetual suspended animation and deny Plaintiffs any relief under the APA. *See Otero*, 2016 U.S. Dist. LEXIS 151961, *26 ("[I]f Defendants actions are permitted to go unchecked, Defendants would retain sole control over whether Otero's claim may ever be brought before the courts." ). The timing and manner of the Government's attempt here underlines the point. At the July 11, 2019 status conference, the Court strongly encouraged the Government to find a way to settle this case. To accelerate a resolution to this matter, the Court consolidated the pending Preliminary Injunction motion with a hearing on the merits of cross-motions for summary judgment on August 1, 2019. Hours after Plaintiffs filed their Motion for Summary Judgment at 3:11 pm (ECF #7), the Government served counsel with a copy of the "new" RFE at 5:11 pm but never served them with any alleged 8 C.F.R. §

---

[1] Later in its Motion to Dismiss, the Government argues that this case must be dismissed for an alleged failure to exhaust administrative remedies. MTD at 10. The Government is wrong. "[P]laintiffs need not pursue an AAO appeal before seeking judicial review of denied visa applications in federal court." *RCM Technologies, Inc. v. DHS*, 614 F.Supp.2d 39, 45 (D.D.C. 2009). Hence, Plaintiffs may bring this APA action challenging the January 2019 final agency decision.

103.5(a)(5)(ii) motion in what appears to be a deliberate attempt to avoid decision by this Court and deny Plaintiffs any possible relief by August 3, 2019. MTD Ex. A. As discussed below, the "new" RFE asks for the same information as the original May 2018 RFE. *See infra*. The timing and method appears to have been calculated to cause Plaintiffs to incur maximum expense and delay a resolution to this matter. The fact that the "new" RFE is essentially the same as the "old" RFE constitutes further grounds for finding the January 2019 to continue to be the final agency action in this case. *See Mantena v. Hazuda*, No. 17cv5142, 2018 U.S. Dist. LEXIS 132826, *17-18 (S.D.N.Y. Aug. 7, 2018)(denying similar motion to dismiss because "the circumstances of reopening are suspect" and the Government reopened the "case in name only."); *cf. Net-Inspect, LLC*, 2015 U.S. Dist. LEXIS 24951, *17 n.7 (Suggesting that if the Government reopened the administrative case for the purpose of deliberately attempting to avoid judicial review under the APA, that would be a grounds for the court to deny a Government motion to dismiss so as to thwart that effort).

The legal arguments in *Otero* are stronger and more persuasive than those in *Utah Life*. And, the procedural posture of this case and timing of its actions suggest that the Government's alleged (and not produced) July 18, 2019 decision to reopen and July 22, 2019 RFE which asks for essentially the same information as the original RFE were motivated by a deliberate desire to deprive the Court of jurisdiction and deprive the Plaintiffs of any hope of any judicial or administrative relief prior to August 3, 2019 in a manner akin to what was done by the Government in *Mantena*.

For all of the foregoing reasons, the January 2019 final agency decision remains the final agency decision under APA review in this case. There is no proof of a July 18, 2019

"motion" to reopen the administrative case and, as such, the requirements of 8 C.F.R. §103.5(a)(5)(ii) have not been met. And even if such regulatory prerequisites were satisfied between today and the August 1, 2019 Motion Hearing scheduled in this case, the Court should not permit the Government to deprive this Court of jurisdiction when the parties are on the verge of receiving a decision from this Court by the end of this week. Based on the foregoing, there is a final agency decision subject to APA review here.[2] Therefore, the Government's Motion to Dismiss must be denied, as a matter of law.

## III.    The Government's Motion For Stay Should Be Denied

The alternative proposed relief for the Government's Motion to Dismiss is a naked "request [to] stay [] the proceedings pending further administrative action to allow the issue to ripen." MTD at 11. No explanation or justification is provided as to why the Court should stay anything if "the Court is not inclined to grant Defendants' motion to dismiss." The only legal authority for the Government's request for stay are cases involving a request for stay of civil proceedings pending the outcome in a related criminal case (*Gordon v. FDIC*, 427 F.2d 578 (D.C. Cir. 1970)) and to stay one federal civil case in favor of another pending civil case (*Landis v. N. Am. Co.*, 299 U.S. 248, 57 S.Ct. 16381 L.Ed. 153 (1936)). Both cases are totally distinguishable from the facts and circumstances of this case, particularly as neither involve a requested stay of an APA case.

Without proof that the alleged July 18, 2019 "motion" to reopen actually exists or demonstrated compliance with 8 C.F.R. § 103.5(a)(5)(ii), there is no factual or legal predicate to any motion to stay. The Government provides no relevant legal authority for

---

[2] Because there is a final agency action subject to APA review here, the Government's ripeness and exhaustion arguments also fail once the legally defective reopening attempt is properly set aside as a nullity.

issuing a stay in this APA case.  Absent any explanation or justification – or the articulation

of any expectation that a different administrative result could be reached in a timely manner

if the agency were given another chance  - there is no factual or legal basis upon which to

grant any stay in this case and the Government's Motion for Stay must be denied.

## IV.	The Government Failed To File A Cross-Motion For Summary Judgment, Effectively Conceding That The January 2019 Final Agency Decision Fails APA Review

APA cases are generally decided on cross-motions for summary judgment.  The

Court explicitly ordered the Government to file a "cross-motion for summary judgment and

opposition." The Government failed to comply, filing only an opposition to Plaintiffs'

motion for summary judgment and **not filing any cross-motion for summary judgment**.

ECF #12.

No explanation is provided as to why the Government failed to comply with the

Court's order and failed to file any cross-motion for summary judgment.  A logical

conclusion is that the Government realized that it cannot prevail on a cross-motion for

summary judgment in this APA case and it made the strategic decision only to attempt to

oppose Plaintiffs' motion.[3]  The Government's "opposition" brief does not argue how or

why the Government should win this case nor make any effort to demonstrate that its

January 2019 final agency decision can be upheld under APA review.[4]  Instead, the

---

[3] Regardless of the reason, in the event Plaintiffs' Motion for Summary Judgment were denied and the Court denied the Government's Motion to Dismiss (as it must here), then the next step in this case would be a trial.  In the absence of a cross-motion for summary judgment, the Court effectively lacks the procedural mechanism to do anything other than rule for Plaintiffs on the merits of this APA case because there is no cross-motion that can be granted.

[4] Nor does the Government raise any issue or disagree in any way with the appropriate summary judgment or APA review standard that Plaintiffs set forth in their principal brief.

Government simply makes a series of two or three sentence conclusory rebuttals to select aspects of Plaintiffs' arguments. Such a strategy indicates that the January 2019 final agency decision cannot withstand APA review and Plaintiffs' Motion for Summary Judgment should be granted.

## V.    The Government's Arguments In Opposition To Plaintiffs' Motion For Summary Judgment Are Unpersuasive

The Government's arguments in opposition to Plaintiffs' Motion for Summary Judgment are circular, unsupported, and generally unpersuasive.  In short, they fail to demonstrate why the Court should not grant summary judgment to Plaintiffs.

### A.    The Preponderance Of The Evidence Standard Was Not Applied

In the Government's first argument, it states that the preponderance of the evidence standard "was applied here because the record indicates Defendants explained that Plaintiffs' claim does not meet the preponderance of the evidence standard."  MTD at 12.[5]  This is wholly circular.  As explained in Plaintiffs' principal brief, the only mention of the "preponderance of the evidence standard" was in an introductory paragraph of the January 2019 and September 2018 decisions.  AR001; AR086.  There is no indication anywhere in the analysis portion of the January 2019 final agency decision (or the superseded September 2018 decision) that the Government actually applied any evidentiary standard, let alone a preponderance of the evidence standard.  AR001-7; *see* AR086-94.  The unopposed evidence provided by Plaintiffs was largely not explained, discussed, or (in many cases) even mentioned.[6]  *Id*.  Given the OOH, the related

---

[5] The Government does not, in its opposition brief, raise any issue or disagree with Plaintiffs' articulation of the preponderance of the evidence standard, as it should have been applied in this case.

[6] The Government's failure to apply a preponderance of the evidence standard is highlighted by the *post hoc* rationalization embodied by the July 22, 2019 "new" RFE which

O*NET listing, the clearly stated job duties for the Data Analyst position, six comparable Data Analyst postings from other technology companies, association literature from the Mathematical Association of America, Professor Steinke's expert opinion[7], and several memoranda from counsel connecting all of the foregoing and additional evidence, it is clear that the only way the Government could have denied the Petition was if it applied an evidentiary standard other than preponderance of the evidence when reviewing Plaintiffs' unrebutted evidence.

---

appears to have been drafted by agency counsel in direct response to the Complaint, the Motion for Preliminary Injunction, and the Motion for Summary Judgment Plaintiffs filed. The "new" RFE – which is nothing more than a formalized document production request akin to Fed.R.Civ.P. 34 and not an "adjudication" within the meaning of the APA - attempts to partially analyze and weigh the evidence Plaintiffs provided in a manner closer to that which the January 2019 final agency decision should have. *See* MDT Ex. A at 3-10. By providing this document which was served after Plaintiffs filed their Motion for Summary Judgment (and which was received by LexisNexis's immigration counsel only today), the Government firmly established that its January 2019 final agency decision failed to consider all of the evidence LexisNexis provided and otherwise fails to withstand APA review. The Government should not be permitted to rely on the "new" RFE, attached to its Motion to Dismiss and not cited in its opposition to Plaintiffs' motion for summary judgment, in any "backdoor" *post hoc* rationalization kind of way to justify the conclusions it reached in its defective January 2019 final agency decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (*post hoc* rationalizations "have traditionally been found to be an inadequate basis for review" of agency decisions).

[7] The Government admits not considering or discussing Professor Steinke's opinion in connection with the first prong analysis. MTD at 17. No explanation is provided other than "USCIS explained the deficiencies in such opinion elsewhere." *Id.* Even if the Government were justified in giving that expert opinion only "some" weight, Professor Steinke's opinions corroborated all of Plaintiffs' other evidence proving that a Bachelor degree in Business Analytics, Statistics, Mathematics, or a related quantitative field that would enable the Data Analyst to perform complex statistical analyses. Some discussion of the expert opinion was warranted, and the Government erred in completely ignoring it.

DM2\10264770.3

### B.     The Government's Analysis Of The First Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law

The Government asserts a number of responses to Plaintiffs' argument that the Government failed to properly analyze the first mutually independent prong of the specialty occupation test.

The Government simultaneously argues that it didn't interpret the OOH and that the OOH is "an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses."  MTD at 13-14.  In the next breath, however, the Government argues that neither the OOH nor O*NET[8] are sufficient to establish whether a Data Analyst is a specialty occupation because while both require a Bachelor degree, neither "reflect that a degree *in a particular specialty is required*."  MTD at 14 (emphasis in original).  This argument exposes the hypocrisy of the Government's position as it relates to technology occupations.  The OOH listings for the following representative occupations do not specify the precise degree any applicant needs:

- Database Administrator: "Most database administrators have a bachelor's degree in an information- or computer-related subject such as computer science. Firms with large databases may prefer applicants who have a master's degree focusing on data or database management, typically either in computer science, information systems, or information technology."  *See* https://www.bls.gov/ooh/computer-and-information-technology/database-administrators.htm#tab-4
- Computer Programmer: "Most computer programmers have a bachelor's degree; however, some employers hire workers who have other degrees or experience in specific programming languages. Most programmers get a degree in computer science or a related subject. Programmers who work in specific fields, such as

---

[8] The Government also argues that its reliance on the "Administrative Service Manager" position from O*NET when analyzing the Data Analyst position here was not a mistaken "cut and paste" and that there was no analytical reliance, instead "such language . . . was discussed merely as an analogy to illustrate another position for which a degree in a specific specialty is not required."  MTD at 17.  How O*NET treats other occupations is irrelevant to this case involving a Data Analyst position.  Hence, the Government's arguments should be seen for the distraction that they are.

DM2\10264770.3

healthcare or accounting, may take classes in that field to supplement their degree in computer programming." *See* https://www.bls.gov/ooh/computer-and-information-technology/computer-programmers.htm#tab-4

- Computer and Information Research Scientist: "Most computer and information research scientists need a master's degree in computer science or a related field, such as computer engineering. A master's degree usually requires 2 to 3 years of study after earning a bachelor's degree in a computer-related field, such as computer science or information systems." *See* https://www.bls.gov/ooh/computer-and-information-technology/computer-and-information-research-scientists.htm#tab-4

Applying the Government's logic, none of the foregoing positions could ever qualify as a "specialty occupation" because no specific degree is expressly stated in the OOH listing ("computer science *or a related field*"). In short, the Government's reference to and/or reliance on the OOH, and its representation that the OOH is "an authoritative source on the duties and educational requirements" for positions, becomes illusory.

It is not as if Plaintiffs are arguing that a Data Analyst requires a Bachelor degree in English Literature, Philosophy, or Music. As Plaintiffs explained throughout the administrative process and as Professor Steinke[9] explained, the specialty knowledge necessary for a Data Analyst position is found in undergraduate degrees in Business Analytics, Statistics, Mathematics, or a related quantitative field. Ms. Chatterjee has a Master degree in Business Analytics.[10] Given the detailed description of the Data Analyst job duties at issue here (AR055-

---

[9] The Government admits that it never addressed Professor Steinke's expert opinion in its defective analysis of the "first prong" in the January 2019 final agency decision because "USCIS explained the deficiencies in such opinion elsewhere in its decision and thus there was no need to address this specifically under prong one." MTD at 17.

[10] The Government claims that merely having an MBA degree is not enough to prove a "specialty occupation." MTD at 15-16. Plaintiffs agree, as a general proposition. In this case, however, Ms. Chatterjee has a Master degree with a specialization in Business Analytics from the University of Cincinnati's Carl H. Lindner College of Business, Business Analytics Program. AR035. As such, Ms. Chatterjee was no generalist and her Master degree is narrowly and specifically tailored for the Data Analyst position at issue in this case.

57), it defies logic to think that any degrees other than the foregoing involving complex quantitative analysis could in any way be relevant to a position involving complex statistical analysis that is inherent in such STEM degrees. What other evidence could the Government possibly need or want demonstrated here? At some point, even the Government must apply a certain degree of common sense.

    **C.**    **The Government's Analysis Of The Second Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law**

The Government claims that Plaintiffs did not submit evidence to show that a degree requirement was common in industry for Data Analysts. MTD at 19. They did. Specifically, Plaintiffs submitted job announcements from six other companies for a Data Analyst position. AR059-64. Each of the six position announcements, in various ways, all stated that the position required a Bachelor degree "in a quantitative field, such as business analytics, statistics, mathematics, economics, operations research, or a closely related field." AR059. From the position descriptions, each of these six positions are "parallel positions among similar organizations," contrary to the Government argument in its opposition brief. MTD at 19. After reviewing this evidence including Professor Steinke's expert opinion[11], there can be no other conclusion than the Government's decision on this aspect of Prong Two is arbitrary, capricious, and an abuse of discretion.[12]

---

[11] Once again, the Government glosses over the fact that it failed to even consider any aspect of Professor Steinke's expert opinion when denying the H-1B visa under Prong Two. MTD at 19-20.

[12] The Government raises a "red herring" arguing that "Plaintiffs have not submitted LexisNexis' announcement for any Data Analyst position." MTD at 19. This is really a Third Prong argument, which LexisNexis did not make in the first place. As explained in Plaintiffs' principal brief, each of the four prongs of the 8 C.F.R. § 214.2(h)(4)(iii)(A) test for "specialty occupation" are mutually independent and Plaintiffs need only prevail on one of the four grounds in order to be issued the H-1B visa. Is the Government really arguing that self-certification of

The Government next argues that Plaintiffs failed to establish that the Data Analyst position is so complex that only an individual with a bachelor's degree or higher in a specific specialty could perform them." MTD at 21. After essentially repeating its facially defective findings from the January 2019 final agency decision, the Government essentially argues that the Court should uphold its decision because "USCIS [allegedly] examined the relevant data and provided an explanation which included a rational connection between the facts and the denial of the petition." MTD at 22. When one reviews the detailed job duties for the Data Analyst position (including the description of the complex statistical tools and methods required) (AR055-57) and all of the evidence in the record of this case (and all of the arguments raised above and in Plaintiffs' principal brief), there is nothing "rational" about the Government's explanation for its decision based on the unrebutted facts provided by Plaintiffs. The January 2019 final agency decision simply fails to survive APA review.

### D. The Government's Analysis Of The Fourth Prong Was Arbitrary, Capricious, An Abuse Of Discretion And Not In Accordance With Law

In its opposition to Plaintiffs' Motion for Summary Judgment on the Fourth Prong of "specialty occupation" review, the Government focuses entirely on its analysis of Professor Steinke's expert opinion. MTD at 22-24. What becomes clear when reading the Government's argument is that it applied a legal standard for "admissibility" of expert opinions that is far more burdensome that what the Court itself would apply under Federal Rules of Evidence. Under Fed.R.Evid. 703, an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the

---

"specialty occupation" by LexisNexis alone would have been sufficient for the Government to issue the H-1B visa? Given everything else that has happened in this case, such a result is highly unlikely and any such efforts would have been met with the same denial.

particular field would reasonably rely on those kinds of facts or data in forming an opinion

on the subject, they need not be admissible for the opinion to be admissible." The

Government, in its September 2018 decision[13], effectively conducted a one-sided, biased,

and overly zealous *Daubert* review of Professor Steinke's opinion without any briefing or

contrary evidence in the Administrative Record. *See e.g., Ambrosini v. Labarraque*, 101

F.3d 129, 133-34 (D.C. Cir. 1996)(discussing application of the Court's *Daubert*

gatekeeping function in this Circuit). Plaintiffs submit that Professor Steinke's expert

opinion withstands scrutiny under the Federal Rules of Evidence.[14] *Ambrosini,* 101 F.3d at

134 ("once an expert has explained his or her methodology, and has withstood cross-

examination or evidence suggesting that the methodology is not derived from the scientific

method, the expert's testimony, so long as it 'fits' an issue in the case, is admissible under

Rule 702 for the trier of fact to weigh"). Based on the foregoing, Professor Steinke's expert

opinion would have withstood the gatekeeper function of *Daubert* and then should have

been available for the Government to "weigh." And, because Professor Steinke's expert

opinion is unopposed by any evidence in the Administrative Record, Plaintiffs necessarily

met their burden of proof by a preponderance of the evidence on Prong Four (as well as

Prongs One and Two).

---

[13] The Government did not analyze Professor Steinke's expert opinion in its January 2019 final agency decision and opted to disregard LexisNexis's express request for reconsideration of its improper September 2018 analysis on the subject. AR006.

[14] The Federal Rules of Evidence do not apply to administrative hearings (*see* Fed.R.Evid. 101(a)) and typically federal agencies apply a much more relaxed evidentiary standard in administrative proceedings. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)("From this it is apparent that . . . strict rules of evidence, applicable in the courtroom, are not to operate at social security hearings so as to bar the admission of evidence otherwise pertinent.")

DM2\10264770.3

**VI. Any Remand Would Be Futile Because The "New" RFE Asks For The Same Information As The Old One Proving The Governments Seeks An Unreasonable Delay And Not Resolution To This Case**

The old cliché "The definition of insanity is doing the same thing over and over and expecting different results" applies with great force to the Government's proposed "new" RFE and the entire concept of any agency initiated or court ordered remand in this case. The "new" RFE is simply a retread of, and asks for essentially the same information as, the original May 7, 2018 RFE (AR050-53), for example:

| **"New" RFE (MTD Ex. A)** | **"Old" RFE (AR050-53)** |
|---|---|
| A detailed statement from your company or, if the beneficiary will perform services for an end-client, the end-client to:<br><br>• Explain the actual duties the beneficiary will perform; Indicate the percentage of time devoted to each duty;<br>• State the education, experience, training, and special skills required to perform these duties; and<br>• Explain how the educational requirements relate to the position.<br><br>(p. 5) | A detailed statement to:<br><br>• explain the beneficiary's proposed duties and responsibilities;<br>• indicate the percentage of time devoted to each duty; and<br>• state the educational requirements for these duties.<br><br><br>(AR052) |
| Any evidence you believe will establish that a bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position. (p. 6) | Any evidence you believe will establish that the position qualifies as a specialty occupation.<br><br>(AR053) |
| Job postings or advertisements showing a degree requirement of a bachelor's degree or higher in a specific specialty, or its equivalent, is common to the industry in parallel positions among similar organizations. (p.7) | Job postings or advertisements showing a degree requirement is common to the industry in parallel positions among similar organizations.<br><br>(AR052) |

DM2\10264770.3

| | |
|---|---|
| Letters from an industry-related professional association indicating that similar organizations routinely employ and recruit only individuals with a bachelor's degree or higher in a specific specialty, or its equivalent for parallel positions. (p.7) | Letters from an industry-related professional association indicating that they have made a bachelor's degree or higher in a specific specialty a requirement for entry into the field.<br><br>(AR052) |
| Copies of letters or affidavits from firms or individuals in the industry attesting that similar organizations routinely employ and recruit only individuals with a bachelor's degree or higher in a specific specialty, or its equivalent for parallel positions. Any letter or affidavit should be supported by documentation of the following:<br><br>• The writer's qualifications as an expert;<br>• How the writer's conclusions were reached; and<br>• The basis for the writer's conclusions, supported by copies or citations of any materials used.<br><br>(p.7) | Copies of letters or affidavits from firms or individuals in the industry that attest that similar organizations routinely employ and recruit only degreed individuals in a specific specialty. Any letter or affidavit should be supported by the following:<br><br>• The writer's qualifications as an expert;<br>• How the conclusions were reached; and<br>• The basis for the conclusions supported by copies or citations of any materials used.<br><br>(AR052) |
| An explanation of the specific duties, as they relate to your products and services, and how the nature of those duties of the offered position are so specialized and complex, that they are usually associated with the attainment of a bachelor's degree or higher in a specific field of study; provide an explanation of what differentiates your products and services from other employers in the same industry. Be specific and provide documentation to support any explanation of specialization and complexity.<br><br>(p.10) | An explanation of what differentiates your products and services from other employers in the same industry and why a bachelor's level of education in a specific field of study is a prerequisite for entry into the proffered position. Be specific and provide documentation to support any explanation of complexity.<br><br>(AR053) |

DM2\10264770.3

LexisNexis already provided the requested information in response to the "old" RFE. *See* AR008-49; 054-85; 095-188. Why should it be forced to supply the same information a second time in response to a "new" RFE issued after LexisNexis filed its Motion for Summary Judgment? If the Government asks for the exact same information using essentially the same information requests and cannot articulate different categories of information it deems potentially relevant to its regulatory inquiry, is there any reason to think that the Government will reach a different conclusion if/when Plaintiffs were to respond to the "new" RFE? And, if the same result is likely to be reached again, what purpose then is there for the Government to attempt to reopen the case and issue an RFE other than to unreasonably delay a resolution to this case and attempt to deprive this Court of the ability to set aside the Government's faulty January 2019 final agency decision? *See Mantena*, 2018 U.S. Dist. LEXIS 132826 (denying motion to dismiss when Government reopened administrative case "in name only."). This delay motive is factually supported by the "new" RFE's statement that "**Your response must be received in this office by October 17, 2019**" (MTD Ex. A at 1) – a date more than two months after Ms. Chatterjee's current F-1 student visa expires. More importantly, the "new" RFE gives no indication as to when the Government will rule on the H-1B visa petition, which could linger for months longer. Given the impending expiration of Ms. Chatterjee's student visa (and the pending Preliminary Injunction motion), Plaintiffs respectfully submit that any further delay is unreasonable and the Court should immediately order appropriate corrective action.

DM2\10264770.3

## VII.    The Government's Attempt To Reopen And Unreasonably Delay Resolution Of This Case Highlights How And Why 5 USC §706(1) Relief Is Warranted.

The APA expressly authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Government had two chances to properly apply the facts, law, and burdens of proof, but chose not to do so. The analysis in the pages above demonstrates that the Government "unlawfully withheld" a decision on a H-1B visa petition based on dubious factual and legal grounds. The Government's failed attempt – after the parties appeared before the Court for the July 12, 2019 status conference while the Preliminary Injunction Motion was pending and after Plaintiffs filed their Motion for Summary Judgment - to "reopen" the January 2019 final agency decision and issuing duplicate information requests in the "new" RFE constitutes irrefutable evidence of the Government's attempt to perpetuate an existing (and manufacture a new) "unreasonable delay" in reaching a decision on Plaintiff's H-1B visa petition. *See Otero*, 2016 U.S. Dist. LEXIS 151961, *26 ("[I]f Defendants actions are permitted to go unchecked, Defendants would retain sole control over whether Otero's claim may ever be brought before the courts." ). This is particularly so in this case, given its unique factual and procedural posture, in light of the August 3, 2019 expiration of Ms. Chatterjee's current F-1 visa. LexisNexis will not be able to employ Ms. Chatterjee after August 3, 2019 and Ms. Chatterjee will be required to cease all work in the United States after August 3, 2019 and leave the United States shortly thereafter once her current F-1 visa expires.

In light of this, the only reasonable remedy here – particularly given the impending expiration of Ms. Chatterjee's F-1 student visa and the unreasonable delay that would result if the Government were allowed an unfettered "do over" without any time constraints all while Ms.

Chatterjee was in a non-visa status – is to order the Government to grant the twice improperly denied H-1B visa petition, immediately.[15]

## VIII.  Conclusion

Based on the foregoing, the arguments raised in their principal brief, and the entire Administrative Record, Plaintiffs RELX, Inc. d/b/a LexisNexis USA and Subhasree Chatterjee respectfully ask this Court to (a) deny the Government's Motion to Dismiss; (b) grant their Motion for Summary Judgment; (c) set aside the Government's January 23, 2019 final agency decision as not in compliance with the APA; and (d) order the Government to grant the H-1B visa petition and place Ms. Chatterjee in H-1B visa status immediately and before her current F-1 student visa expires on August 3, 2019.

DATED:  July 29, 2019

Respectfully submitted,

DUANE MORRIS LLP

/s/ Michael J. Schrier
Michael J. Schrier
(D.C. Bar No. 444693)
Denyse Sabagh
(D.C. Bar No. 369113)
DUANE MORRIS LLP
505 9th St., NW, Suite 1000
Washington, D.C.  20004-2166
Tel:  202-776-5221
Fax:  202-478-0158
MJSschrier@duanemorris.com
DSabagh@duanemorris.com

---

[15] The Government, as part of its Motion to Dismiss, disingenuously argues that there is no relief the Court can provide in this case because "USCIS does not issue visas."  MTD at 9. Obviously, Plaintiffs are requesting the Court to order the Government to grant the H-1B visa petition and declare Ms. Chatterjee to be in a proper H-1B visa status.  Plaintiffs' counsel simply used the vernacular expression "issue a visa" as a shorthand.  Where Ms. Chatterjee ultimately asks a US Consulate (in any country) to endorse her passport with the appropriate visa stamp (after USCIS grants the petition at issue in this case) is not the subject of this case.  The Government's failure to survive APA review of its January 2019 final agency decision is the subject of this case.

DM2\10264770.3