# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RELX, INC. d/b/a/ LexisNexis USA,

and

SUBHASREE CHATTERJEE

                Plaintiffs,

                v.

KATHY A. BARAN,
In her official Capacity,
Director of the California Service Center,
U.S. Citizenship and Immigration Services,
U.S. Department of Homeland Security,
ET AL.

                Defendants.

Case No. 19-cv-1993

## <u>MEMORANDUM OPINION</u>

       Plaintiffs RELX, Inc., d/b/a LexisNexis USA ("LexisNexis")
and Ms. Subhasree Chatterjee, a Data Analyst for LexisNexis,
bring this action against defendant Kathy Baran, Director of the
California Service Center, U.S. Citizenship and Immigration
Services ("USCIS"), U.S. Department of Homeland Security
("DHS"), and other government officials and entities, under the
Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* Plaintiffs
allege that defendants violated the Administrative Procedure Act
when they denied LexisNexis' H-1B petition on behalf of Ms.
Chatterjee. Pending before the Court are plaintiffs' motion for

summary judgment and defendants' motion to dismiss. Having
considered the submissions of the parties, the administrative
record, the relevant law, and the arguments of the parties
during the motion hearing, the court **DENIES** defendants' motion
to dismiss and **GRANTS** plaintiffs' motion for summary judgment.

## I. Background

### A. Statutory and Regulatory Background

The H-1B visa program permits employers to temporarily
employ foreign, nonimmigrant workers in specialty occupations.
*See* 8 U.S.C. § 1101(a)(15)(H). Before obtaining a visa, an
employer must obtain certification from the Department of Labor
that it has filed a labor condition application in the specific
occupational specialty. 8 C.F.R. § 214.2(h)(4). The employer
must then file an H-1B visa petition on behalf of the alien
worker, which shows that the proffered position satisfies the
statutory and regulatory requirements. 8 U.S.C. § 1184(c). A
specialty occupation is defined as an occupation that requires
"theoretical and practical application of a body of highly
specialized knowledge" and "attainment of a bachelor's or higher
degree in a specific specialty (or its equivalent) as a minimum
for entry into the occupation in the United States." 8 U.S.C.
§ 1184(i)(1). USCIS regulations have further defined four
criteria, each sufficiently independent, to determine whether a

profession qualifies as a "specialty occupation." Under the

regulation an occupation qualifies if:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into a particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organization or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)–(4). The petitioner bears the

burden of proving that his or her occupation falls within one of

the four categories. 8 U.S.C. § 1361.

**B. Factual Background**

Plaintiff LexisNexis is a Delaware corporation with its

principal place of business in New York, NY. LexisNexis is an

umbrella corporation with several key markets: Legal,

Scientific, Medical, Risk, and Exhibitions. LexisNexis USA is an

unincorporated division of RELX, Inc. Declaration of Leticia

Andrade ("Andrade Decl."), ECF No. 4-8 ¶ 3. LexisNexis is a

provider of comprehensive information and business solutions to professionals in a variety of areas – legal, risk management, corporate, government, law enforcement, accounting, and academic. *Id.*

Plaintiff Subhasree Chatterjee is a citizen of India, currently residing in Raleigh, NC. Declaration of Subhasree Chatterjee ("Chatterjee Decl."), ECF No. 4-9 ¶ 2. Ms. Chatterjee holds a Master of Science in Business Administration, with a focus on Business Analytics, from the University of Cincinnati, located in Ohio, USA. Administrative Record ("AR"), ECF No. 7-4 34-35. Prior to earning her Masters degree and her work for LexisNexis in 2017, Ms. Chatterjee earned a Bachelor of Technology degree in Computer Science and Engineering from West Bengal University of Technology in Kolkata, India. Chatterjee Decl., ECF No. 4-8 ¶ 7. Ms. Chatterjee also has extensive practical experience in data analytics from four years of working for Infosys in Pune, India and one year working in data analytics for Evalueserve Inc. in Raleigh, NC in the field of Analytics Delivery after earning her undergraduate degree. Chatterjee Decl., ECF No. 4-8 ¶ 7; Andrade Decl., ECF No. 4-9 ¶ 9.

Ms. Chatterjee is currently employed by LexisNexis and works as a Data Analyst in LexisNexis's engineering Center for Excellence. Andrade Decl. No. 4-9 ¶ 8. The LexisNexis Data

Analyst position consists of several technical responsibilities. These responsibilities include "analyzing, investigating, and hypothesizing data to effectively communicate with internal and external customers, management and functional areas by presenting problem resolution, product information . . . work with Designers and Researchers, embedded in product development teams, to help them understand customer behavior . . . analyz[ing], investigat[ing], negotiat[ing] and resolv[ing] problems to help inform product design decisions." AR 32.

Ms. Chatterjee is currently in the United States on a F-1 student visa with STEM OPT (Optional Practical Training) that expires on August 3, 2019, AR 37-45, after which she will not be permitted to work in the United States. Ms. Chatterjee is the subject of the H-1B petition LexisNexis filed and she is directly impacted by the agency decision denying her an H-1B visa.

### C. Procedural History

On April 12, 2018, LexisNexis filed a Petition for a Nonimmigrant Worker, Form I-129, on behalf of Ms. Chatterjee, a citizen of India. AR 86. LexisNexis petitioned to classify Ms. Chatterjee in H-1B status so that she could continue to work for LexisNexis as a Data Analyst. *Id.* In support of its petition, LexisNexis supplied a Labor Condition Application ("LCA") (Case Number I-200-18060-605447), certified by the U.S. Department of

Labor for the validity period of September 2, 2018 through September 1, 2021, AR 26-31; a letter from Leticia Andrade, Immigration Compliance Specialist, AR 32-33; background information about LexisNexis, *id.*; copies of Ms. Chatterjee's Master's degree from the University of Cincinnati and official transcript, AR 34-35; a copy of her F-1 student visa and work authorization, AR 36-45; and a copy of the biographic page of Ms. Chatterjee's unexpired passport, AR 48-49.

The government responded to the petition with a "Request For Evidence" ("RFE") related to whether the Data Analyst position was a specialty occupation. AR 52–53. Among the categories of information requested were (1) "A detailed statement to explain the beneficiary's proposed duties and responsibilities; indicate the percentage of time devoted to each duty; and state the educational requirements for these duties"; (2) "Job postings or advertisements showing a degree requirement is common to the industry in parallel positions among similar organizations"; and (3) expert opinions supported by "[t]he writer's qualifications as an expert; [h]ow the conclusions were reached; and [t]he basis for the conclusions supported by copies or citations of any materials used." AR 52.

On June 18, 2018, LexisNexis responded to defendants' RFE with (a) a supplemental letter from Leticia Andrade, Immigration Compliance Specialist, AR 55-57; (b) an organizational chart, AR

58; (c) six job announcements for Data Analyst positions, from six different employers, each showing that the Data Analyst positions required at least a Bachelor's degree in STEMfields such as business analytics, statistics, mathematics, economics or operations research, AR 59-64; and (d) an expert opinion from Dr. Gerhard Steinke, Professor of Management and Information Systems at Seattle Pacific University, AR 65-68. Through its June 2018 submission, LexisNexis provided evidence on only three out of the four 8 C.F.R. § 214.2(h)(4)(iii)(A) grounds for "specialty occupation."

On September 13, 2018, the Government denied the petition filed by LexisNexis on behalf of Ms. Chatterjee. AR 86-94. The government stated that LexisNexis had not shown that the position is a specialty occupation. *Id.* LexisNexis moved for reconsideration, AR 97, and the government granted the motion for reconsideration on January 17, 2019. Six days later, the government issued a final decision denying the petition for the same reasons as the initial denial. AR 1-7.

On July 3, 2019, plaintiffs filed suit seeking relief under the APA. *See* Compl., ECF No. 1. The Court placed this matter on an expedited briefing and hearing schedule – consolidating the plaintiffs' motion for preliminary injunction with a decision on the merits - in light of the fact that Ms. Chatterjee's current status expires on August 3, 2019. *See* Minute Order dated July

12, 2019. The parties were instructed to file cross-motions for summary judgment with the plaintiffs' motion due on July 22, 2019. On July 18, 2019, shortly before the plaintiffs filed their opening motion, defendants *sua sponte* reopened Ms. Chatterjee's petition. Defendants did not serve plaintiffs with notice that the petition was reopened on that day, nor did they provide a reason for the alleged reopening.

On July 22, 2019, plaintiffs moved for summary judgment seeking an order from this Court directing USCIS to grant Ms. Chatterjee's H1-B petition and place Ms. Chatterjee on H1-B visa status. Pls' Mot. for Summ. J., ECF No. 7. Four days later, defendants filed a motion to dismiss in light of the fact that it reopened Ms. Chatterjee's case. Defs.' Mot. to Dismiss, ECF No. 12. Attached to its motion to dismiss, the defendants provided a "Request For Evidence" detailing the evidence needed to reconsider plaintiffs' case. *See* Defs.' Request for Evidence, ECF No. 12-2. Plaintiffs filed an opposition to the motion to dismiss shortly after. Pls. Opp'n, ECF No. 13. After directing defendants to file a reply to plaintiffs' opposition, the Court held a motion hearing on August 1, 2019, and August 2, 2019. After hearing argument the Court issued an oral ruling granting plaintiffs' motion for summary judgment and denying defendants motion to dismiss with a Memorandum Opinion to follow.

## II. Legal Standards

### A. Motion to Dismiss

Defendants have moved to dismiss this case for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be presented as a facial or a factual challenge. "A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint, while a factual challenge is addressed to the underlying facts contained in the complaint." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003)(internal quotations and citations omitted). When a defendant makes a facial challenge, the district court must accept the allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). With respect to a factual challenge, as here, the district court may consider materials outside of the pleadings to determine whether it has subject matter jurisdiction over the claims. *Jerome Stevens Pharmacy, Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The plaintiff bears the responsibility of establishing the factual predicates of jurisdiction by a preponderance of evidence. *Erby*, 424 F. Supp. 2d at 182.

Defendants also moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In order to survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In satisfying this requirement that it "state a claim to relief that is plausible on its face," *id.* at 570, a complaint cannot survive a motion to dismiss through only "a formulaic recitation of the elements of a cause of action." *Id.* at 555. As with facial challenges to subject matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under Rule 12(b)(6). *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B. Motion for Summary Judgment

Although plaintiffs have moved for summary judgment, the parties seek review of an administrative decision under the APA. *See* 5 U.S.C. § 706. Therefore, the standard articulated in Federal Rule of Civil Procedure 56 is inapplicable because the Court has a more limited role in reviewing the administrative record. *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011)(internal citation omitted). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)(internal quotation marks and citations omitted). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Wilhelmus*, 796 F. Supp. 2d at 160 (citations omitted).

Under the APA, a court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001). Review of agency action is generally deferential, *Blanton v. Office of*

*the Comptroller of the Currency*, 909 F.3d 1162, 1170 (D.C. Cir. 2018)(citing S*afari Club Int'l v. Zinke*, 878 F.3d 316, 325-26 (D.C. Cir. 2017)), as long as the agency examines the relevant facts and articulates a satisfactory explanation for its decision including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)(citation omitted); *Iaccarino v. Duke*, 327 F. Supp. 3d 163, 177 (D.D.C. 2018). The "scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Iaccarino*, 327 F. Supp. 3d at 173 (internal quotation marks omitted)(citing *State Farm*, 463 U.S. at 43).

Although the scope of review is deferential, "courts retain a role . . . in ensuring that agencies have engaged in reasoned decision making." *Iaccarino*, 327 F. Supp. 3d at 173 (citing *Judulang v. Holder*, 565 U.S. 42, 53 (2011)). The requirement that an agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result. *Id.* at 177 (citing *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)). An agency's failure to set forth its reasons for a decision constitutes arbitrary and capricious action, and a court must undo the agency action. *Id.* (citing *Amerijet Int'l Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014)).

## III. Analysis

### A. Defendants' Motion to Dismiss

Defendants move to dismiss under both Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The Court addresses each claim in turn.

### 1. Rule 12(b)(1): Subject Matter Jurisdiction

Defendants argue that the agency's recent action in attempting to reopen plaintiffs' petition deprives the Court of jurisdiction because the claims are no longer ripe. *See* Defs.' Mot. to Dismiss, ECF No. 12-1 at 9–10.[1] The ripeness doctrine requires courts to consider two factors, "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." A*bbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 107 (1997); *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 234–35 (D.C. Cir. 1988). "This court has long understood the approach in *Abbott Labs* to incorporate a presumption of reviewability." *Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119 (D.C. Cir. 2005)(citing *Nat'l Automatic Laundry Cleaning Council v. Shultz*, 443 F.2d 689, 694 (D.C. Cir. 1971)). A determination of ripeness

---

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

"requires the court to balance its interest in deciding the issue in a more concrete setting against the hardship to the parties caused by delaying review." *Webb v. Department of Health and Human Services*, 696 F.2d 101, 106 (D.C. Cir. 1982).

In striking the balance in this case, the Court finds that it weighs in favor of adjudication. First, after review of the record there is no serious contention that "further administrative action is needed to clarify the agency's position," in this case. *See Friends of Keeseville, Inc.*, 859 F.2d at 234-35. Nor can it be said that" the issues involved require further factual development if they are to be susceptible to judicial resolution." *Id.* The defendants have issued an RFE requesting nearly identical information as it did when it last reviewed the petition. *See supra* at 20-21. Therefore, determinations as to the reviewability and the propriety of the agency's prior orders would involve an examination of facts already in the administrative record. *Id.* ("The issues presented will grow no more 'concrete' or less 'abstract' with the passage of time.").

The second prong, hardship to the parties caused by delaying review, weighs heavily in favor of adjudication. Defendants do not contest the fact that Ms. Chatterjee's F-1 visa will expire on August 3, 2019. Upon expiration she will lose her job and be required to leave the country for an

extended period of time, results that would be avoided with an adjudication in her favor. In other words, Ms. Chatterjee's status would be significantly affected by the Court's refusal to adjudicate her claim. In light of the significant hardship she would face, and the fact that the issues do not require further factual development, the Court holds that this case is ripe for adjudication.

Defendants next argue that the Court lacks jurisdiction because plaintiffs failed to exhaust administrative remedies. *See* Defs.' Mot. to Dismiss, ECF No. 12-1 at 10–11. That argument fails because there is no exhaustion requirement for plaintiffs' claim. APA claims are not subject to exhaustion requirements unless specifically required by statute or regulation. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993)("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." (emphasis in original)); *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1078 (D.C. Cir. 2009)("[A]bsent a statutory or regulatory requirement, courts have no authority to require parties to exhaust administrative procedures before seeking judicial review."). There is no requirement that plaintiffs seek an appeal of a denied visa before seeking judicial review.

Accordingly the government's motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

### 2. Rule 12(b)(6): Failure to State a Claim

Defendants next argue that plaintiffs have failed to state a claim because the agency has reopened the plaintiffs' petition and therefore there is no final agency action for the Court to review. *See* Defs.' Mot. to Dismiss, ECF No. 12-1 at 7–9. Section 704 of the APA states in relevant part that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Because the APA provides a limited cause of action to review "final agency action" without such agency action a plaintiff would not have a claim under the APA. *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003)("If there was no final agency action . . . there is no doubt that appellant would lack a cause of action under the APA.").

The parties agree that defendants' initial denial of the H1-B petition was a final agency action. Where the parties disagree is whether the defendants attempt to reopen the petition after the commencement of this law suit nullifies the prior final agency action. Generally, an agency's decision to reopen a case may render a final agency action nonfinal. *See Ahlijah v. Nielsen*, 2018 WL 3363875, at *2 (D. Md. July 10,

2018)(citing cases). However, when there is evidence that the government has reopened the case not to reconsider new evidence but rather to delay a decision on the H-1B petition, or when there is no indication as to what new information the agency can review, courts have held that reopening a case does not render a final agency action nonfinal. *See Mantena v. Hazuda*, 2018 WL 3745668, at *6 (S.D.N.Y. Aug. 7, 2018); *cf. Sackett v. E.P.A.*, 566 U.S. 121, 127 (2012)(stating that the "mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal."). Courts have looked at factors such as whether the agency has sought additional information, whether it identified issues with the original decision or areas for further evidentiary development, and whether the agency requested any additional evidence. *See Mantena*, 2018 WL 3745668, at *6 (citing cases). Although not a high bar, the question for the Court is whether the agency re-opened the case in name only. *Id.*

In this case, the plaintiffs have sufficiently demonstrated that the agency's attempt to reopen plaintiffs' petition does not render the agency decision nonfinal. Three facts unique to this case mandate this conclusion. First, the agency failed to follow the regulation that provides it with authority to reopen a petition. 8 C.F.R. § 103.5(a)(5)(ii) grants an agency the

authority to *sua sponte* reopen or reconsider a previously final

action. The regulation allows a service officer "on his or her

own motion" to reopen a proceeding if the officer provides the

affected parties 30 days after the service of a motion to submit

a brief. The regulation states as follows:

> (5) Motion by Service officer—
>
> (i) Service motion with decision favorable to
> affected party. When a Service officer, on his
> or her own motion, reopens a Service
> proceeding or reconsiders a Service decision
> in order to make a new decision favorable to
> the affected party, the Service officer shall
> combine the motion and the favorable decision
> in one action.
>
> (ii) Service motion with decision that may be
> unfavorable to affected party. When a Service
> officer, on his or her own motion, reopens a
> Service proceeding or reconsiders a Service
> decision, and the new decision may be
> unfavorable to the affected party, the officer
> shall give the affected party 30 days after
> service of the motion to submit a brief. The
> officer may extend the time period for good
> cause shown. If the affected party does not
> wish to submit a brief, the affected party may
> waive the 30-day period.

8 C.F.R. § 103.5(a)(5)(ii). Defendants have provided the

declaration of Carolyn Nguyen, USCIS Section Chief in the

Employment Branch, in support of its motion to dismiss stating

that on "July 18, 2019, pursuant to 8 Code of Federal

Regulations (C.F.R.) § 103.5 (a)(5)(ii), [USCIS] reopened and

vacated the previous decision. [USCIS] is preparing a new RFE to

be issued shortly." Declaration of Carolyn Nguyen, ("Nguyen Decl."), ECF No. 17-1 ¶ 9.

The record in this case is devoid of any indication that defendants filed a motion to reopen the petition as the plain language of the regulation mandates. *See* 8 C.F.R. § 103.5(a)(5)(ii). Plaintiffs were first notified that the petition was reopened on July 22, 2019, the date the plaintiffs' motion for summary judgment was due. Indeed, Ms. Nguyen's declaration in support of the motion to dismiss merely states that the petition has been reopened and the agency vacated the previous decision, but does not state that a motion was filed by a service officer or that the motion was served upon the affected parties with notice that the parties were afforded 30 days to submit a brief. *See generally*, Nguyen Decl., ECF No. 17-1. The government's failure to follow its own regulations in reopening the petition casts doubt on whether the reopening of the petition was valid. *Cf. Ravulapalli v. Napolitano*, 840 F. Supp 2d 200, 205 (D.D.C 2012)(stating agency's reopening and granting of petition was afforded the presumption of regularity when agency provided declaration that it acted "in accordance with USCIS policies and procedures").

Second, the government has failed to proffer any reason for why it reopened the petition other than that it was in response to this lawsuit. In *German Language Center v. United States*, the

19

court held that there was nothing improper about an agency's decision to reopen the case when an affidavit provided by the agency explained that the decision to reopen was made in light of a recent unpublished opinion from the Administrative Appeals Office. 2010 WL 3824636, at *3 (S.D. Tex. Sept. 27, 2010). Under such circumstances, the court held, it was not improper for the agency to reopen the case for additional consideration of recent authority. *Id.* In contrast, here, the affidavit defendants provided did not give any reason for the reopening of the case other than that the affiant was "making [the] declaration in support of the United States' legal defense of the APA action" in this case. ECF No. 17-1 ¶ 2. The declaration fails to provide any reason for why the agency reopened the petition, it just simply states that it did. *Id.* ¶ 9.

Third, and perhaps most critical, the government's request for evidence is nearly identical to its prior request; and fails to request evidence that it was not provided during its original review of the petition. Courts that have held a reopening of an agency decision rendered a prior decision nonfinal have focused on whether new evidence was requested. For example, in *True Capital Mgmt., LLC v. U.S. Department of Homeland Security*, the court ruled that because the agency requested additional information to clarify an inconsistency in the petitioner's immigration forms the prior decision was rendered nonfinal.

2013 WL 3157904, at *4 (N.D. Cal. June 20, 2013)(stating that reopening the petition rendered agency action nonfinal because the agency "[did] appear to seek additional information.").

In this case, the agency has sought no new evidence. For example, the new request for evidence requests a detailed statement related to "the actual duties the beneficiary will perform, indicat[ing] the percentage of time devoted to each duty; explain[ing] how the educational requirements relate to these duties." Defs.' Mot. to Dismiss, ECF No. 12-1, Ex. A. p.5. The prior RFE required a detailed statement related to "the beneficiary's proposed duties and responsibilities, indicat[ing] the percentage of time devoted to each duty; and stat[ing] the educational requirements for these duties." AR 52. The new RFE requests "any evidence you believe that a bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." Defs.' Mot. to Dismiss, ECF No. 12-1, Ex. A. p.6. The previous RFE requested "any evidence you believe will establish that the position qualifies as a specialty occupation." A.R. 52.[2]

Although not mirror images, the information requested is the same. Plaintiffs have already provided this information in

_____

[2] These are just two examples. Indeed some requests not only ask for the same information but use identical wording. *Compare* Defs.' Mot. to Dismiss, ECF No. 12-1, Ex. A. p. 7 (requesting letters from professional associations) *with* AR 52 (same).

response to the defendants prior RFE. *See* AR 8–49; 54–85, 95–188. It is unclear what purpose, if any, is served by requesting and reviewing the exact same information, and expecting such review to lead to a different result. Because the agency has failed to request any new information when it attempted to reopen the petition, the Court finds the circumstances of the reopening highly suspect and contrary to the regulations.

Under the circumstances presented in this case, defendants' failure to follow its own regulation related to reopening the case, defendants' failure to request any new evidence for the agency to consider, and defendants' failure to provide any reason for why the agency chose to reopen the case, the Court is left with no choice but to conclude that the agency has reopened the case in name only. *See Mantena*, 2018 WL 3745668, at *6. Therefore, the Court finds the agency action to be final. Accordingly the government's motion to dismiss for failure to state a claim is **DENIED.**

### B. Plaintiffs' Motion for Summary Judgment

Plaintiffs are entitled to the relief sought if the defendants' denial of the H1-B petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Plaintiffs argue that defendants acted arbitrary and capricious in concluding that there was not a specialty occupation.

A "specialty occupation" is "an occupation that requires theoretical and practical application of a body of highly specialized knowledge; and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). By regulation, to qualify as a specialty occupation, the position must meet at least one of four criteria: (1) a baccalaureate or higher degree is normally the minimum requirement for entry into the particular position; (2) the degree requirement is common to the industry in parallel positions among similar organizations or the position is so unique or complex that only an individual with a degree can perform it; (3) the employer normally requires a degree or its equivalent for the position; or (4) the nature of the specific duties are so specialized and complex that the knowledge required to perform the duties is usually associated with attainment of a baccalaureate degree or higher. 8 C.F.R. § 214.2(h)(4)(iii)(A).

The January 23, 2019 decision denying the petition explained that the four criteria mentioned in the regulation are necessary but not sufficient to establish that a position is a specialty occupation. AR 2. The decision explains that in order to read the statute and regulations together "USCIS consistently interprets the term 'degree' in the criteria [set forth in] 8

CFR § 214.2(H)(4)(iii)(A) to mean not just any bachelor's or higher degree, but one in a specific specialty that is directly related to the proffered position." *Id.* The decision goes on to discuss the regulatory criteria and attempts to explain why the plaintiffs' failed to prove, by the preponderance of the evidence, that the criteria were met. *Id.* 3-6.

The decision first determined that plaintiffs failed to prove by the preponderance of the evidence that a bachelor's degree or higher is normally the minimum requirement for entry into a Data Analyst position. AR 3. The decision focused on the US Department of Labor's Occupational Outlook Handbook ("OOH"), a document that the USCIS "often looks to . . . when determining whether a job qualifies as a specialty occupation" because the OOH "provides specific and detailed information regarding the educational and other requirements for occupations." *Id.* After explaining that the Data Analyst category was part of the computer occupations category, the agency determined that the "OOH does not contain detailed profiles for the computer occupations category." *Id.* The agency recognized OHH also incorporates the Department of Labor ("DOL") O*NET Program which is "the nation's primary source for occupational information." AR 3-4; 129. However, the agency determined that a "reference in the USDOL's O*NET, standing alone, fails to establish that an occupation is a specialty occupation." AR 3-4.

What the agency overlooked, however, is that plaintiffs did not just make a general reference to O*NET. Rather, plaintiffs stated that the Data Analyst position is aligned with the DOL's "Business Intelligence Analyst" position for which there is a detailed description that is directly relevant to the inquiry of whether the position is specialized. *See* AR 56. The explicit O*NET cross reference to Business Intelligence Analyst (SOC Code 15-1199.08) contained in the OOH listing for "Computer Occupations, All Other" defines the technological and educational requirements for the position and explains that "[m]ost of these occupations require a four-year bachelor's degree, but some do not" with further detail that more than 90% of Business Intelligence Analyst positions require at least a bachelor's degree. *See* AR 134.

The OOH itself also explains that the typical entry level education for "Computer occupations, all other" is a "Bachelor's Degree." ECF No. 7-1, Ex. A. Since the OOH indeed does provide specific detailed information regarding educational requirements for the computer operations category, and the detailed information states most of the occupations require a four-year bachelor's degree, the agency's rationale was both factually inaccurate and not supported by the record.

The agency was also arbitrary and capricious when it determined that the degree requirement was not common to the

industry in parallel positions among similar organizations. AR
4-5. The agency stated that factors often considered include
"whether the OOH reports that the industry requires a degree;
whether the industry's professional associations have made a
degree a minimum entry requirement; or whether letters or
affidavits from firms or individuals in the industry attest that
such firms routinely employ and recruit only degreed
individuals." AR 4. As for the first factor, the Court has
already explained that the agency ignored OOH's information
indicating that the industry requires a bachelor's degree. And
as for the last requirement, plaintiffs submitted an expert
opinion from Professor Gehrard Steinke which attested that
"firms similar to the petitioner's routinely recruit and employ
only degreed individuals in the specific specialty." AR 70. The
agency failed to address either the information found in OOH or
the expert opinion.

Furthermore, plaintiffs provided several job postings for
Data Analysts positions, all of which required, at minimum, a
bachelor's degree. AR 59-64. The agency discounted this evidence
because "multiple fields of educations appear to be acceptable
for entry into the position of Data Analyst, according to the
job postings [plaintiffs] previously submitted." AR 3-4. In
other words, because different types of degrees would allow
entry into Data Analyst position, the agency believed, a Data

Analyst position may never be specialized. *Id.* at 4 ("since multiple fields of education are suitable for the position . . . it is not one that is qualified as a specialty occupation").

This position is untenable. There is no requirement in the statute that only one type of degree be accepted for a position to be specialized. The statute and regulations simply require that a "position actually requires the theoretical and practical application of a body of highly specialized knowledge, and the attainment of a bachelor's or higher degree in the specific specialty [is a] minimum requirement for entry into the occupation." AR 3. In other words, if the position requires the beneficiary to apply practical and theoretical specialized knowledge and a higher education degree it meets the requirements. Nowhere in the statute does it require the degree to come solely from one particular academic discipline. As other courts have explained "[d]iplomas rarely come bearing occupation-specific majors. What is required is an occupation that requires highly specialized knowledge and a prospective employee who has attained the credentialing indicating possession of that knowledge." S*ee Residential Fin. Corp. v. U.S. Citizenship & Immigration Servs.*, 839 F. Supp. 2d 985, 997 (S.D. Ohio 2012)(stating that when determining whether a position is a specialized occupation "knowledge and not the title of the degree is what is important."); *see also Tapis*

*Int'l v. I.N.S.*, 94 F. Supp.2 d 172, 175–76 (D. Mass. 2000)(rejecting a similar agency interpretation because it would preclude any position from satisfying the "specialty occupation" requirements where a specific degree is not available in that field).

The record in this case establishes that Ms. Chatterjee holds a Master of Science in Business Administration, with a focus on Business Analytics, from the University of Cincinnati, located in Ohio, USA. AR 34-35. While obtaining her Masters degree, her course work included stimulation modeling, stat computing, probability models, data mining, graduate case studies, forecasting methods, and data management. AR 35. Further, the record here explains Ms. Chatterjee's specific job duties. The bulk of her work, seventy percent, is as follows: Use SQL to extract data to describe user behavior on LexisAdvance, accessing the correct data sources, checking data integrity, and ensuring overall data quality (30%); Use R, Python, or other statistical programming software to program analyses and generate reports leveraging proper statistical techniques such as ANOVA, t-tests, linear models, or logistic regression so that decisions on A/B test results are made with full statistical confidence (20%); Perform exploratory data analyses using tools like Rand Python; techniques such as descriptive statistics, k-means clustering, hierarchical

modeling, and dimensionality reduction (20%). AR 55-56. In light of both her education and her specific duties, the record indicates that a minimum requirement for entry into the position of a Data Analyst is the specialized course of study in which Ms. Chatterjee engaged.

In short, the LexisNexis position was a distinct occupation which required a specialized course of study, notwithstanding the fact that the study included several specialized fields. Ms. Chatterjee completed that specialized course of study in the relevant fields and LexisNexis has employed her exactly because she has the specialized skills to perform the duties of the position and requisite educational requirements. The mountain of evidence submitted by LexisNexis to support the petition more than meets the preponderance of the evidence standard. The agency's decision was not "based on a consideration of the relevant factors" and was "a clear error of judgment." S*ee Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). USCIS acted arbitrarily, capriciously, and abused its discretion in denying employer's petition for H-1B visa status on behalf of Ms. Chatterjee. Accordingly, the plaintiffs' motion for summary judgment is **GRANTED.**

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **DENIED** and plaintiffs' motion for summary judgment is **GRANTED.**

Accordingly, the defendants shall grant plaintiffs' petition and is **FURTHER ORDERED** to change Ms. Chatterjee's status to H-1B nonimmigrant. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**August 5, 2019**